UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
Western Division
Civil Case No. 5:15-cv-627

| | |
|---|---|
| FREDERICK L. ALLEN and<br>NAUTILUS PRODUCTIONS, LLC<br>　　　　　　　　　　Plaintiffs<br><br>　　　v.<br><br>PATRICK LLOYD MCCRORY, Governor of the State of<br>North Carolina, *in his official capacity*;<br>SUSAN WEAR KLUTTZ, Secretary of the North Carolina<br>Department of Natural and Cultural Resources, *individually<br>and in her official capacity*;<br>KARIN COCHRAN, Chief Deputy Secretary of the North<br>Carolina Department of Natural and Cultural Resources,<br>*individually and in her official capacity*;<br>KEVIN CHERRY, Deputy Secretary of the North Carolina<br>Department of Natural and Cultural Resources, *individually<br>and in his official capacity*;<br>CARY COX, Assistant Secretary, Marketing and<br>Communications of the North Carolina Department of Natural<br>and Cultural Resources, *individually and in her official<br>capacity*;<br>STEPHEN R. CLAGGETT, State Archaeologist, *individually<br>and in his official capacity*;<br>JOHN W. MORRIS, Deputy State Archaeologist –<br>Underwater and Director of the Underwater Archaeology<br>Branch of the North Carolina Department of Natural and<br>Cultural Resources, *individually and in his official capacity*;<br>JAMES W. DAVIS, North Carolina Senator, *individually and<br>in his official capacity*;<br>NORMAN W. SANDERSON, North Carolina Senator,<br>*individually and in his official capacity*;<br>NORTH CAROLINA DEPARTMENT OF NATURAL AND<br>CULTURAL RESOURCES;<br>STATE OF NORTH CAROLINA; and<br>FRIENDS OF QUEEN ANNE'S REVENGE, A NON-<br>PROFIT CORPORATION<br>　　　　　　　　　　Defendants | **FIRST AMENDED<br>COMPLAINT<br>(Jury Trial Demanded)** |

1

# INTRODUCTION

1. This lawsuit involves a conspiracy to steal copyrights and misuse copyrighted photographs and media created by renowned documentary videographer Rick Allen and licensed to his company, Nautilus Productions, that Mr. Allen has painstakingly created since 1998 while documenting the retrieval of *Queen Anne's Revenge*, the pirate Blackbeard's flagship.

2. After the Department of Natural and Cultural Resources effectively admitted in a written agreement signed by Secretary Kluttz that the rights to this historically important videography belonged to Plaintiffs and were not to be used except under contract, the Defendants conspired to convert Plaintiffs' copyrighted works into "public documents" that would be made available to the public without Plaintiffs' consent and without compensation, in violation of the Constitutions of the United States and of North Carolina; and used and permitted others to publicly display, copy, and otherwise use Plaintiffs' copyrighted works without Plaintiffs' consent.

3. Defendants well knew or should have known that only Congress has the right to pass laws governing copyrights, yet conspired to craft and obtain passage of a North Carolina statute, N.C. Gen. Stat. §121-25(b) that removed Plaintiffs' works, and those of similarly situated persons, from the copyright protection to which they are entitled.

4. While the motivation for this misconduct is yet to be fully understood, it appears that at least part of the reason was to create a defense to claims of infringement and breach of the Settlement Agreement.

2

5. It appears that another part of the motivation for this misconduct was to assist the Defendant Department, and the Defendant Friends of Queen Anne's Revenge and/or individuals associated with them, each of which would or expected to achieve considerable savings and profits from uncompensated use of Plaintiffs' work. Defendant Morris is not only an employee of the Defendant Department but also at times pertinent hereto was, and may still be, a member of the Board of Directors of the Friends of Queen Anne's Revenge, and his wife signed a contract with the Friends of Queen Anne's Revenge to produce educational and internet materials concerning the retrieval of the *Queen Anne's Revenge*, the very subject that had been well documented by Plaintiffs since inception of the recovery efforts.

6. Further details are set out in the paragraphs below; and each paragraph of this Complaint is incorporated by reference into each Count of the Complaint.

### PARTIES

7. Plaintiff Frederick ("Rick") L. Allen (hereafter referred to as "Mr. Allen") is an individual citizen and resident of Cumberland County, North Carolina. Mr. Allen has been producing documentaries and shooting video since 1983. As a video producer, director and HD videographer his work has appeared on ABC, A&E, BBC, CBS, Discovery, TLC, National Geographic, 48 Hours, ESPN, Lifetime, Turner and more. He has followed SWAT teams through the door on drug busts, traveled from Cuba to Kazakhstan with the 82nd Airborne, weathered live broadcasts during hurricanes, gone nose to nose with 14 foot Great White sharks during underwater expeditions and for nearly two decades has been the project videographer on the Queen Anne's Revenge Shipwreck Project.

