UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:15-cv-627

FREDERICK L. ALLEN et. al.,            )
                                        )
                    Plaintiffs,         )
                                        )      **STATE DEFENDANTS' RESPONSE**
v.                                      )         **TO PLAINTIFFS' MOTION**
                                        )            **TO RECONSIDER**
ROY A. COOPER, III, as Governor of     )
North Carolina, et al.,                 )
                                        )
                    Defendants.         )
_____        )

**INDEX**

INTRODUCTION ............................................................................................................ 1

NATURE OF THE CASE ................................................................................................ 2

ARGUMENT .................................................................................................................... 4

Summary of the Argument ............................................................................................... 4

Discussion of Law ............................................................................................................ 6

I.  ALLEN FAILS TO ESTABLISH THE REQUISITE THRESHOLD CRITERIA TO AVAIL HIMSELF OF THE EXTRAORDINARY RULE 60(B)(6) RELIEF .................... 6

II. THE STATE'S ELEVENTH AMENDMENT IMMUNITY CONTINUES TO BAR PLAINTIFFS' TAKINGS CLAIM AFTER *KNICK V. TWP. OF SCOTT*, 139 S. CT. 2162 (2019) ................................................................................................................ 9

    A.  This Court and the Fourth Circuit Have Held that Federal Takings Claims Against Nonconsenting States are Barred by Sovereign Immunity ........................................... 9

    B.  *Hutto* Established that Sovereign Immunity Bars Plaintiffs from Raising Takings Claims Against a State in Federal Court ..................................................................... 10

    C.  The Supreme Court's Recent Decision in *Knick* is Consistent with *Hutto*, and Provides No Basis for Reconsideration ...................................................................... 12

    D.  *Hutto* is also Consistent with Longstanding Principles of Sovereign Immunity ......... 14

    E.  To the Extent He Has a Valid Takings Claim, State Courts Offer Adequate Venues for Allen's Alleged Damages ......................................................................................... 15

III. ALLEN'S EFFORTS TO PREMISE THE NEED FOR RECONSIDERATION ON THE *UNITED STATES V. GEORGIA* RATIONALE ALSO FAIL ........................................... 18

CONCLUSION .............................................................................................................. 24

CERTIFICATE OF SERVICE ....................................................................................... 26

Case 5:15-cv-00627-BO   Document 114   Filed 10/16/20   Page 2 of 28

| | | |
|---|---|---|
| FREDERICK L. ALLEN et. al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **STATE DEFENDANTS' RESPONSE** |
| v. | ) | **TO PLAINTIFFS' MOTION** |
| | ) | **TO RECONSIDER** |
| ROY A. COOPER, III, as Governor of | ) | |
| North Carolina, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Now come Defendants Roy A. Cooper, et.al. ("State Defendants"), and pursuant to Local Rule 7.2 respectfully submit this memorandum in opposition to Plaintiffs' motion for reconsideration of this Court's March 23, 2017 dismissal of Count III of Plaintiffs' First Amended Complaint ("Complaint").

## INTRODUCTION

A State may not be sued for a takings claim in federal court, so long as the State's courts are open to adjudicate such claims. *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 552 (4th Cir. 2014). On March 23, 2017, this Court correctly dismissed Allen's takings claim as barred by the North Carolina's sovereign immunity. DE 69 at 18, 28. Having lost his appeal based on the alleged copyright infringement by State Defendants, Allen now seeks reconsideration of that dismissal. Allen's request should be denied, because no adequate reason exists to justify the request for reconsideration. Contrary to Allen's argument, neither did the Supreme Court of the United States recently find that States lost their sovereign immunity in takings lawsuits, nor did the State of North Carolina otherwise consent to such suits in federal courts. Sovereign immunity continues to bar takings claims against the State of North Carolina. If Allen indeed has any remaining cause

1

of action against the State Defendants, its place is in state courts. This Court correctly dismissed Allen's takings claim on that ground in 2017, and should deny Allen's request to reconsider its dismissal three and a half years later.

## NATURE OF THE CASE

This case concerns the online display of a few copyrighted images by the North Carolina Department of Natural and Cultural Resources whose purpose is to preserve and promote state history.

When the shipwreck *Queen Anne's Revenge* was discovered off the coast of North Carolina "through a permit issued by North Carolina to the ship's salvors"- company Intersal, the North Carolina Department of Natural and Cultural Resources employed a team of professional divers and research scientists to excavate, preserve, and study the wreck. *Allen v. Cooper*, 895 F.3d 337, 342 (4th Cir. 2018).

Under the terms of an agreement with Intersal, Plaintiff here, a local videographer named Rick Allen, documented the excavation. State Defendants secured written guarantees that it could use the resulting materials to further its educational mission. Allen sued the State Defendants for copyright infringement, citing the agency's display of a handful of snippets of Allen's work in educational videos and an image in a museum newsletter.

Allen claimed that State Defendants' use of the images was copyright infringement. Allen sued the State Defendants, as well as several State Defendants' employees personally. He also alleged that State Defendants violated his due-process rights by amending the State's public-records law – an act that he alleged amounted to taking of his property without just compensation. DE 12 ¶¶ 76-80 (Count III of Amended Complaint). Shortly after Allen filed his complaint, the State Defendants removed the images from their online locations. DE 63-2.

