UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
Civil Case No. 5:15-cv-627

FREDERICK L. ALLEN and
NAUTILUS PRODUCTIONS, LLC
    Plaintiffs

v.

ROY COOPER, Governor of the State of
North Carolina, *in his official capacity*, et al.,
    Defendants

**PLAINTIFF'S REPLY BRIEF**

## I. Allen's Motion Is Not Precluded Because it is Untimely or a Substitute Appeal

### A. Allen's Motion is Timely

When this Court dismissed Allen's takings claim, it faithfully applied Fourth Circuit jurisprudence requiring Allen to proceed in state court, first, holding that "plaintiffs' takings claims brought under § 1983 are barred by the Eleventh Amendment when North Carolina courts are available for such a claim to be brought." *Allen v. Cooper*, 244 F. Supp. 3d 525, 540 (E.D.N.C. March 23, 2017); DE #69 p. 18.

Thereafter, the Supreme Court overruled the precedent on which this Court relied. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2179 (2019) (takings claim may first proceed in federal court) (overruling *Williamson County Regional Planning Commission v. Hamilton Rank of Johnson City*, 473 U.S. 172 (1985)). *Knick*'s practical import was first recognized by this Court earlier this year. *Currituck Cty. v. Letendre*, 2020 U.S. Dist. LEXIS 24363, at *11 (EDNC Feb. 12, 2020) (Boyle, T).

Allen gave notice of his intent to seek reconsideration just 13 months after *Knick* was decided, and less than 90 days after his lawsuit returned to this Court from the Supreme Court. *See* DE #102 (Status Report of July 15, 2020) and DE #100 (Supreme Court judgment entered). Even utilizing the only calendar standard cited by North Carolina – specifically, two and a half

years – Allen's motion would be timely. It is even more so when the actual timeline is correctly considered.

To support alleged untimeliness, North Carolina relies only on cases that had proceeded well beyond the pleading stage and, in at least most cases, had proceeded to final judgment.

- *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295 (4th Cir. 2017) (motion field after final judgment).

- *Moses v. Joyner*, 815 F.3d 163 (4th Cir. 2016) (motion sought relief in 2011 from a 2005 order of dismissal).

- *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018) (motion sought relief from a 2011 judgment long after its entry).

- *Fed. Ins. Co. v. Kingdom of Saudi Arabia (In re Terrorist Attacks)*, 741 F.3d 353 (2d Cir. 2013) (motion sought post-judgment relief).

Those cases are irrelevant. North Carolina presumes Allen was dilatory and intentionally or neglectfully encumbered the progress of this case. That is demonstrably untrue. Allen was defending an appeal in which the North Carolina sought reversal of interim orders of this Court. Less than three months after the Supreme Court entered its judgment and returned the case to this Court, Allen sought reconsideration.

Even now, years after the filing of Allen's lawsuit, North Carolina has yet to answer the Complaint and there have been no further proceedings, much less any final judgment. There has, however, been a change in law that allows Allen to seek redress in federal court, and Allen has elected to do so within a reasonable time.

Finally, and questions of timeliness aside, the face of Rule 60(b)(6) is equitable and vests the trial court with discretion to grant the relief sought. The Rule's broad language gives this Court power to vacate orders when necessary to accomplish justice. Such should be the case here.

### B. Allen's Motion Is Not a Substitute Appeal, and this Court is Entitled to Consider Changes in Prevailing Law

It is true that "if the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment," the motion may be treated as a "substitute appeal." *Aikens v. Ingram*, 652 F.3d 496, 501 (4th Cir. 2011) (*en banc*). However, that rule (which still allows a court to exercise its discretion) is inapplicable because here there has been no final judgment and this Court has not relinquished jurisdiction.

In *Aikens,* final judgment had been entered on Rule 12(b)(1) grounds where the plaintiff had failed to exhaust his administrative remedies— a prerequisite to his suit. The plaintiff neither appealed nor asked the Court to maintain jurisdiction while he pursued his administrative remedies to exhaustion. Post-exhaustion, and long after final judgment, the plaintiff sought to reopen his EDNC action through a Rule 60(b)(6) motion. *Id.* 49.

Although this Court granted dismissal in its 2017 opinion, it never entered a final judgment. Instead, it awaited the outcome of the various appellate proceedings before proceeding. Furthermore, Allen moved this Court to stay this matter pending appeal twice (DE #79, 93-94), and this Court granted both stays (DE #84, 95) — further evidencing its retention of jurisdiction.

