# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION

### Civil Case No. 5:15-cv-627

| | |
|---|---|
| FREDERICK L. ALLEN and NAUTILUS PRODUCTIONS, LLC<br><br>    Plaintiffs<br><br>       v.<br><br>ROY COOPER, Governor of the State of North Carolina, *in his official capacity*, et al.,<br><br>    Defendants | **BRIEF OF PROFESSOR ERNEST A. YOUNG AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION** |

Professor Ernest Young submits this brief in support of Plaintiffs' motion to reconsider dismissal of their amended complaint. That motion rests on changes in the law governing federal takings claims, as well as legal theories supporting abrogation of the State's sovereign immunity that this Court has not yet had occasion to consider. *Amicus* submits this brief in hopes that it will be helpful to the Court.

## ARGUMENT

Two things have happened since this case was last before this Court. One is the U.S. Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), which overruled prior case law and made clear that federal takings plaintiffs are not relegated to the state courts. That decision considerably undermined the Fourth Circuit precedent upon which this Court relied in dismissing Plaintiffs' takings claims. Second, the Supreme Court's decision in *this* case, *Allen v. Cooper*, 140 S. Ct. 994 (2020), rejected the prophylactic theory upon which this Court had upheld the Copyright Remedy Clarification Act (CRCA), 17 U.S.C. § 511(a), and its effort to abrogate state sovereign immunity. At oral argument before the Supreme Court, however, the State

1

conceded the viability of a case-by-case abrogation of state immunity if Plaintiffs could show not only copyright infringement but actual violation of their constitutional rights – a possibility that this Court acknowledged but did not reach in its prior ruling.

Each of these developments warrants reconsideration of this Court's order dismissing Plaintiffs' complaint. Plaintiffs' takings claims are viable, post-*Knick*, and Plaintiffs should have the opportunity to prove that the State's infringement of their copyrights amounted to an actual violation of their constitutional rights.

## I.     Sovereign immunity does not bar Allen's takings claim.

When the *Allen* litigation was last before this Court, the Court faithfully applied the circuit precedent in *Hutto v. South Carolina Retirement System*, 773 F.3d 536 (2014), which held that state sovereign immunity bars takings claims against state entities. *See Allen v.* Cooper, 244 F.Supp.3d 525, 540 (E.D.N.C. 2017). Given that precedent, Allen understandably chose not to include that issue in his interlocutory cross-appeal. But the Supreme Court's recent decision in *Knick*—announced two years after this Court's ruling and nearly a year after the Fourth Circuit's decision in this case—significantly altered the legal landscape. Read narrowly, *Hutto* may be consistent with *Knick*—but that reading would permit Allen's takings claim to go forward. Read more broadly, *Hutto*'s insistence that federal takings claims against a state may only be brought in state court so long as the state's courts are open flatly contravenes *Knick*'s reasoning.

*Knick* overruled the doctrine of *Williamson Cty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), which held that a federal takings claim is not ripe in federal court until the plaintiff has first failed to obtain a remedy in state court. The *Knick* Court relied on three key arguments: (1) that "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property

2

owner," 139 S. Ct. at 2170; (2) that *Williamson County* created a "preclusion trap" in which a plaintiff "cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court," *id.* at 2167; and (3) that the Fifth Amendment and the federal civil rights statutes "guarantee[] 'a federal forum for claims of unconstitutional treatment at the hands of state officials, and the settled rule is that exhaustion of state remedies is *not* a prerequisite to an action under [42 U.S.C.] § 1983,'" *id.* (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)). *Knick* was not a sovereign immunity case, because it—like most reported takings decisions—involved a municipality that does not share a state government's sovereign immunity. But *Knick*'s reasoning at best narrows, and at worst fatally undermines, the Fourth Circuit's reasoning in *Hutto*.[1]

By holding that states are immune so long as the state courts are open to hear takings claims, *see* 773 F.3d at 552, *Hutto* effectively forced federal takings claims into state court in much the same way that *Williamson County* did. It is not completely clear whether the Fourth Circuit's decision simply requires takings plaintiffs to go to state courts *first* if they are open or bars federal

---

[1] Some circuit courts have held that *Knick* did not change the states' immunity in takings cases. But these cases have simply recited that *Knick* did not directly involve sovereign immunity (because the defendant was a municipality, not a state), without considering whether *Knick*'s reasoning undermined the rationale of earlier decisions upholding immunity in takings cases. *See, e.g.*, *Williams v. Utah Dept. of Corrections*, 928 F.3d 1209, 1214 (10th Cir. 2019); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456 (5th Cir. 2019).