3

8. Plaintiff Nautilus Productions, LLC (hereafter referred to as "Nautilus"), is a limited liability company organized by under the laws of the State of North Carolina and having its principal place of business in Cumberland County, North Carolina.  Nautilus was organized by Mr. Allen after he had spent more than a decade in broadcast television, to be his own video production company focused on documentary production as well as providing freelance HD production and underwater video services to broadcast, corporate and government clients. Nautilus, with Mr. Allen, has produced documentaries for the National Geographic International, the Canadian History Channel, North Carolina Public Television, Texas A&M, the Louisiana State Museum and the Bureau of Ocean Energy Management (US Dept. of the Interior) among others, and for many corporate clients.

9. Defendant Patrick Lloyd McCrory (also known as "Pat McCrory" and hereafter referred to as "Mr. McCrory" or "the Governor") is an individual North Carolina citizen, employed in Wake County, North Carolina, and on information and belief with residences in Wake County and Mecklenburg County, North Carolina and registered to vote in Mecklenburg County, North Carolina.  Mr. McCrory currently serves as Governor of the State of North Carolina and has overarching control over the actions of the State and its agencies, and as a part of his official duties is responsible for those actions. He is sued in his official capacity.

10. Defendant Susan Wear Kluttz (hereafter referred to as "Ms. Kluttz" or "the Secretary") is an individual North Carolina citizen, employed in Wake County, North Carolina and on information and belief having residences in Wake County and Rowan County, North Carolina and registered to vote in Rowan County, North Carolina.  Ms. Kluttz currently serves as Secretary of the North Carolina Department of Natural and Cultural Resources and supervises and controls the actions of that agency.  Ms. Kluttz signed the Settlement Agreement referenced above, a copy of which is attached as Exhibit 1 to this Complaint, and

4

was responsible for its proper implementation. She at all times controlled or had the right and obligation to control use of the copyrighted works of Plaintiffs by the North Carolina Department of Natural and Cultural Resources. She is sued in her individual and official capacities.

11. Defendant Karin Cochran (hereafter referred to as "Ms. Cochran") is an individual North Carolina citizen, on information and belief residing and registered to vote in Wake County, North Carolina. Ms. Cochran currently serves as Chief Deputy Secretary of the North Carolina Department of Natural and Cultural Resources and is responsible for supervising the day to day operations of that agency. Ms. Cochran was present during the negotiations that led to the Settlement Agreement referenced above, and was responsible for its day to day implementation. She at all times controlled or had the right and obligation to control use of the copyrighted works of Plaintiffs by the North Carolina Department of Natural and Cultural Resources. She is sued in her individual and official capacities.

12. Defendant Kevin Cherry (hereafter referred to as "Dr. Cherry") is an individual North Carolina citizen, on information and belief residing and registered to vote in Cabarrus County, North Carolina. Dr. Cherry serves as the deputy secretary of the N.C. Department of Natural and Cultural Resources and director of the Office of Archives, History and Parks and oversees the operations of the divisions of State History and Maritime Museums, State Historic Sites and Properties, Archives and Records, Historical Resources (including the State Historic Preservation Office, Office of Historical Research, and the Office of State Archaeology), among others. Dr. Cherry personally participated in the negotiations that led to the Settlement Agreement. He at all times controlled or had the right and obligation to control use of the copyrighted works of Plaintiffs by those offices and divisions of the North Carolina Department of Natural and Cultural Resources supervised by him, including the

posting of Plaintiffs' materials to DNCR's YouTube channel without Plaintiffs' consent as hereafter set out. He is sued in his individual and official capacities.

13. Defendant Cary Cox (hereafter referred to as "Ms. Cox") is an individual North Carolina citizen, on information and belief residing and registered to vote in Cabarrus County, North Carolina. Ms. Cox currently serves as Assistant Secretary, Marketing and Communications of the North Carolina Department of Natural and Cultural Resources and supervises and controls the actions of that agency. She at all times controlled or had the right and obligation to control use of the copyrighted works of Plaintiffs by the North Carolina Department of Natural and Cultural Resources in its marketing and communications, and controlled or had the right and obligation to control dissemination of Plaintiffs' copyrighted works to third parties. She is sued in her individual and official capacities.