State Defendants also moved to dismiss.  It argued that sovereign immunity bars all claims brought by Allen.  The district court denied the motion to dismiss Allen's copyright claim, concluding that the Congress appropriately abrogated the State's immunity pursuant by the terms of the Copyright Remedy Clarification Act ("CRCA") under congressional powers stemming from Section 5 of the Fourteenth Amendment.  This Court however dismissed Allen's takings claim based on the State's sovereign immunity concluding that the Fourth Circuit's precedent in *Hutto* mandated the dismissal.  DE 69 at 18, 28.  The State Defendants appealed to challenge this Court's denial of its sovereign, qualified and legislative immunity defenses.  Allen cross-appealed, challenging several of the district court's specific conclusions regarding sovereign immunity, including the dismissal of the request for declaratory judgment that an amended public records law violated his Fifth Amendment rights.  *Allen*, 895 F.3d at 346.

The Fourth Circuit first reversed on copyright grounds.  The court held that Congress cannot abrogate sovereign immunity under Article I's Intellectual Property Clause, and also held that the Copyright Remedy Act was not valid under Section 5.  *Allen*, 895 F.3d at 347-54.  The Fourth Circuit also dismissed all claims against the individual Defendants with prejudice.  The appellate court held that those Defendants could have reasonably believed that Allen had authorized them to display his works online for noncommercial purposes.  *Id*. at 356-58.  The Fourth Circuit also affirmed this Court's dismissal of Allen's takings claim.  *Id*. at 354-55.

Allen petitioned for review of the Fourth Circuit's decision with respect to its holding on States' immunity from copyright infringement claims to the Supreme Court of the United States, but chose not to seek a certification based on the dismissal of his takings claim.  The Supreme Court of the United States affirmed the Fourth Circuit's decision in all respects.  It concluded that the sovereign immunity bars copyright infringement actions against nonconsenting States.

3

According to the United States Supreme Court, "Article I's Intellectual Property Clause could not provide the basis for an abrogation of sovereign immunity[,]" and "Section 5 of the Fourteenth Amendment could not support an abrogation on a legislative record like the one here." *Allen v. Cooper*, 140 S. Ct. 994, 1007 (2020). Thus, it held that Congress lacked authority to abrogate the States' sovereign immunity on either one of these grounds. Dismissal of Allen's copyright infringement claims was therefore affirmed, and the Supreme Court did not remand for any additional findings on takings or due process claims.

Pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, Allen now asks the Court to reconsider its 2017 dismissal of Count III of Allen's Complaint.

## ARGUMENT

### *Summary of the Argument*

Allen's Rule 60(b)(6) motion to reconsider dismissal of takings claim should be denied because it is untimely, fails to meet the procedural threshold for reconsideration including the motion's lack of a meritorious legal basis for abrogation of the States' sovereign immunity, and otherwise offers no sufficient reason to justify this extraordinary request for relief from a final decision of this Court.

Under the binding rule set forth in *Hutto*, Allen's takings claim may not be revived. North Carolina's state courts offer plaintiffs a venue to pursue takings and due process claims, so the State is immune from any such claims in federal court. On that basis, in March 2017, this Court properly concluded that it lacked jurisdiction to evaluate Allen's takings claim. DE 69 at 18, 28.

Plaintiffs and their supporting amicus urge this Court not to apply *Hutto*, because, in their view, *Hutto*'s holding has been undermined by the U.S. Supreme Court's recent decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019). DE 106 at 2, 7-10, DE 110-2 at 2-7. That is

4

inaccurate, as every court of appeals that has considered the question has confirmed. Because the *Knick* defendant was a municipality, the Court had no occasion to address the question of sovereign immunity. For that reason, although *Knick* clarifies that landowners will ordinarily be able to raise federal takings claims as soon as the government takes their property, it does not nullify the sovereign immunity that States can assert against such claims. Indeed, every court to consider the issue since *Knick* has agreed that the decision did not override States' sovereign immunity from takings lawsuits in federal court. See *infra* at 12-13.

Allen additionally fails to argue that even if *Hutto* remains good law, it would not apply based on a lack of adequate remedies in state courts. That is for good reason. In general, constitutional takings claims can be asserted in North Carolina state courts if no other adequate state remedy exists. *Corum v. Univ. of N.C.*, 413 S.E.2d 276, 289 (N.C. 1992). Moreover, a breach of contract action is available for those aggrieved by the State's failure to comply with contractual obligations, including any settlement agreements. Indeed, a common law breach of contract litigation stemming from the alleged breach of 2013 Settlement Agreement to which Allen was a party is currently ongoing in the North Carolina Business Court. In North Carolina, Plaintiffs are also able to seek compensation for negligence of state employees under the terms of the Tort Claims Act to the extent any property rights are injured by negligent conduct. N.C. Gen. Stat. § 143-291, *et. seq.* These remedial options offer plaintiffs like Allen an array of adequate state measures to secure full compensation, if in fact they have suffered a taking. Finally, Allen's motion and Complaint also fail to make out a compensable takings claim under the factors established by *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978).

Much as Allen may wish to proceed in federal court, North Carolina's sovereign immunity does not permit him to do so. This district court's March 23, 2017 judgment dismissing takings

claim should not be disturbed. As this Court correctly held, the State continues to be protected by the Eleventh Amendment immunity under *Hutto*. DE 69 at 18. *Knicks* did not change that outcome. The State's argument in the United States Supreme Court did not change that outcome either, as it highlighted a number of shortcomings in Allen's takings argument under *Georgia* rationale. Therefore, the Court continues to lack jurisdiction to decide this claim against the State, and Allen's motion for reconsideration should be denied.

*Discussion of Law*

## I. ALLEN FAILS TO ESTABLISH THE REQUISITE THRESHOLD CRITERIA TO AVAIL HIMSELF OF THE EXTRAORDINARY RULE 60(B)(6) RELIEF.

Rule 60(b)(6) of the Federal Rules of Civil Procedure authorizes the court to relieve a party from a judgment or order for "any … reason that justifies relief."