Having entered no final judgment, and having retained jurisdiction and control over its Order dismissing Allen's takings claim, this Court maintains jurisdiction, and Allen's Rule 60(b)(6) motion is properly before it. Allen's motion is not an improper appeal.

North Carolina makes the same argument regarding changes in decisional law. It claims that "decisional law is not grounds for relief under Rule 60(b)(6)," and cites two cases in support of this proposition. DE # 114, p. 8. But both cases had previously matured to <u>final judgment</u>, and the Court had not retained jurisdiction to alter its pre-judgment orders. *Ackerman v. United State*s, 340 US 193 (1950); *Dowe v. State Farm*, 993 F.2d 46 (4th Cir. 1993).

The bottom line is that this Court did not enter a final judgment, and that it was not asked to do so. (For example, the North Carolina never filed a Rule 58(a) motion.) Instead, the parties concentrated on their appellate arguments regarding CRCA's constitutionality, and this Court rightfully awaited disposition of the appellate proceedings. The case has now returned to this Court for further proceedings, and this Court should exercise the jurisdiction that it rightfully has retained.

**II.  CRCA's Unavailability Requires the Reconsideration that Allen Seeks**

North Carolina argues that it is immune from infringement/takings claims under the Copyright Remedy Clarification Act ("CRCA") and, to the extent it could be liable or could infringe, fair use would apply. DE #114 pp. 18-24. This, North Carolina generally asserts, is the point of the Supreme Court's mandate in *Allen v. Cooper*. *Id*.

Allen never claimed that North Carolina infringed "under" CRCA. As discussed below, infringement results from trespassing on one of the Copyright Act's enumerated rights. 17 USC § 106. CRCA was an attempt to provide a remedy against States that violated those property

rights. The Supreme Court, in *Allen v. Cooper*, did not in any way suggest that Allen's property rights never existed or have disappeared.

To the extent CRCA is unenforceable, however, it leaves Allen in the unenviable position of having a right without a remedy. Far from negating Allen's Motion for Consideration, this "right without remedy" undergirds his motion, as discussed in his main brief and below.

**III. Consideration of Fair Use is Premature**

Fair use, defined in 17 USC § 107, is an affirmative defense. *Campbell v. Acuff-Rose Music, Inc*., 510 U.S. 569, 599, (1994). It must be raised in an Answer. Fed. R. Civ. P. 8(c). North Carolina has not yet filed its Answer. Consequently, North Carolina has offered no cognizable facts in support of such a defense.

Any attempt to get to the merits of a potential fair use defense puts the proverbial cart before its horse. Even if claims in a brief were relevant, the Supreme Court in *Campbell* notably points out that because "fair use is an affirmative defense," "doubts about whether a given use is fair *should not* be resolved in favor of the [defendant]." *Id*. at 599 (emphasis added).

**IV. Relevance of *Knick* and *Hutto***

    **A. North Carolina's Synthesis of *Hutto* and *Knick* Is Not Correct. It Over-reads *Hutto* and Under-reads *Knick* to Deprive Allen of His Day in Any Court**

The point of *Knick* is that one no longer must show a complete absence of state remedies to proceed in federal court for violation of federal law. Available state remedies are not a bar to proceeding.

Instead, the Civil Rights Act of 1871 guarantees a federal forum for claims based on a state officer's unconstitutional treatment. The rule of state exhaustion is no longer a prerequisite to an action under Section § 1983. Furthermore, the availability of a state compensation remedy

does not impede a property owner's federal constitutional claim— just as a state action in tort for battery does not bar a Section 1983 federal claim for violating the Fourth Amendment. In *Knick*, the fact that the State provided a property owner with a procedure that might eventually result in compensation did not fulfill the State's obligation under the Fifth Amendment to provide the owner with compensation. Rather, the owner retained an enforceable Fifth Amendment right to just compensation, and that Fifth Amendment right entitled the owner to proceed directly to federal court under Section 1983.

Consequently, *Knick* necessarily overrules *Hutto* to the extent *Hutto* sets a barrier, requires state exhaustion, or requires an election of a state remedy before proceeding in federal court. Under *Knick*, state remedies simply do not matter. A right is meaningless without a remedy, and if there is a federal right there must be, under *Knick*, a federal remedy.