The most recent such case, *Ladd v. Marchbanks*, 2020 WL 4882885, at *4 (6th Cir. Aug. 20, 2020), very briefly considered *Knick*'s reasoning. But that case noted only that *Knick* cited *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984), which involved an administrative exhaustion procedure for federal takings of property; if such procedures were permissible, the Sixth Circuit concluded, then the Takings Clause could not have itself abrogated state immunities. That is a considerable stretch. Worse, *Ladd* overlooked that *Ruckelshaus* involved a claim for *injunctive* relief, not just compensation—a distinction crucial to *Knick*'s reasoning (and to sovereign immunity law generally). *See* 139 S. Ct. at 2175. No circuit has yet thoroughly considered the relevance of *Knick*'s reasoning to state sovereign immunity.

takings claims from the federal courts altogether. But neither interpretation can survive *Knick*'s insistence that the Fifth Amendment compels a federal remedy from the moment that a taking occurs. *See* 139 S. Ct. 2170-72. It is inconceivable that *Knick* would have come out the other way had it involved a taking by a state government rather than a township.

That is true for three reasons that parallel the *Knick* Court's points of emphasis: **First**, the constitutional violation here, as in *Knick*, occurred without regard to the state's failure to provide a remedy. As Chief Justice Roberts explained,

> The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's federal constitutional claim—just as the existence of a state action for battery does not bar a Fourth Amendment claim of excessive force. The fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right.

139 S. Ct. at 2171. *Knick* further made clear "that 'in the event of a taking, the compensation remedy is required by the Constitution.'" *Id.* at 2172 (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 316 (1987)). The Court thus decisively endorsed *First English*'s suggestion the Constitution "of its own force . . . furnish[es] a basis for a court to award money damages against the government," notwithstanding "principles of sovereign immunity." *First English*, 482 U.S. at 316 n. 9 (quoted in *Knick* at 139 S. Ct. at 2172). Although *Knick* was not a sovereign immunity case, its conclusion that a compensatory remedy is constitutionally required was necessary to its decision and calls into question *Hutto*'s conclusion that state sovereign immunity can bar takings claims brought under the Fourteenth Amendment. *See also Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (noting that the Fourteenth Amendment's "sections by their own terms embody limitations on state authority" including state sovereign immunity).

*Hutto* did not, in so many words, rely on *Williamson County*. Instead, it reasoned by analogy to a line of tax cases under the Due Process Clause. *See* 773 F.3d at 551-52 (citing *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990), and *Reich v. Collins*, 513 U.S. 106 (1994)). Those cases held that due process requires a remedy to recover payments pursuant to an unlawful tax, but that states may choose whether to provide a pre-payment or post-payment remedy. *See Reich*, 513 U.S. at 110-11. Just as *Williamson County* held that a takings violation does not occur until the state courts deny relief, *Hutto* read *McKesson* and *Reich* to hold that the due process violation is not complete until the state not only exacts an unlawful tax but denies a remedy for that exaction in state court. 773 F.3d at 552. This interpretation of the Due Process Clause is consistent with other cases holding that some deprivations of property are not "without due process of law" unless and until the state denies a remedy in state court. *See, e.g.*, *Parratt v. Taylor*, 451 U.S. 527, 541-43 (1981).

But *Knick* makes clear that the Takings Clause is *not* analogous to these due process cases. As Chief Justice Roberts explained, "[a] later payment of compensation may remedy the constitutional violation that occurred at the time of the taking but that does not mean the violation never took place . . . . A bank robber might give the loot back, but he still robbed the bank." 139 S. Ct. at 2172. Hence, the Court said that "the analogy from the due process context to the takings context is strained." *Id.* at 2174. The Takings Clause thus requires a compensatory remedy without regard to what remedies state law may provide. *Id.* at 2170.