14. Defendant Stephen R. Claggett (also known as "Steve Claggett" and hereafter referred to as "Mr. Claggett") is an individual North Carolina citizen, on information and belief residing and registered to vote in Wake County, North Carolina. Mr. Claggett currently serves as the State Archaeologist of the State of North Carolina, within the DNCR. He also during pertinent times was a member and officer of the Board of Directors of Friends of QAR and may still serve on that Board. Mr. Claggett participated in the negotiations leading to the Settlement Agreement referred to hereafter, was present when it was signed, and knew its provisions. He controlled or had the right and obligation to control use of the copyrighted works of Plaintiffs by the North Carolina Department of Natural and Cultural Resources. He is sued in his individual and official capacities.

15. Defendant John W. Morris (also known as "Billy Ray Morris" and hereafter referred to as "Mr. Morris") is an individual North Carolina citizen, on information and belief residing and registered to vote in New Hanover County, North Carolina. Mr. Morris currently serves as

the Deputy State Archaeologist – Underwater, and as Director of the Underwater Archaeology Branch of the North Carolina Department of Natural and Cultural Resources and he also has served during pertinent times hereto, and may continue to serve as a member (and is a past treasurer) of the Board of Directors of Defendant Friends of Queen Anne's Revenge, A Non-Profit Corporation (hereafter "Friends of QAR"). Mr. Morris is sued in his individual and official capacities.

16. James W. Davis (also known as "Jim Davis" and hereafter referred to as "Mr. Davis") is an individual North Carolina citizen, on information and belief having a residence in Macon County, North Carolina and registered to vote in Macon County, North Carolina. Mr. Davis is a Senator in the General Assembly of the State of North Carolina. He is sued in his individual and official capacities. On information and belief, based upon published admissions of codefendant Mr. Sanderson, Mr. Davis conspired and cooperated with other Defendants to cause the introduction, and contribute to the passage, of the amendment that ultimately became N.C. Gen.Stat. §121-25(b).

17. Norman Sanderson (hereafter referred to as "Mr. Sanderson") is an individual North Carolina citizen, on information and belief having a residence in Pamlico County, North Carolina and registered to vote in Pamlico County, North Carolina. Mr. Sanderson is a Senator in the General Assembly of the State of North Carolina. He is sued in his individual and official capacities. On information and belief, based upon published admissions, Mr. Sanderson cooperated and conspired with other Defendants to cause the introduction, and contribute to the passage, of the amendment that ultimately became N.C. Gen. Stat. §121-25(b).

18. The Department of Natural and Cultural Resources (formerly known as the Department of Cultural Resources and hereafter referred to as "DNCR") is a principal department and agency of the State of North Carolina, pursuant to Articles I and II of N.C. Gen. Stat. §143B.

19. The State of North Carolina (hereafter referred to as the "State") is a state of the United States of America.

20. Defendant Friends of Queen Anne's Revenge, A Non-Profit Corporation ("Friends of QAR"), is a nonprofit corporation organized under the laws of North Carolina, and currently having its registered agent and its registered office in Carteret County, North Carolina.

## JURISDICTION AND VENUE

21. This action arises in part under the Declaratory Judgment Act, 28 U.S.C. §§2201-2202 and the copyright laws of the United States, 17 U.S.C. §101 et seq. as well as the Constitution of the United States of America and the Constitution of the State of North Carolina, and seeks a declaration that N.C. Gen. Stat. 125-25(b) is invalid, unconstitutional, and unenforceable as pre-empted by federal law, 17 U.S.C. §301, pursuant to U.S. Const. Art. VI, cl.2. and Art. VIII, §8, Cl. 8, and as a violation of the Takings Clause and Due Process Clause of the U.S. Constitution, Amends. V and XIV; and of the Law of the Land Clause of the North Carolina Constitution, N.C. Const. Art. I, §19; and for recovery of Plaintiffs' attorneys' fees and costs. There exists a case and controversy that is ripe for adjudication.

22. This Court has subject matter jurisdiction over the claims arising under the Constitution and laws of the United States, including those claims hereafter set forth seeking a declaration that N.C. Gen. Stat. §121-25(b) violates the United States constitution and the federal Copyright Act; and has original or supplemental jurisdiction over all other claims set out herein. The Court's jurisdiction arising under the constitution and laws of the United States is set out in 28 U.S.C. §1331, with original jurisdiction over claims relating to copyright and infringements thereof set out in 28 U.S.C. §1338 and jurisdiction over declaratory judgment

Case 5:15-cv-00627-BO   Document 12   Filed 03/07/16   Page 8 of 24

actions set out in 28 U.S.C. §§2201-02; and this Court has jurisdiction over all other claims pursuant to 28 U.S.C. §1367 (a) because they form a part of the same case or controversy.