As an initial threshold matter in order to obtain a relief from a judgment under any Rule 60(b) motion, "a moving party must first show (1) that the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside." *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018). Unlike other specified reasons for reconsideration, the catchall provision of Rule 60(b)(6) has been described as "a grand reservoir of equitable power to do justice in a particular case [that is nevertheless] not bottomless." *Fed. Ins. Co. v. Kingdom of Saudi Arabia (In re Terrorist Attacks on September 11, 2001 (Kingdom of Saudi Arabia))*, 741 F.3d 353, 356 (2d Cir. 2013). To avail himself of a Rule 60(b)(6) relief, "[a]fter a party has crossed this initial threshold," the movant must also demonstrate the existence of "extraordinary circumstances." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993); *United States v. Salas*, 807 F. App'x 218, 225 (4th Cir. 2020).

Allen fails each requisite prong of this Rule: he moved to reconsider the dismissal of his takings claim belatedly, and showed neither the existence of a meritorious claim to justify

6

reconsideration nor extraordinary circumstances to support the relief requested. The State would be unfairly prejudiced if Allen's motion to reconsider is granted under these circumstances.

First, "[a] motion under Rule 60(b) must be made within a reasonable time[,]" Fed. R. Civ. P. 60(c), and "the movant bears the burden of showing timeliness." *Moses v. Joyner*, 815 F.3d 163, 166 (4th Cir. 2016). Here, Allen moved to reconsider the dismissal of his takings claim three and a half years after its dismissal. The motion was filed well outside the bounds of any reasonable time for reconsideration, and Allen fails to offer any justification for his belated filing. The Fourth Circuit has previously held that waiting even 2 years after the entry of the order in order "to file … Rule 60(b) motion …is not reasonably timely." *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 300 (4th Cir. 2017).

The fact that Allen was appealing the Fourth Circuit's dismissal of his copyright infringement claim but chose not to perfect the appeal on dismissal of his takings claim at the same time does not make his delay any more reasonable. That is so because this Circuit has consistently barred litigants from using Rule 60 to bring what amounts in substance to untimely appeals. *See Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (en banc) ("[I]f the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal."); *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992) (per curiam) ("A Rule 60(b) motion may not substitute for a timely appeal."); *United States v. Salas*, 807 F. App'x 218, 229 (4th Cir. 2020) (the same).

Second, Allen also fails to establish any extraordinary circumstances that could justify a grant of a Rule 60(b)(6) motion. Allen argues that the Supreme Court's change in decisional law

is an extraordinary circumstance that warrants reconsideration.[1]  However, it is well settled that a change in decisional law is not grounds for relief under Rule 60(b)(6). *Ackermann v. United States*, 340 U.S. 193 (1950) (affirming the denial of Rule 60(b)(6) relief to a party who failed to appeal an adverse judgment and then relied on the reversal of a similar judgment in a related case.); *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48-49 (4th Cir. 1993) (holding that "a change in decisional law subsequent to a final judgment provides no basis for relief under Rule 60(b)(6)").

Moreover, *Allen*'s attempt to revive the dismissed takings claim on the grounds articulated in *United States v. Georgia*, 546 U.S. 151 (2006), cannot be justified by a change in decisional law in any case.  *United States v. Georgia* is not a new law.  It was decided more than 10 years before this Court dismissed Allen's takings claim on the basis of sovereign immunity.  To the extent Allen believed that this Court's dismissal was wrong on *Georgia* grounds, his proper recourse was to appeal that issue simultaneously with his cross-appeal to the Fourth Circuit and beyond on the remaining issues, instead of engaging in this piecemeal litigation.  An attempt to make the takings claim viable now, under a new legal theory, is both belated and not grounded in any arguable change of precedent.  Allen fails both the timeliness and extraordinary circumstances prongs of Rule 60(b)(6) in connection with his *Georgia* claim.

Third, a court may grant relief under Rule 60(b)(6) only if such action is appropriate to "accomplish justice." *Wells Fargo Bank*, 859 F.3d at 303.  Yet granting relief under the Rule accomplishes no justice, where movants make a "'voluntary, deliberate, free, [and] untrammeled

---

[1] Moreover, as State Defendants explain *infra* on pp 11-13, Allen and his supporting amicus are both incorrect to claim that *Knick* supports Allen's motion to reconsider on the theory of recent abrogation of states' sovereign immunity. Nor is a one year wait after *Knick*'s decision make Allen's motion to reconsider any more timely.

8

choice,'[], not to appeal the decision of the district court." *Dowell*, 993 F.2d 46, 48-49 (citing *Ackermann*, 340 U.S. at 200). Allen here, just as *Ackermann* and *Dowell* movants, made "a considered choice not to appeal," *id.*, from the dismissal of his takings and due process claim in 2017. *See* DE 106 at 8 (conceding that "this Court, as it was required to do, relied on then-prevailing law at the time this Court dismissed Allen's takings claim"), DE 110-2 at 2 ("Allen understandably chose not to include that issue in his interlocutory cross-appeal"). Allen now "cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong . . . . There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from." *Id.* No just end would be served by allowing this post-appeal request to reconsider.

As discussed above, Allen failed to make a showing of requisite procedural criteria to avail himself of Rule 60(b)(6) relief. Vacating the judgment that dismissed Allen's takings claim under these circumstances would unfairly prejudice the State Defendants and "would not 'accomplish justice,' [] but would undermine it." *Wells Fargo Bank,* 859 F.3d at 303 (citing *Klapport*). Allen's motion should be denied on that basis alone, and this Court needs to undertake no additional analysis of the issues raised. But, as shown *infra*, Allen's motion also lacks any merit that would warrant reconsideration of the issue, even in the absence of the highlighted procedural deficiencies.