Critically, *Knick* simply recognizes that the Fifth Amendment requires "just compensation" for State takings and further changed the law so that a claimant may <u>immediately</u> bring a Section 1983 claim in federal court upon the taking. *Knick v*, 139 S. Ct. at 2170.

Finally, North Carolina's reliance on the fact that *Knick* involved a taking by a municipality and thus had no occasion to consider *state* sovereign immunity is misplaced. *Knick*'s reasoning fatally undermined *Hutto*'s rule by rejecting the theory that state remedies may preclude federal ones in Takings claims. *See* Amicus Br. of Prof. Ernest A. Young at 4-7.

### B. *Zito* Is Neither Binding nor Appropriate Precedent

North Carolina argues that *Zito v. N.C. Coastal Res. Comm'n*, 449 F. Supp. 3d 567 (EDNC 2020) compels this Court to follow suit. DE #114 p. 13. It is of course wrong to suggest that another district court judge can dictate this Court's decisions, although it would be equally

-6-
Case 5:15-cv-00627-BO   Document 115   Filed 10/30/20   Page 6 of 12

wrong not to take into account the opinions of a fellow judge. Here, however, both differences in facts, and analytical errors, compel a different result.

Initially, North Carolina fails to acknowledge that *Zito* involved a taking of real property— a situation in which there is no federal preemption. It was clear that North Carolina courts could hear the claim.

Even there, *Zito* acknowledged "*Hutto's* tension with *Knick*" and acknowledged that given the "self-executing nature of the Just Compensation Clause, the [Supreme] Court in *Knick* foreshadows the day when the Court will have to address the interplay between the Fifth Amendment's Just Compensation Clause and the Eleventh Amendment," or sovereign immunity. *Id*. at 582.

Importantly, *Zito* recognized "the force of the Zito's arguments [under *Knick*]," noted the "significant constitutional issues that the Zito's raise [under *Knick*]," and acknowledged "'the guarantee of a federal forum rings hollow for takings plaintiffs, who are forced to litigate their claims in state court.'" *Id*. (quoting *Knick*, 139 S. Ct. at 2167).

Those considerations are what led the Supreme Court to its decision in *Knick*. Contrary to North Carolina's suggestion, this Court should follow the Supreme Court's guidance and allow Allen to proceed.

### C. Even if, as North Carolina argues, the Supreme Court was Wrong and State Remedies Foreclose Federal Litigation, North Carolina Fails to Show that Allen Has any Viable State Court Remedies

North Carolina suggests that Allen has a panoply of remedies in state court. To the extent that there has been a taking by way of copyright infringement, North Carolina claims that Allen may seek redress in state court under the Land of the Law Clause of the North Carolina

Constitution. DE #114 p. 14. To the extent there has been copyright infringement in tort, North Carolina suggests that Allen is free to seek redress under the North Carolina Tort Claims Act. *Id*. at 7, 17-18. To the extent North Carolina's infringement constitutes breach of contract, North Carolina argues that Allen may file a breach of contract claim. *Id*. at 7, 18-23. Each argument should be disregarded.

First, copyright takings fall under the original jurisdiction of federal courts. 17 USC § 301; 28 USC § 1331. A claim is preempted if "the work is within the scope of the 'subject matter of copyright' as specified in 17 USC §§ 102, 103" and "the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 USC § 106." *Rosciszewski v. Arete Assocs., Inc*., 1 F.3d 225, 229 (4th Cir. 1993). North Carolina federal and state courts recognize this fundamental principle. *Innovative Med. Prods., Inc. v. Felmet*, 472 F. Supp. 2d 678, 683 (MDNC 2006); *Forest2Market, Inc. v. Am. Forest Mgmt.*, 2008 US Dist LEXIS 33185 (WDNC Apr. 21, 2008); *Out of the Box Developers, LLC v. LogicBit Corp*., 2012 NCBC 53, 39 (N.C. Business Court). And to the extent the rights are *not* equivalent, the relief is not the same.

Second, to the extent that it would not otherwise be preempted, a takings claim under the North Carolina Tort Claims Act cannot lie, as that statute covers only negligence. NC Gen Stat § 143-291. A takings claim, whether for real or intellectual property, seldom results from negligence. Indeed, copyright infringement has always been considered an intentional act for which there is strict liability. North Carolina does not claim it was negligent. Instead, it asserts it published Allen's works and "removed the images from their online locations" only "after Allen filed his complaint." DE #114, p. 4. Additionally, North Carolina has not denied enacting a statute (Blackbeard's Law) intended to conscript Allen's works into North Carolina's control.