**Second,** to the extent that *Hutto* envisioned plaintiffs exhausting their state takings remedies then returning to federal court, plaintiffs would encounter the same "preclusion trap" to which *Knick* objected. As the Court's decision in *San Remo Hotel, L.P. v. City and Cty. of San Francisco*, 545 U.S. 323 (2005), illustrates,

> [A] state court's resolution of a claim for just compensation under state law generally has preclusive effect in any subsequent federal suit. The takings plaintiff thus finds himself in a Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court. The federal claim dies aborning.

*Knick*, 139 S. Ct. at 2167. *Hutto*'s holding that federal plaintiffs must sue in state court to avoid sovereign immunity thus, like *Williamson County*'s ripeness rule, "hand[s] authority over federal takings claims to state courts." *Id.* at 2170 (quoting *San Remo*, 545 U.S. at 350 (Rehnquist, C.J., concurring in the judgment)).

**Third,** transferring responsibility for federal takings litigation to the states flies in the face not only of the federal civil rights statutes but also the underlying Fourteenth Amendment that they enforce. As *Knick* emphasized, the Supreme Court has consistently rejected interpretations of federal rights and remedies that would leave those rights at the mercy of the state courts. *See* 139 S. Ct. at 2172 ("The 'general rule' is that plaintiffs may bring constitutional claims under § 1983 'without first bringing any sort of state lawsuit, even when state court actions addressing the underlying behavior are available.'") (quoting David Dana & Thomas Merrill, *Property: Takings* 262 (2002)). Because *Knick* was a suit against a municipality, it could be brought under § 1983, whereas the present suit against a state government must be brought either under the Fourteenth Amendment itself or (as discussed below) under the CRCA. But the Fourteenth Amendment itself, a product of the same Reconstruction Congress that enacted § 1983, embodies the same promise of access to federal remedies in federal court. *See, e.g.*, *McNeese v. Bd. of Ed. for Community Unit Sch. Dist. 187*, 373 U.S. 668 (1963) (where plaintiffs assert the "depriv[ation] of rights protected by the Fourteenth Amendment . . . [s]uch claims are entitled to be adjudicated in the federal courts"); *Home Telephone & Telegraph Co. v. City of Los Angeles*, 227 U.S. 278 (1913) (rejecting interpretation of the Fourteenth Amendment's state action requirement that would have given state courts the first say as to federal rights claims).

6

It is possible to reconcile *Hutto*'s actual holding, if not some of its broader language, with *Knick*. The *Hutto* plaintiffs sought only injunctive relief, *see* 773 F.3d at 541, and *Knick* distinguished sharply between claims to enjoin government action that would take property and claims for just compensation, *see* 139 S. Ct. at 2175-77.[2] Claims for injunctions, the majority said, may be limited by the equitable principle that no injunction may issue where there is an adequate remedy at law. *See id.* at 2175. To the extent that *Hutto* simply limits claims for injunctive relief, its result is thus consistent with *Knick* notwithstanding the Fourth Circuit's broader rationale. *Hutto* simply did not decide the question presented here, which is whether the state retains its sovereign immunity in the face of a claim for just compensation.

Whether or not *Hutto* can stand after *Knick*, the bottom line is that the Fourteenth Amendment requires a compensatory remedy for Allen notwithstanding state sovereign immunity. *Knick* emphasized "'the self-executing character' of the Takings Clause 'with respect to compensation,'" which gives "a property owner . . . a constitutional claim for just compensation at the time of the taking." *Id.* at 2171 (quoting *First English*, 482 U.S. at 315).[3] That claim cannot, as *Hutto* and the State would have it, be "relegate[d] . . . to the status of a poor relation among the provisions of the Bill of Rights" by consigning it to the state courts. *Id.* at 2169-70.

---

[2] This distinction was the focus of the *Knick* Court's disagreement with the dissent concerning *Cherokee Nation v. Southern Kansas R. Co.*, 135 U.S. 641, 659 (1890), which suggested that the Takings Clause does not require advance payment as long as adequate procedures exist for just compensation after the fact. *Compare* 139 S. Ct. at 2175-76 (observing that *Cherokee Nation* and succeeding cases in fact held only that *injunctive relief* was unavailable where compensatory remedies could be had), *with id.* at 2182-83 (Kagan, J., dissenting) (arguing that *Cherokee Nation* made the absence of compensatory remedies an element of a takings claim).