23. This Court has personal jurisdiction and venue because all parties reside in North Carolina and most of the pertinent acts set out hereafter occurred within the Eastern District of North Carolina.

24. All state employees named as individual Defendants herein knew or should have known, as a similarly situated reasonable person would have known, that depriving Plaintiffs of their copyrights and providing the State with rights that purport to supersede Plaintiffs' copyrights constitute violations of a federal statutory and constitutional right.

25. Each state employee's actions constituting copyright infringement were and are clearly outside the scope of activity permitted by the copyright statute, including reasonable interpretations of fair use.

26. All state employees named as individual Defendants herein, in carrying out the actions hereafter set forth, acted with malice or with reckless indifference to the federally protected rights of the aggrieved Plaintiffs.

27. The acts of each state employee named as a Defendant herein violated, and caused the DNCR and the State to violate, the federal and North Carolina constitutions; and each of these officials are thereby stripped of any otherwise-applicable immunity and are personally liable for their conduct.

28. To the extent sovereign immunity might otherwise apply, it has been waived by the State of North Carolina at least by reason of a contract entered by the State as hereafter described.

## GENERALLY APPLICABLE FACTS

29. For almost two decades, Plaintiffs have documented the finding and recovery of artifacts from the shipwreck believed to be, and known as, *Queen Anne's Revenge*, the former flagship of Edward Teach, more commonly known as the pirate Blackbeard. *Queen Anne's Revenge* was wrecked in 1718; the wreck was discovered in 1996 and Plaintiffs' documentary work commenced in approximately 1998.

30. Over the past years, Plaintiffs have produced a substantial archive of video and still images showing the underwater shipwreck and the efforts of teams of divers and archaeologists to recover various artifacts from the wreck. Plaintiffs have been involved in live educational video webcasts, producing video for public display, as well as production of materials for licensing and/or later review.

31. Plaintiff Rick Allen has faithfully performed and continues to perform his work relating to the *Queen Anne's Revenge*.

32. The copyrights in all pertinent materials filmed and photographed by Plaintiffs belong exclusively to Mr. Allen and are licensed to and commercialized by Nautilus.

33. Plaintiffs registered Mr. Allen's copyrights in his creative work with the United States Copyright Office and Mr. Allen owns, and Plaintiffs control and have the right to use the works covered by, at least the following registrations:

| Reg. # | Title |
|---|---|
| PA0001694134 | Queen Anne's Revenge/Blackbeard Shipwreck Underwater Footage |
| PA0001846427 | Queen Anne's Revenge Footage 1999 |
| PA0001846499 | Queen Anne's Revenge Footage 2000 |
| PA0001846497 | Queen Anne's Revenge Footage 2001 |
| PA0001846494 | Queen Anne's Revenge Footage 2004 |
| PA0001846473 | Queen Anne's Revenge Footage 2005 |
| PA0001846465 | Queen Anne's Revenge Footage 2006 |
| PA0001846461 | Queen Anne's Revenge Footage 2007 |
| PA0001846457 | Queen Anne's Revenge Footage 2008 |
| PA0001846462 | Queen Anne's Revenge Footage 2010 |
| PA0001846470 | Queen Anne's Revenge Footage 2012 |
| PA0001872852 | Queen Anne's Revenge Footage 2013 |
| PA0001919638 | Queen Anne's Revenge Footage 2014 |

34.  In mid-2013, the Friends of QAR entered into an agreement to pay $70,000 for production of various educational materials, including videos, an educational website and scholastic educational packets.  Among the recipients of the funding was to be Nicole Morris, spouse of Defendant John Morris, an employee of DNCR; and Ms. Morris signed the agreement on behalf of one of the participating entities.  A former employee of DNCR, Richard Lawrence, signed the agreement on behalf of the Friends of QAR.

35. Prior to October 15, 2013, the State and its DNCR infringed and contributed to infringement and induced infringement of Mr. Allen's registered copyrights by uploading video to the Internet without the consent of Plaintiffs, by publicly displaying, copying, and otherwise using the registered works, and by posting the works on the Internet, allowing and making possible copying by third parties, all without the consent of Plaintiffs.

Case 5:15-cv-00627-BO   Document 12   Filed 03/07/16   Page 11 of 24

36. In and around June and August 2013, Mr. Allen notified Secretary Kluttz of the infringements and other violations of Plaintiffs' rights.