## II. THE STATE'S ELEVENTH AMENDMENT IMMUNITY CONTINUES TO BAR PLAINTIFFS' TAKINGS CLAIM AFTER *KNICK V. TWP. OF SCOTT*, 139 S. CT. 2162 (2019).

### A. This Court and the Fourth Circuit Have Held that Federal Takings Claims Against Nonconsenting States are Barred by Sovereign Immunity.

State sovereign immunity is a central feature of "our constitutional structure." *Franchise Tax Bd. v. Hyatt*, 139 S. Ct. 1485, 1489 (2019). This basic principle has been reaffirmed in Allen's appeal from the Fourth Circuit's decision that remanded for dismissal of his each and every claim

in this very matter. The Supreme Court once again repeated that "In our constitutional scheme, a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen*, 140 S. Ct. at 1000.

The Fourth Circuit, as every other federal court of appeals that analyzed the issue, has applied these longstanding principles of immunity to bar takings claims from being brought against a State in federal court, so long as the State's courts provide an adequate forum for such claims. *Hutto*, 773 F.3d at 551; s*ee infra* at 9-11. This Court similarly and correctly dismissed Allen's takings claim in 2017 citing *Hutto* and North Carolina's sovereign immunity as the basis for dismissal. Indeed, Plaintiffs concede that dismissal in 2017 was proper. DE 106 at 2, 8.

In bid to gain reconsideration of that dismissal, Plaintiffs now argue that *Hutto* holding has been undermined by the Supreme Court's recent decision in *Knick*, 139 S. Ct. 2162. DE 106 at 2, 4-5, 7-10. But *Knick* has no bearing on issues of sovereign immunity and, in any event, is easily reconcilable with *Hutto*. This Court, accordingly, remains bound by its prior decision and the Fourth Circuit's holding in *Hutto* to recognize that States have sovereign immunity from takings claims filed in federal court where, as here, the State provides adequate procedures to resolve such claims in its own courts.

**B.** ***Hutto* Established that Sovereign Immunity Bars Plaintiffs from Raising Takings Claims Against a State in Federal Court.**

In this Circuit, the law is clear: "The Eleventh Amendment bars Fifth Amendment taking claims against States *in federal court* when the *State's courts* remain open to adjudicate such claims." *Hutto*, 773 F.3d at 552. This rule has been in place since 2014, when the Fourth Circuit decided *Hutto*.

In that case, a class of South Carolina public employees filed a takings claim against two state-created pension plans and the state officials serving as trustees and administrators of the

plans. *Id.* at 540. The defendants moved to dismiss the suit, arguing that, under the Eleventh Amendment, they were immune from suit in federal court. *Id.* at 541. The Fourth Circuit concluded that as long as "the State's courts remain open to adjudicate [takings] claims," a plaintiff who has suffered a takings violation can still enforce the Constitution's compensation guarantee. *Id.* at 552 (emphasis omitted). The Court accordingly held that when State's courts offer adequate remedies, "the Eleventh Amendment bars Fifth Amendment takings claims against States in federal court." *Id.* (emphasis omitted).

In so holding, this Court joined a unanimous group of federal courts of appeals. Seven other federal appellate courts uniformly "held that the Takings Clause does not override the Eleventh Amendment." *Hutto*, 773 F.3d at 553; *see, e.g.*, *Citadel Corp. v. P.R. Highway Auth.*, 695 F.2d 31, 33 n.4 (1st Cir. 1982); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456-57 (5th Cir. 2019); *DLX, Inc. v. Kentucky*, 381 F.3d 511, 526 (6th Cir. 2004), *overruled in part on other grounds by San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323 (2005); *Garrett v. Illinois*, 612 F.2d 1038, 1040 (7th Cir. 1980); *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 954 (9th Cir. 2008); *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019); *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1279 (11th Cir. 1998). Thus, in all of these circuits, States enjoy sovereign immunity from takings claims brought in federal courts, so long as the States' courts provide an adequate remedy.

Allen asks this Court to disregard *Hutto*. But this Court is "bound to apply circuit precedent until it is either overruled … or superseded by a decision of the Supreme Court." *Chisolm v. TranSouth Fin. Corp.*, 95 F.3d 331, 337 n.7 (4th Cir. 1996). Neither of those prerequisites has occurred here. *Hutto* thus remains the law in this Circuit.

### C. The Supreme Court's Recent Decision in *Knick* is Consistent with *Hutto*, and Provides No Basis for Reconsideration.

Plaintiffs' request for this Court to disregard binding precedent is premised, in large part, on the Supreme Court's recent decision in *Knick*, 139 S. Ct. 2162. Plaintiffs are mistaken in reasoning that *Hutto* is not viable after *Knick*: the two cases are wholly consistent.

In *Knick*, the Supreme Court reevaluated a longstanding rule requiring property owners to seek "just compensation under state law in state court *before* bringing a federal takings claim." 139 S. Ct. at 2169 (emphasis added). Explaining that the rule had caused "unanticipated consequences" that often prevented plaintiffs from *ever* raising their federal takings claims, the Court abandoned the state-exhaustion rule. *Id.* at 2167–68. To justify this abandonment, the Court stated that a property owner "suffer[s] a violation of his Fifth Amendment rights" the moment "the government takes his property without compensation." *Id.* at 2168. For that reason, the Court held, the owner should not have to wait to bring suit in a federal forum. *Id.*

*Knick*'s rationale does not address the issue of sovereign immunity in any manner.[2] The defendant in *Knick* was a local government, and local governments have no claim to sovereign immunity. *Jinks v. Richland Cnty.*, 538 U.S. 456, 466 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit."). The *Knick* Court simply had no occasion to address state sovereign immunity, much less to limit its scope. For this reason, every appellate court – three in all -- to consider the issue has since concluded that *Knick* does not undermine the rule that sovereign immunity bars takings claims against States in federal court.