DE #12, ¶¶ 2, 50-54, 66-67. This is the antithesis of negligent conduct. As such, the North Carolina Tort Claims Act does not apply.

Third and finally, North Carolina's suggestion that Allen should/can pursue a common law breach claim under the 2013 Settlement Agreement is inconsistent with its claims that the same Agreement is void *ab initio* as against public policy because of Blackbeard's Law. **Ex. 1**. Allen need not pursue a remedy North Carolina already has rejected.

As to constitutional claims under the North Carolina Constitution, some remedies may in theory exist. What is clear is that if brought in state court, they cannot be equivalent to copyright claims because the Supremacy Clause trumps even the provisions of state constitutions and requires equivalent claims to be brought in federal court. Allen should not have to rely on North Carolina Constitutional remedies to obtain relief for violations of federal law, although this Court can certainly assert supplemental jurisdiction over such claims if alleged in an amended complaint. At this point, a taking under the Fifth Amendment has happened; a claim for the taking under Section 1983 has matured; and Allen should be allowed to proceed in federal court under *Knick* while this Court exercises supplemental jurisdiction on any claim under the North Carolina Constitution.

## V.    *U.S. v. Georgia*

Allen relies on his *Amicus* brief and only offers one clarification in response to North Carolina's brief in opposition to his Motion to Reconsider.

Allen has never claimed that his property rights were taken without just compensation or due process "under" CRCA. That is because CRCA does not provide rights; it addresses remedies for violations of rights. *Allen v. Cooper* held that Congress had not made an adequate

showing to support a broadly applicable remedy allowing monetary damages against States irrespective of constitutional violations, and nothing more. The holding does not provide support, however, for the principle that even Constitutional violations must remain unremediated.

CRCA's unenforceability does not change Allen's *Georgia* analysis. Allen's property rights under the Copyright Act are still alive and well. *Allen v. Cooper*, 140 S. Ct. 994, 1004 (2020) ("Copyrights are a form of property"); 17 U.S.C. § 106 (exclusive property rights). North Carolina violated Allen's exclusive rights under Section 106 of the Copyright Act, and in connection therewith violated his rights secured under the United States Constitution, including the Fifth Amendment (right to just compensation for a taking) and the Fourteenth Amendment (Due Process Clause requirement to provide a remedy for any right). CRCA did not provide Allen's rights, and its invalidation did not take away his rights. He remains entitled to a remedy for the taking of his property, and Allen may seek that remedy directly under the Fifth and Fourteenth Amendments, as *Georgia* makes clear.

## VI. Conclusion

Allen requests that his Motion be granted.

Respectfully submitted, this 30th day of October, 2020.

                    **OLIVE & OLIVE, P.A**.
                    Attorneys for Plaintiffs

                    /s/ Susan Freya Olive
                    **Susan Freya Olive**
                     NC Bar No. 7252
                    **David L. McKenzie**
                      NC State Bar No. 36376
                    P. O. Box 2049
                    Durham, North Carolina 27702
                    Telephone: (919) 683-5514
                    Email: emailboxEDNC@oliveandolive.com

                    **POE LAW FIRM, PLLC**
                    Attorneys for Plaintiffs

                    /s/ Joe Poe
                    **G. Jona Poe Jr.**
                     NC State Bar No. 5920
                    Poe Law Firm PLLC
                    PO Box 15455
                    Durham, North Carolina 27704
                    Telephone: (919) 471-4015
                    Email: joe@poelaw.com

## CERTIFICATE OF WORD COUNT

The undersigned certifies that the length of this brief (including the body of the brief, headings and footnotes, and excluding the caption, signature lines, certificate of service, and any cover page or index) is **2,737** words calculated using the word count feature of Microsoft Word, and it thus complies with the word limits set out in L.R. 7.2(f)(2), being no greater than **2,800** words for a reply brief.

/s/David McKenzie
**David Loar McKenzie**

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and complete copy of the foregoing document, together with any and all attachments thereto, has been electronically filed with the Clerk of Court using CM/ECF, which will provide notice to all Defendants through their counsel of record:

Olga E. Vysotskaya de Brito
Amar Majmundar
ovysotskaya@ncdoj.gov
amajmundar@ncdoj.gov
*Counsel for State Defendants*

on this the 30th day of October, 2020.

/s/ David McKenzie
**David Loar McKenzie**