[3] *See also Knick*, 139 S. Ct. at 2176 (noting that "in the 1870s . . . state courts began to recognize implied rights of action for damages under the state equivalents of the Takings Clause," and that "we subsequently joined the state courts in holding that the compensation remedy is required by the Takings Clause itself").

7

## II.    Allen still has viable claims under *United States v. Georgia*.

This Court's prior decision in this case upheld the Copyright Remedy Clarification Act as a valid exercise of Congress's authority to abrogate state sovereign immunity pursuant to Section 5 of the Fourteenth Amendment. *Allen*, 244 F.Supp.3d at 533-35; *see also Fitzpatrick*, 427 U.S. at 456 (recognizing this power). This Court's opinion acknowledged that although Congress sometimes abrogates state immunity 'prophylactically'—that is, imposing liability on the states for *all* violations of a particular statute—abrogation can also occur case-by-case, holding states liable where the same conduct that violates a federal statute also results in an actual violation of the plaintiff's constitutional rights. *See Allen*, 244 F.Supp.3d at 534 (citing *United States v. Georgia*, 546 U.S. at 158). Because this Court found the CRCA to be a valid prophylactic abrogation, it had no occasion to consider whether Allen had a valid claim for case-by-case abrogation under *United States v. Georgia*. Likewise, neither the Fourth Circuit nor the Supreme Court considered such a claim on appeal, although the possibility of such a claim elicited comment at the Supreme Court oral argument. Now that the Supreme Court has rejected the CRCA as a prophylactic abrogation statute, it is appropriate to consider Allen's claim for case-by-case abrogation based on an actual violation of his constitutional rights.

In *United States v. Georgia*, a disabled inmate of the Georgia state prison system challenged his conditions of confinement by suing the state Department of Corrections under Title II of the Americans with Disabilities Act and the Eighth Amendment. *See* 546 U.S. at 154-55.[4] The Supreme Court unanimously held that the inmate's claims could go forward, notwithstanding

---

[4] Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Congress explicitly abrogated the states' immunity. *See id.* § 12202.

the state's sovereign immunity, because the inmate alleged not only a statutory violation but also an actual violation of his constitutional rights. Justice Scalia's opinion for the Court explained this result by sharply distinguishing between two different approaches to statutory abrogation of state immunities:

> While the Members of this Court have disagreed regarding the scope of Congress's "prophylactic" enforcement powers under § 5 of the Fourteenth Amendment . . . no one doubts that § 5 grants Congress the power to "enforce . . . the provisions" of the Amendment by creating private remedies against the States for *actual* violations of those provisions. . . . This enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States.

546 U.S. at 158-59. The Court characterized all of its previous Section 5 abrogation cases as involving prophylactic theories, under which the plaintiffs had alleged only a violation of the statute. *Id.* at 157-58. It is not clear whether the plaintiff's ADA Title II claim could have prevailed on such a theory. The Supreme Court had upheld prophylactic abrogation under Title II only "as it applies to the class of cases implicating the accessibility of judicial services," *Tennessee v. Lane*, 541 U.S. 509, 531 (2004), and it had struck down the ADA's abrogation with respect to the general employment discrimination provisions of Title I, *see Garrett*, 531 U.S. at 368. Nonetheless, because the plaintiff in *Georgia* had alleged a violation of not only Title II but also the Constitution itself, he was entitled to go forward. "[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment," the Court explained, "Title II validly abrogates state sovereign immunity." 546 U.S. at 159.

The Supreme Court has not elaborated on this as-applied form of abrogation since *Georgia*. But the courts of appeals have read *Georgia* to uphold abrogation legislation, like the CRCA, whenever the plaintiff can establish an actual constitutional violation: "If the State's conduct violated both [the statute] and the Fourteenth Amendment, [the statute] validly abrogates state sovereign immunity." *Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011). On the other hand, "[i]f the

9

State's conduct violated [the statute] but did not violate the Fourteenth Amendment, the court must then determine 'whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid'" as prophylactic legislation under the congruence and proportionality test. *Id.* (quoting *Georgia*, 546 U.S. at 159). The upshot is that "if a plaintiff alleges a statutory violation that is also an actual constitutional violation, the court need not examine whether that statute could validly prohibit facially constitutional conduct under the *City of Boerne* test." *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. System of Georgia*, No. 3:07-CV-084 (CDL) 2008 WL 1805439, at *7 (M.D. Ga. 2008), *aff'd in part, vacated in part on other grounds,* 633 F.3d 1297 (11th Cir. 2011).