37. On October 15, 2013, the State and its DNCR entered into a written agreement (the Settlement Agreement) with Plaintiffs that superseded all prior agreements between the parties.

38. The Settlement Agreement contained, among other things, the following Paragraph 22:

> **Copyright Violations.** DCR agrees to compensate Nautilus Productions by payment of the cash sum of $15,000 for any copyright infringements by DCR or its support groups occurring through the date of the signing of this contract, including Friends of the Maritime Museum display photograph of the pile (central portion of the QAR shipwreck), DCR's Flickr account showing anchor A1 on the pile, DCR's website showing anchor A1 on the pile, DCR's News website showing anchor A2, and Friends of the QAR website showing mapping dividers (artifact). DCR shall pay Nautilus Productions $15,000 by 31 January 2014.

39. On or about February 3, 2014, the State and DNCR made payment to Plaintiffs of the $15,000 required by the Settlement Agreement and, as an accommodation to the parties, Plaintiffs accepted the late payment.

40. According to the Settlement Agreement, DNCR was permitted to retain for research purposes certain materials that contained both a time stamp and Nautilus watermark, but was not given the right to use those materials for any other purpose and was required to return all other materials to Nautilus. Specifically, Paragraph 21 of the Settlement Agreement required:

> **Return of Video.** DCR agrees to return to Nautilus Productions all archival footage, still photographs, and other media, produced by Nautilus Productions, which do not bear a time code stamp and a Nautilus Productions watermark (or bug). DCR may retain, for research purposes, archival footage, still photographs, and other media that contain a time code stamp and

watermark (or bug), and as to such media, DCR shall provide Nautilus with a current, accurate list.

41. The Settlement Agreement expressly waived any sovereign immunity otherwise available to the State and its agencies and employees by providing (in Paragraph 32) that in the event of breach, Plaintiffs could avail themselves of "all remedies provided by law or equity."

42. Each of the individual Defendants was aware of the Settlement Agreement.

43. The State retained for research purposes, as permitted by the Paragraph 21 of the Settlement Agreement, archival footage, still photographs, and other media that contain a time code stamp and watermark (or bug), including over eighty (80) hours of such video footage contained on approximately 83 DVD's. All of these works were created by Plaintiffs and are covered by at least one of the above-referenced copyright registrations.

44. After signing the Settlement Agreement, the State and its DNCR resumed infringing Plaintiffs' copyrights. The infringements that occurred after the Settlement Agreement included at least the following works, each of which infringed at least one of the above-listed registered works and each of which was published, performed, and/or displayed at least at the location listed below, without consent of Plaintiffs:

| Title Of Infringing Work | Published At | Approx. Location |
|---|---|---|
| David Moore On Capturing Blackbeard's 13th Cannon | https://www.youtube.com/watch?v=9KfhKYzLRJM | 3:17 min. |
| Raising Blackbeard's Anchor, May 27, 2011 | https://www.youtube.com/watch?v=MTeDBYzo3ps | 4:25 min. |
| Blackbeard's Queen Anne's Revenge 1718 | https://www.youtube.com/watch?v=DdOdDFnyemQ | 3:05 min. |

13

| Title Of Infringing Work | Published At | Approx. Location |
|---|---|---|
| Raising Blackbeard's Cannon From A Conservators Point of View | https://www.youtube.com/watch?v=kN3PLPMUVbE | 2:27 min. |
| What's New At QAR Lab | https://www.youtube.com/watch?v=RkeWj1GBx0Q | 4:18 min. |
| *Maritimes*, Winter/Spring 2013, p. 13 | http://digital.ncdcr.gov/cdm/compoundobject/collection/p16062coll9/id/189990/rec/5 | n/a (still image in print material) |

45. Even after the initiation of this lawsuit over three months ago, DNCR continued to publish, display and/or perform at least many of the above-listed infringing works at these and/or other locations.

46. Thus, Defendants infringed and contributed to infringement and induced infringement of Mr. Allen's registered copyrights by uploading video to the Internet without the consent of Plaintiffs, by publicly displaying, copying, and otherwise using the registered works, and by posting the works on the Internet, allowing, encouraging and making possible copying by third parties, all without the consent of Plaintiffs.

47. As a result of these actions by Defendants, including but not limited to the State and its DNCR, and which at least Secretary Kluttz and Mr. Morris oversaw and either initiated or failed to prevent despite having a duty to do so, Mr. Allen's copyrighted work is now publicly viewable, downloadable and posted without permission or license from Plaintiffs.