---

[2] And while Allen also relies on the *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987), DE 106 at 9, that reliance is misplaced for the same reasons as Allen's reliance on *Knick*. Like *Knick, First English* did not concern the Eleventh Amendment or even mention it. Thus, in its decision in *Hutto*, the Fourth Circuit appropriately paid *First English* no attention.

*See, e.g.*, *Bay Point Props., Inc.*, 937 F.3d at 456 (5th Cir. 2019) ("To begin with, the Court did not even have occasion to reconsider sovereign immunity law in *Knick*."); *Williams*, 928 F.3d at 1214 ("*Knick* did not involve Eleventh Amendment immunity."); *Ladd v. Marchbanks*, 971 F.3d 574 (6th Cir. 2020) ("Knick held only that takings plaintiffs are no longer required to exhaust their claims in state court before filing a federal claim … it did not alter the sovereign immunity framework … . In fact, the Court implies that sovereign immunity does have a role to play in takings cases.")

Indeed, another U.S. District Judge in this jurisdiction recently concluded that sovereign immunity continued to apply after *Knick*, and dismissed plaintiffs' takings claim on that basis. *Zito v. N.C. Coastal Res. Comm'n*, No. 2:19-CV-11-D, 2020 U.S. Dist. LEXIS 53648, at *25 (E.D.N.C. Mar. 27, 2020) ("Of course, the Court in *Knick* did not consider sovereign immunity under the Eleventh Amendment because *Knick* involved a suit between a private property owner and a locality that was not entitled to sovereign immunity under the Eleventh Amendment.")

Because *Knick* does not address sovereign immunity, the case is easy to reconcile with *Hutto*. One decision (*Knick*) specifies *when* a plaintiff can bring a takings claim (immediately after an alleged taking), and the other decision (*Hutto*) specifies the appropriate *forum* for such a claim when the defendant is a State (the State's courts). This Court thus can give effect to both *Knick* and *Hutto* simply by directing Allen to pursue their takings remedy in state court.

Since *Knick* does not require reconsideration of North Carolina's sovereign immunity, the decision does not disrupt *Hutto*'s holding that takings claims cannot proceed against a State in federal court. This Court should reject the request to reconsider its prior dismissal on that basis.

13

**D.**     *Hutto* **is also Consistent with Longstanding Principles of Sovereign Immunity.**

Finally, this Court should continue to follow the binding decision in *Hutto* because the case's holding is consistent with foundational principles of sovereign immunity. Preserving the States' immunity was so important to the Framers that "[t]he Constitution never would have been ratified" if it required a different result. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239, n.2 (1985).

For this reason, the Supreme Court has only "permitted a federal court to entertain a suit against a nonconsenting State on two conditions." *Allen*, 140 S. Ct. at 1003. "First, Congress must have enacted 'unequivocal statutory language' abrogating the States' immunity from the suit." *Id.* (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 56 (1996)). "And second, some constitutional provision must allow Congress to have thus encroached on the States' sovereignty." *Id.* at 1001.

Here, the Supreme Court in *Allen* already concluded that Congress was not authorized to encroach upon the States' sovereignty when it enacted CRCA. And Allen has sued a state agency, seeking money damages from the state treasury. DE 12 at 23. This kind of lawsuit strikes at the heart of North Carolina's sovereign immunity. After all, sovereign immunity's core function is to block courts "from awarding damages against the state treasury." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S 89, 120 (1984). Moreover, Allen identifies no historical evidence to show that the Framers intended the Takings Clause to limit state sovereign immunity. The Takings Clause did not even apply to the States until it was incorporated through the Fourteenth Amendment. Allen therefore cannot show that the Framers intended for the Fifth Amendment to abrogate the States' sovereign immunity from takings claims. Likewise, Allen points to no historical evidence that the Fourteenth Amendment was intended to abrogate States' sovereign immunity from takings claims.

14

Allen offers no reason for this Court to second-guess the Fourth Circuit's binding precedent in *Hutto* and deviate from the strong presumption that the Constitution preserves state sovereign immunity for takings claims.

**E.     To the Extent He Has a Valid Takings Claim, State Courts Offer Adequate Venues for Allen's Alleged Damages.**

This Court correctly ruled in 2017 that "Because [an adequate state] remedy is available in the State's courts, the Court finds that count III must be dismissed." DE 69 at 18. Plaintiffs with valid takings claims have several routes of compensation available: for common law breach of contract, under State tort claim theory and under the North Carolina Constitution. These venues provided Allen with a path to full compensation in North Carolina's state courts, if they found he had in fact suffered a taking. Given these adequate state procedures, Plaintiffs' federal lawsuit is barred by sovereign immunity. *Hutto*, 773 F.3d at 552.

If Allen indeed has suffered a taking following his settlement with the State in 2013, North Carolina courts feature an established process for full compensation.

First, plaintiffs who allege State's failure to perform under a contract could generally turn to state superior courts on the theory of common law breach of contract. Here, the Fourth Circuit already concluded that Allen's rights are limited by contract – a 2013 Settlement Agreement. *Allen*, 895 F.3d at 356 ("In this case, Allen and Nautilus obtained their rights to take videos and photographs of the Revenge shipwreck from Intersal, who in turn obtained the rights from the Department. And any rights that Allen and Nautilus have to those videos and photographs are circumscribed by the provisions of the 2013 Settlement Agreement with the Department.").