At oral argument before the Supreme Court in the present case, the State conceded the legal validity of case-by-case abrogation under *United States v. Georgia*. Responding to concerns expressed by Justices Breyer and Kavanaugh that sovereign immunity might broadly bar redress for state copyright infringements, the State answered that "whenever a plaintiff can reasonably allege that there has been intentional copyright infringement and there are not adequate remedies, then, under this Court's *Georgia* decision, they can bring a direct constitutional claim. We don't dispute that." Tr. of Oral Arg., *Allen v. Cooper*, at 39-40 (Nov. 5, 2019). "[T]hat's the beauty of the Copyright Remedy Act," Mr. Park said on the State's behalf, "combined with this Court's *Georgia* decision." *Id*. at 39. The Court ultimately did not discuss *United States v. Georgia* in its *Allen* opinion, presumably because neither this Court nor the Fourth Circuit had passed on the issue and Allen had thus not focused upon it in his briefs in the Supreme Court. But no justice expressed any disagreement with *Georgia*'s theory, either in the opinion or at argument. And the Supreme Court's opinion did underscore that Allen would have an actual constitutional violation

if he could show intentional or reckless infringement and a lack of adequate state remedies. *See* 140 S. Ct. at 1004.

The Supreme Court's ruling in this case held that the CRCA was unconstitutional insofar as it attempted to abrogate state sovereign immunity prophylactically—that is, in *all* cases of state copyright infringements—on a legislative record that did not establish such broad abrogation was congruent and proportional to actual constitutional violations by states. *See Allen*, 140 S. Ct. at 1007. But that ruling did not erase the CRCA from the books, *see* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933 (2018), and it remains available in all cases in which it is constitutional as applied. It remains available, in other words, wherever the plaintiff alleges not only a statutory violation but a constitutional violation as well. As *United States v. Georgia* made clear, such a case raises no question of 'congruence and proportionality' at all. *See* 546 U.S. at 158-59. Plaintiffs may thus sue under the CRCA in this case, so long as they can make out a constitutional violation as well as a statutory one.

Because this Court adopted a prophylactic approach in its prior decision, it has not yet considered whether Allen has adequately alleged an intentional deprivation of his intellectual property without adequate state remedies to provide due process of law. Allen deserves a chance to make that showing. But Allen's takings claim also provides a separate and sufficient basis for establishing an actual constitutional violation under *United States v. Georgia*. Whether or not the Takings Clause independently abrogates state sovereign immunity, and whether or not the Fourth Circuit's *Hutto* decision can stand after *Knick*, the taking of Allen's intellectual property without just compensation *was* an actual constitutional violation within the meaning of *United States v. Georgia*. That taking thus affords an independent basis for abrogation of state immunity and relief pursuant to the CRCA. Allen should be allowed to proceed on that basis as well.

11

**CONCLUSION**

Plaintiffs' motion for reconsideration should be granted.

Respectfully submitted, this 18th day of September 2020.

/s/ Ernest A. Young
**Ernest A. Young**
  TX Bar No. 00791972

3208 Fox Terrace Dr.
Apex, NC 27502
Telephone:  (919) 360-7718
Email: young@law.duke.edu

*Appearing specially pursuant to Local Civil Rule 83.1(e)*

Attorney for *Amicus*

/s/ Donald Beskind

**Donald H. Beskind**
  NC State Bar No. 8138

Donald H. Beskind, P.A.
110 N. Corcoran Street, #1105
Durham, NC 27701

Telephone: (919) 612-3955
Email: beskind@beskindlaw.com

*Local Civil Rule 83.1(d) Counsel for Amicus*

**Certificate of Service**

I certify that I served the foregoing document by filing it through the CM/ECF system, which will automatically serve file-stamped copies of the same upon all parties through their counsel of record in this matter, on this the 18th day of September, 2020.

/s/ Donald H. Beskind
**Donald H. Beskind**