48. Plaintiffs issued Takedown Notices in an effort to ameliorate the damage from these unauthorized infringements.

14

49. Defendants, concerned about their own liability and, on information and belief, in order to enhance the private business efforts of Friends of QAR and of Mr. Morris's wife, developed a plan to steal Plaintiffs' copyright assets and convert them to the use of the State and of themselves, all without payment to Plaintiffs.

50. Defendants collectively wrote, caused to be introduced, lobbied for passage of, and obtained passage of an amendment to an existing North Carolina statute, so that the pertinent section of the statute, as amended, read as follows:

**§121-25. License to conduct exploration, recovery or salvage operations.**

(b) All photographs, video recordings, or other documentary materials of a derelict vessel or shipwreck or its contents, relics, artifacts, or historic materials in the custody of any agency of North Carolina government or its subdivisions shall be a public record pursuant to G.S. 132-1. There shall be no limitation on the use of or no requirement to alter any such photograph, video recordings, or other documentary material, and any such provision in any agreement, permit, or license shall be void and unenforceable as a matter of public policy.

51. The amendment was on information and belief drafted by Defendant DNCR and its employees.

52. The amendment was on information and belief introduced by Defendant Senators Sanderson and Davis. It was tacked on to a bill entitled:

An Act to Allow the Department of Cultural Resources, Office of Archives and History, to Use the Net Proceeds of the Sale of Artifacts for Maintenance or Conservation of Other Artifacts; to Clarify the Process for Transferring Title of Unclaimed or Undocumented Property Loaned to Museums and Historical Repositories to those Museums and Historical Repositories; and to Set a Time Limitation on Confidentiality of Records."

The short title of the act, prior to amendment, was "Change DCR Process for Unclaimed Property."

53. According to published newspaper reports, Mr. Sanderson admitted on or about July 30, 2015, prior to passage of the bill, that the amendment creating N.C. Gen. Stat. §121-25(b) was introduced by Mr. Davis and Mr. Sanderson at the request of DNCR, because of a lawsuit alleging that DNCR had breached the Settlement Agreement.

54. The amendment was passed and the bill containing the amendment was signed by Governor McCrory on August 18, 2015, thereby becoming effective as Session Law 2015-218 on August 18, 2015.

55. At the time he signed the bill, Governor McCrory was or should have been aware of the earlier Settlement Agreement, and aware that the amendment creating N.C. Gen. Stat. §121-25(b) was motivated by a desire to avoid liability on account of breaches of the Settlement Agreement and of copyright infringements.

56. The effect of N.C. Gen. Stat. §121-25(b) is to convert each of the copyrighted works of Plaintiffs that are in the possession of the State into "a public record" as to which there is now "no limitation on the use of…any such photograph, video recordings, or other documentary material."

57. Enforcement of N.C. Gen. Stat. §121-25(b) would deprive Plaintiffs of the copyrights in their works and the benefits of those copyrights and the license to use the work to which they are entitled under the United States Copyright Act, 17 U.S.C. §101 *et seq.* and constitutes a

Case 5:15-cv-00627-BO   Document 12   Filed 03/07/16   Page 16 of 24

violation of the Takings Clause of the North Carolina Constitution and of the Fifth and Fourteenth Amendments to the United States Constitution.

58. The State of North Carolina, Ms. Kluttz, and DNCR already have relied on Session Law 2015-218, in response to a different lawsuit (to which Plaintiffs are not a party), alleging violations of the Settlement Agreement, pleading among other things that:

> Regardless of whether the Department infringed upon Plaintiff's alleged intellectual property rights or breached the contract, which the Department expressly denies, any relief for the alleged infringement and breach of contract should be denied because the purported contract forming the basis for Plaintiff's action…is void, illegal and unenforceable, in its entirety or in part, as being against … public policy… Therefore, Department is not responsible for and has no liability to Plaintiff under the alleged contract and/or its parts.

59. In October, the State of North Carolina, Ms. Kluttz, and DNCR filed a pleading in the same State Court lawsuit (Wake County Civil Action 15-CVS-009995) wherein they asserted the above-quoted defense relying on Session Law 2015-218, alleging that Plaintiffs are necessary parties to that lawsuit. Plaintiffs have not agreed to join in the Wake County lawsuit and so far as Plaintiffs are aware, no action has been taken on that pleading and no motion has been filed to implead Plaintiffs.