Indeed, there is an ongoing superior court action -- the action in which Allen participates as a witness for plaintiff-Intersal -- stemming from the alleged violation of intellectual property rights and breach of 2013 settlement agreement between Intersal, "DNCR, and plaintiff's long-

15

time 'QAR Video Designee,' Nautilus Productions, LLC (Nautilus)." *Intersal, Inc. v. Hamilton*, 373 N.C. 89, 93, 834 S.E.2d 404, 409 (N.C. November 1, 2019); *see also* DE 12 ¶¶ 50-59. In that case, the North Carolina Supreme Court recently confirmed that "a plaintiff may bring a breach of contract claim against a State agency in superior court [because] 'whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract[,]' and accordingly, the State cannot invoke the doctrine of sovereign immunity as a defense." *Intersal, Inc. v. Hamilton*, 373 N.C. 89, 102, 834 S.E.2d 404, 414, (N.C. November 1, 2019) (quoting *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976)). So to the extent Allen claims compensatory damages from the State's breach of Settlement Agreement, state courts provide an avenue for compensation.

Additionally, Allen has failed to allege intentional infringement as established by the law of the case that governs this matter. *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) ("Under the law of the case doctrine, as a practical matter, once the 'decision of an appellate court establishes 'the law of the case,' it 'must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal[.]'") The Fourth Circuit's analysis of the issue of qualified immunity in this case has already concluded that "it is far from clear whether the Department was prohibited from displaying Allen's copyrighted materials in the manner alleged in the complaint," and "that reasonable officials in the position of the North Carolina officials would not have understood beyond debate that their publication of the material violated Allen's rights .... ." *Allen v. Cooper,* 895 F.3d 337, 357 (4th Cir. 2018). Under this established law of the case, the best Allen can allege is a negligent, not intentional, violation of his rights. The North Carolina Tort Claims Act empowers the North Carolina Industrial Commission to award

compensatory damages when it "finds that there was negligence on the part of an officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority that was the proximate cause of the injury[.]"  N.C. Gen. Stat. § 143-291.  So a state forum offers yet another venue for potential compensatory relief.

Finally, the North Carolina Supreme Court has made clear that a plaintiff may bring a "direct claim against the State" for violations of the North Carolina Constitution—notwithstanding any sovereign immunity bar that might otherwise apply—if the claimant's rights cannot be fully redressed through statutory or other state claims.  *Corum v. Univ. of N.C.*, 413 S.E.2d 276, 289 (N.C. 1992).  This principle applies in the context of a takings claim brought under the Law of the Land Clause, like the one Allen seeks to allege here, DE 12 ¶ 66 ("N.C. Gen. Stat. § 121-25(b) is additionally invalid, unconstitutional and unenforceable because it violates … the Law of the Land Clause of the North Carolina Constitution, N.C. Const. Art. I, § 19.") (Ex D).  *See Midgett v. N.C. State Highway Comm'n*, 132 S.E.2d 599, 608 (N.C. 1963) ("A constitutional prohibition against taking or damaging private property for public use without just compensation is self-executing, and neither requires any law for its enforcement nor is susceptible of impairment by legislation." (citations omitted)).[3]  Even in the absence of any other remedies, a *Corum* claim in state courts serves as yet another vehicle that offers relief to the plaintiffs who are aggrieved by the State's uncompensated taking.

In sum, Allen's argument that *Knick* compels reconsideration should be rejected.  *Knick* has not reversed *Hutto*.  Holdings in these cases are easy to reconcile, and *Hutto* continues to be a good, binding authority in this jurisdiction.  Therefore, where, as here, state tribunals offer

---

[3] The Law of the Land Clause could also serve as a backstop should Allen believe that breach of contract or a tort lawsuit has not resulted in full compensation that is due to him.

adequate remedies for alleged takings violations, sovereign immunity continues to bar federal lawsuits against the States.

## III.    ALLEN'S EFFORTS TO PREMISE THE NEED FOR RECONSIDERATION ON THE *UNITED STATES V. GEORGIA* RATIONALE ALSO FAIL.

Allen alternatively argues that "North Carolina conceded that allegations of intentional infringement permit Allen to proceed with a direct constitutional claim under the abrogation doctrine established in the *United States v. Georgia*." DE 106 at 2.

In *Georgia*, the Supreme Court considered whether Congress validly abrogated the sovereign immunity of the States under the Title II of the ADA. 126 S. Ct. at 880-81. The Court held that Title II featured an unequivocal expression of congressional intent to abrogate sovereign immunity, and concluded that when "Title II creates a private cause of action for damages against the States for conduct that actually violates that Fourteenth Amendment, Title II validly abrogates sovereign immunity." *Id.* The Court declined to decide whether the ADA validly abrogates sovereign immunity for claims "premised on conduct that does not independently violate the Fourteenth Amendment." *Id.* The United States Supreme Court then remanded to the lower court to give the plaintiff an opportunity to amend his complaint, after which the lower court would be best situated to determine, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II, (2) to what extent such misconduct also violated the Fourteenth Amendment, and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Id.* Allen's argument that *Georgia* supports his motion to reconsider fails for at least three reasons.

First, Allen misunderstands the nature of the State's argument in the United States Supreme Court. North Carolina made no concessions that justify reconsideration of the prior dismissal of

18

Allen's takings claim. Instead, counsel for State Defendants pointed out that while takings and claims may conceivably be viable in federal courts under the Supreme Court's *Georgia* decision when allegations actually establish intentional infringement and a lack of adequate state process, *Allen v. Cooper*, No. 18-877, Tr. 39:21-25, 40:1-2, nevertheless those claims were not viable here. The State, in the first instance, explained that Allen failed to allege *Georgia* claim in either this Court or in the Fourth Circuit:

> …we have been here litigating this case against Mr. Allen for four years, and the first time that he ever raised this *Georgia* issue of a direct constitutional challenge was in his reply brief in this Court.