60. State courts have no right to adjudicate claims of copyright infringement, and these Defendants' efforts to implead Plaintiffs in their state court litigation further evidences Defendants' attempt to prevent Plaintiffs from obtaining redress for Defendants' copyright infringements, whether by way of injunctive relief or damages; and further emphasizes the need for prompt adjudication that N.C. Gen. Stat. §121-25(b) is invalid and unenforceable.

17

61. On information and belief, taking advantage of their position that the Settlement Agreement is void as against public policy, Defendants have entered into, and/or attempted to fulfill, contracts purporting to allow third parties the benefits that formerly would have accrued to Plaintiffs under that agreement.

**COUNT I**
**DECLARATORY JUDGMENT**
**DECLARATION OF STATUTE'S INVALIDITY**

62. N. C. Gen. Stat. §121-25(b) converts, without the permission of the author and without compensation, all photographs, video recordings, or other documentary materials of a derelict vessel or shipwreck or its contents, relics, artifacts, or historic materials in the custody of any agency of North Carolina government or its subdivisions into public documents; and permits the unlimited use of such works by third parties without the consent of the author.

63. Congress is granted the right to legislate in the field of copyright pursuant to pursuant to U.S. Const. Art. VIII, §8, Cl. 8; and is entitled to provide that its legislation has pre-emptive effect pursuant to U.S. Const. Art. VI, Cl.2.

64. N.C. Gen. Stat. §121-25(b) purports to govern rights that are equivalent to exclusive rights within the general scope of copyright as specified by 17 U.S.C. §106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by 17 U.S.C. §§102 and 103.

65. N. C. Gen. Stat. §121-25(b) is pre-empted by the Copyright Act of the United States of America, 17 U.S.C. §101 *et seq.,* which expressly provides, in 17 U.S.C. §301(a), that no

person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

66. N. C. Gen. Stat. §121-25(b) is additionally invalid, unconstitutional and unenforceable because it violates the Takings Clause and Due Process Clause of the United States Constitution, U.S. Const. Amends. V and XIV; and the Law of the Land Clause of the North Carolina Constitution, N.C. Const. Art. I, §19, by converting to public documents, without due process, without rights for notice and opportunity to be heard, and without compensation to the copyright owners, all photographs, video recordings, or other documentary materials of a derelict vessel or shipwreck or its contents, relics, artifacts, or historic materials in the custody of any agency of North Carolina government or its subdivisions; and by permitting the uncompensated use thereof by third parties without due process and without compensation to the copyright owners.

67. N. C. Gen. Stat. §121-25(b) is void and without legal force and effect; and its enforcement would deprive Plaintiffs of their property and/or the benefit of their property without due process and without recompense.

68. An actual, justiciable case or controversy exists between the parties as to the validity and enforceability of N.C. Gen. Stat. §121-25(b).

69. Plaintiffs are entitled to a declaration from the Court that N.C. Gen. Stat. §121-25(b) is unconstitutional, pre-empted by the Copyright Act, and altogether void and without legal force and effect.

## COUNT II
## COPYRIGHT INFRINGEMENT

70. Defendants jointly and severally have infringed the copyrights owned by Mr. Allen and damaged his licensee, Nautilus, by making or authorizing copies of Plaintiffs' works and posting or authorizing the posting and/or printing of the same in locations accessible to the public, from which further copies can and inevitably will be made by viewers.

71. Defendants McCrory and Kluttz and each of the defendants employed within DNCR had the ability to prevent and halt at least many of the infringements, and collectively had the ability to prevent and halt all of the infringements, but took no steps to do so.

72. To the extent, if any, that there is no direct liability for infringement by any of Defendants, said Defendants contributed to the infringements of other Defendants and/or benefited therefrom and are vicariously liable therefor.

73. Defendants have failed to recompense Plaintiffs for use of those copyrights, including use not only directly be Defendants but also use by each third party who gained access to Plaintiffs' works and made unlawful use of them as a result of Defendants' infringements.

74. Defendants, having previously infringed the copyrights in Mr. Allen's work, for which payment was previously made to Plaintiffs, knew or should have known their misappropriations of Plaintiffs' work were unlawful, and their above-described infringements were willful.

20

75. Defendants' continued unlawful conduct clearly is not deterred by the prospect of monetary sanctions and injunctive relief is necessary in addition to monetary recompense because Plaintiffs have no adequate remedy at law.

## COUNT III
## VIOLATION OF 42 U.S.C. §1983

76. Defendants have acted in concert and under color of state law to pass N.C. Gen. Stat §121-25(b), and to threaten Plaintiffs and Plaintiffs' vendors with enforcement thereof.