*Allen v. Cooper*, No. 18-877, Tr. 39:21-25, 40:9-13.

On the merits of Allen's newly raised *Georgia* theory, the State also specifically argued that it fails because:

> …to complete a due process violation for a deprivation of property, two additional features are required; you need to be deliberate and there needs to be no alternative remedy. And, here, there are other alternative remedies that could be available.

*Allen v. Cooper*, No. 18-877, Tr. 39:21-25, 41:13-18; see also Tr. 41-46 (arguing that a claim of deliberate deprivation also fails).

Second, as explained *supra* on pp 18-24, *United States v. Georgia* cannot serve as a basis for reconsideration or act as a substitute for an appeal three and a half years after this Court dismissed Allen's takings claim. *United States v. Georgia* well predated this Court's dismissal of Allen's takings claim, and to the extent Allen disagreed with this Court's decision on *Georgia* grounds, he should have joined this issue on his appeal to the Fourth Circuit and the United States Supreme Court. Instead, Allen conceded during the argument to the United States Supreme Court that he has failed to perfect appeal on *Georgia* rationale. *Allen v. Cooper*, No. 18-877, Tr. 30-32. This Court should deny Allen's motion to reconsider dismissal on that basis because it is untimely,

amounts to an improper substitute for an appeal, and otherwise features no extraordinary circumstance or a recently changed precedent. That is especially so where unlike in *Georgia*, where the Supreme Court specifically remanded for amendment of the Complaint and consideration of additional issues, 546 U.S. at 160, here, having heard Allen's and State's arguments about *Georgia*'s impact on this case, the Supreme Court did not order a similar remand.

Third, Allen's Georgia argument fails on the merits too. It is true that Congress may use Section 5 to abrogate state sovereign immunity for the narrow subset of copyright infringement that is actually unconstitutional. *Georgia*, 546 U.S. at 158. Thus, although the Act's broader abrogation is invalid, the Act could arguably be valid insofar as it authorizes lawsuits against conduct that actually violates Fourteenth Amendment. Allen now argues that his takings and due process claim should proceed under this narrow abrogation rationale.

But as counsel for State Defendants submitted and as Allen conceded in the Supreme Court, Allen has never argued before this Court that State Defendants violated due process when they displayed his copyrighted images online. *Allen v. Cooper*, No. 18-877, Tr. 30-32, 39:21-25, 40:9-13.[4] Thus, no due-process claim by infringement of copyrighted images was ever before this Court, and by definition cannot serve as a basis for reconsideration.

But, even if Allen had argued that the alleged infringement by the State Defendants violated Takings and Due Process Clauses, that claim would yet fail. To begin with, Allen has not plausibly alleged that any infringement by the State Defendants was intentional. Instead, as the Fourth Circuit held, State Defendants reasonably believed that they could use the images under the

---

[4] And although Allen claimed before that, in addition to infringing under CRCA, State Defendants also violated due process and effected takings when they enacted an amendment to the state's public-records law, *see* Ex. D, he did not perfect his appeal on the takings or due process issue in the United States Supreme Court. This Court's and the Fourth Circuit's dismissal of that claims stands.

Case 5:15-cv-00627-BO   Document 114   Filed 10/16/20   Page 22 of 28

settlement agreement, which explicitly authorized them to display Allen's "noncommercial digital media." *Allen*, 895 F.3d at 356-57. Further, State Defendants had reason to believe that their noncommercial use of the images to make educational videos was fair use--and therefore non-infringing. *Id*. Therefore, as established by the Fourth Circuit on the facts in this case, such conduct fails to serve as a basis for a Fourteenth Amendment claim.

Moreover, North Carolina provides a range of alternative remedies that satisfy due process under the circumstances of this case. For example, as argued *supra* at 14-17, North Carolina has waived sovereign immunity in its own courts for a number of relevant claims, including claims for breach of contract, takings, and some torts. *Ferrell v. Dep't of Transp.*, 435 S.E.2d 309, 313 (N.C. 1991) (takings); *Teachy v. Coble Dairies, Inc.*, 293 S.E.2d 182, 185 (N.C. 1982) (torts); *Smith v. State*, 222 S.E.2d. 412, 423-24 (N.C. 1976) (breaches of contract). The Supreme Court has explicitly recognized that these remedies satisfy due process. *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 644 n.9 (1999)(observing that Florida provides alternative remedies for patent infringement, including "through a takings or conversion claim"); *Georgia*, 546 U.S. at 158 (recognizing that "Florida satisfied due process by providing remedies for patent infringement by state actors"). So, Allen's due process claim must necessarily fail.

Allen's takings claim fares no better. The Takings Clause in the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226, 239 (1897), *see also Dolan v. Tigard*, 512 U.S. 374, n. 5 (1994), requires that "private property [shall not] be taken for public use, without just compensation." As an initial matter, it is exceedingly rare for a takings claim to succeed, where, as here, a due process claim fails. "[W]here a due process claim is unsuccessful, 'it would be surprising indeed to discover the

challenged statute nonetheless violat[es] the Takings Clause.'" *Pulte Home Corp. v. Montgomery Cty.*, 909 F.3d 685, 695 (4th Cir. 2018).