77. The Copyright Act was intended to benefit persons, such as Plaintiffs, who author (whether directly or as works for hire) works, who own copyrights in those works or are the licensees of copyrights, and who seek to benefit from and to enforce their rights therein.

78. Defendants attempted to deprive Plaintiffs to access to the courts for purposes of asserting Plaintiffs' legal rights.

79. Defendants' efforts to prevent Plaintiffs from enforcing rights under the Copyright Act, by passing and seeking to enforce N.C. Gen. Stat. §121-25(b), were willful and each of Defendants knew or should have known the proposed and ultimately enacted statute was unconstitutional and pre-empted by federal law, and that its passage and enforcement would harm both generally the class of persons whom the Copyright Act was intended to protect, and more specifically would harm Plaintiffs and the other private party to the Settlement Agreement (i.e., Intersal, Inc., Mr. Allen, and Nautilus), at whom the law was directed.

80. The acts complained of herein and above constitute an unconstitutional taking in violation of the Fifth Amendment of the United States Constitution. Moreover, Defendants have acted

21

without a modicum of concern for at least the individual Plaintiff's rights for notice and opportunity to be heard, all in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

## COUNT IV
## UNFAIR AND DECEPTIVE TRADE PRACTICES

81. Plaintiffs license, in commerce, from their location in North Carolina, the right to copy and use Plaintiff's video documentary works; and Plaintiffs are compensated for such use.

82. Defendants' wrongful actions described hereinabove were and are calculated to benefit DNCR, the Friends of QAR, and the spouse of Defendant Morris.

83. Defendants deliberately caused an unconstitutional and pre-empted statute, that any reasonable person in their position would have known violated clearly established statutory and constitutional rights, to be introduced, passed, and sought to be enforced.

84. Defendants unfairly and deceptively sought to compete with Plaintiffs in the marketing of Plaintiffs' work, by unlawfully removing from that work the copyright protection to which it was entitled and declaring that contracts acknowledging the copyrighted status of the work were void as a matter of public policy, and by otherwise implementing the provisions of N.C. Gen. Stat. §121-25(b).

85. Defendants' actions were in and affecting North Carolina commerce.

86. Plaintiffs were harmed by Defendants' unfair and deceptive actions.

## COUNT V
## CIVIL CONSPIRACY

87. Defendants agreed with each other to carry out the unlawful acts hereinabove alleged, the purpose and effect of which was to injure Plaintiffs by depriving them of property that was rightfully theirs and to prevent Plaintiffs from asserting their legal rights.

88. Each of defendants committed at least one of the overt acts taken in support of, and to achieve the effects of, the conspiracy.

89. As a proximate result of the acts committed in furtherance of the agreement, Plaintiffs suffered injury, including but not limited to those injuries alleged above.

## PRAYER FOR RELIEF

Plaintiffs demand trial by jury as to all issues so triable; and seek the following relief:

a) Declaratory judgment that N.C. Gen. Stat. §121-25(b) is void and unenforceable.

b) An injunction prohibiting enforcement of said statute;

c) An award of damages to Plaintiffs from defendants, jointly and severally to the extent not prohibited by the Eleventh Amendment or other immunity, sufficient to compensate Plaintiffs pursuant to each count set out above, together with their attorneys' fees and costs.

d) Trebling of such damages, on account of the willful nature of the conduct and, further, pursuant to statute;

e) In the alternative and/or to the extent not duplicative, an award of punitive damages in an amount sufficient to deter conduct such as that set out hereinabove;

f) In the alternative to recovery of the actual damages suffered as a result of the copyright infringements and any profits of the infringer with respect to such copyright infringements, an award of statutory damages for all infringements involved in the action as provided in 17 U.S.C. Sec. 504(c), together with an award of attorneys' fees and costs;

g) Such other and further relief as to the Court may seem just.

Respectfully submitted this 7th day of March, 2016.

OLIVE & OLIVE, P.A.
*Attorneys for Plaintiffs*

/s/Susan Freya Olive
Susan Freya Olive
  NC Bar No. 7252
David Loar McKenzie
   NC State Bar No. 36376
 P. O. Box 2049
Durham, North Carolina 27702
Telephone:  (919) 683-5514
Email: emailboxMDNC@oliveandolive.com


POE LAW FIRM PLLC

/s/ Joe Poe
G. Jona Poe Jr.
  NC State Bar No. 5920
Poe Law Firm PLLC
PO Box 15455
Durham, North Carolina 27704
Telephone: 919-471-4015
Email: joe@poelaw.com