Moreover, Allen fails to allege any possible taking by the State under the substantive test announced in *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 122 (1978). Federal courts generally start their takings inquiry by weighing "whether the restrictions imposed by [the State] effect a 'taking' of … property for a public use within the meaning of the Fifth Amendment[.]" *Id*. In assessing a takings claim, "courts consider '(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action.'" *Pulte Home Corp.*, 909 F.3d at 695 (reciting the factors set forth in *Penn Cent. Transp. Co.*, 438 U.S. at 124).

As to the first factor, neither in his Complaint nor in his motion to reconsider does Allen cite to any allegation that sets the exact diminution in value his property has suffered as a result of the State's alleged infringement.[5] (Ex. D)  Indeed, Allen fails to allege entirely that the value of his work diminished as a result of the State's allegedly infringing actions.  On the second *Penn Central* factor, any allegations that the State displayed some snippets of Allen's body of work fall short of establishing *Penn*'s second criteria – substantial interference with Allen's copyrighted body of work as to amount to a compensable taking.  That is especially so here, where Allen's alleged property rights in photos and videos were already "circumscribed by the provisions of the 2013 Settlement Agreement with the Department." *Allen*, 895 F.3d at 356.  Moreover, no federal court has ever concluded that a State's display of an image or a few amounts to a taking that

---

[5] Indeed, in the United States Supreme Court, amicus supporting State Defendants reasoned that the value of Allen's property would likely increase, rather than suffer any diminishment, as a result of the State's alleged actions. *Allen v. Cooper*, 2019 U.S. S. CT. BRIEFS LEXIS 5117, Brief of Professor Simone Rose as Amicus Curiae in support of Respondents at *19-20.

violates Fifth Amendment. And Allen's claim that enactment of N.C. Gen. Stat. § 121-25 is a taking was rejected by the Fourth Circuit, in part, on contractual basis because:

> Notably, the 2013 Settlement Agreement stated that '[n]othing in [the] Agreement shall prevent [the Department] from making records available to the public pursuant to North Carolina General Statutes Chapters 121 and 132, or any other applicable State or federal law or rule related to the inspection of public records.' At that time — i.e., in 2013, before § 121-25(b) was enacted — N.C. Gen. Stat. § 132-1 provided that 'all . . . photographs [and] films . . . made or received pursuant to law . . . in connection with the transaction of public business by any agency of North Carolina' are 'public records,' and that it is 'the policy of [the] State that the people may obtain copies of . . . public records . . . free or at minimal cost unless otherwise specifically provided by law.'

*Allen*, 895 F.3d at 357.

Finally, a limited display of Allen's image and several video snippets would have been permissible and justifiable even under the CRCA as a fair use,[6] under the 2013 Settlement Agreement that allowed the State to display "[a]ll non-commercial digital media", and "mak[e] records available to the public," and amount to no physical invasion or substantial economic deprivation of his property. See Ex. B. North Carolina's limited use of Allen's work aimed at educating the public about an important historical event advanced the public interest, and failed, as a matter of law, to amount to a compensable taking under *Penn Central*.

---

[6] Under CRCA, for example, "In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include -- (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The titles of the allegedly infringing work, provided by Allen in the Amended Complaint, suggest an educational, teaching and newsworthy nature of display. See DE 12 ¶44. Complaint reveals no factual allegation to show that the images were used in a nefarious or unconstitutional way. The Complaint describes neither any prolonged length of the uploaded, allegedly infringing content, any instances of commercial exploitation thereof, nor lists any reasons for uploading the video and/or still images on the two referenced cites that would fail to benefit the public at large.

In sum, Allen's declaratory judgment claim that N.C. Gen. Stat. § 121-25(b) amounted to an unconstitutional taking was dismissed, and the Fourth Circuit affirmed the dismissal. Allen has never claimed to this Court before that the alleged copyright infringement was unconstitutional under *Georgia*. And even if he had brought such a claim, it would yet fail. As the State argued to the United States Supreme Court, the State's use of Allen's images could "not possibly be a taking because the question here is whether our display of a handful of images in a few educational videos and a museum nonprofit newsletter constituted a complete deprivation of economic value." *Allen v. Cooper*, No. 18-877, Tr. 39:21-25, 40:1-2. No federal court held that such a temporary display of images by the State deprived the property of all economic value and amounts to an unconstitutional taking of one's property.

This Court was right to dismiss Allen's takings claim in 2017. The Fourth Circuit was also right to reject Allen's declaratory judgment claim that State's actions amounted to a taking concluding that:

> Based on the[] provisions of the 2013 Settlement Agreement and the then applicable public records law, it is far from clear whether the Department was prohibited from displaying Allen's copyrighted materials in the manner alleged in the complaint. This is especially so in view of the Department's role in the salvage project to preserve for the public the site and artifacts and to document their salvage in furtherance of research and the education of the public.

*Allen v. Cooper*, 895 F.3d 337, 357 (4th Cir. 2018). And the Supreme Court was right in not remanding Allen's claim for consideration of *Georgia* case-by-case factors. Allen's motion to reconsider dismissal of Claim III of his Complaint should therefore be denied today as well.

## CONCLUSION

State Defendants respectfully request that this Court deny Allen's motion to reconsider in all respects.

Respectfully submitted, this the 16th day of October, 2020.

JOSHUA H. STEIN
Attorney General

*/s/ Olga E. Vysotskaya de Brito*
Olga E. Vysotskaya de Brito
Special Deputy Attorney General
North Carolina State Bar No. 31846
North Carolina Dept. of Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-0185
Facsimile: (919) 716-6759
Email: ovysotskaya@ncdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2020, a copy of the foregoing document was filed

electronically using the Court's ECF system, which will send notice electronically to all counsel

of record who have entered an appearance in this case.

*/s/ Olga E. Vysotskaya de Brito*
Olga E. Vysotskaya de Brito
Special Deputy Attorney General