IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-627-BO

| | | |
|---|---|---|
| FREDERICK L. ALLEN and NAUTILUS PRODUCTIONS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| ROY A. COOPER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

This cause comes before the Court on plaintiffs' motion for reconsideration DE 105. The appropriate responses and replies have been filed, and a hearing was held before the undersigned on February 16, 2021, at Raleigh, North Carolina. For the reasons discussed below, the motion for reconsideration is granted.

BACKGROUND

The shipwreck believed to be *Queen Anne's Revenge*, the former flagship of Edward Teach, more commonly known as the pirate Blackbeard, was discovered in 1996 off the coast of Beaufort, North Carolina. Since 1998, plaintiffs, Frederick Allen and his production company, Nautilus Productions, have been the substantially exclusive underwater photographers of the shipwreck. During this time, plaintiffs have allegedly produced a substantial archive of video and still images showing the underwater shipwreck and the efforts of diving teams and archaeologists to recover various artifacts from the wreck. Allen registered thirteen copyrights in these materials with the U.S. Copyright Office, each copyright covering a year's worth of footage.

In 2013, defendant began arguing that the State of North Carolina and its Department of Natural and Cultural Resources (DNCR) infringed, contributed to infringement, and induced infringement of Allen's registered copyrights by uploading Allen's video-footage to the Internet without Allen's consent. On October 15, 2013, plaintiffs, the State, and the DNCR entered into a written settlement agreement providing for payment to plaintiffs from the DNCR of $15,000 for any copyrights it had infringed prior to that date. The agreement referred to some specific instances of infringement, but none of the parties admitted to any wrongdoing. The agreement also clarified preexisting agreements and divided plaintiffs' video and photographic documentation into two categories to clarify the parties' respective rights. The State and the DNCR paid plaintiffs the $15,000 provided by the settlement on February 3, 2014.

Plaintiffs commenced this action on December 1, 2015, alleging that the State and the DNCR continued to infringe on plaintiffs' copyrights after entry of the 2013 settlement agreement. They further alleged that the State and the DNCR have published, performed, and/or displayed plaintiff's video footage and that, in an effort to convert plaintiffs' copyright assets to state property without payment to plaintiff, defendants collectively wrote and obtained passage of an amendment to an existing North Carolina statute to convert copyrighted works of plaintiffs and others into public record. N.C. Gen. Stat. § 121-25(b).

In their complaint and amended complaint, plaintiffs sought a declaratory judgment that § 121-25(b) is void and unenforceable because it is preempted by the Copyright Remedy Clarification Act (CRCA), 17 U.S.C. §§ 101 *et seq.*, and violates the Takings and Due Process Clauses of the U.S. Constitution. U.S. Const. amends. V and XIV. Plaintiffs further alleged claims of copyright infringement and unconstitutional taking pursuant to 42 U.S.C. § 1983, as well as state law claims for unfair and deceptive trade practices and civil conspiracy. Defendants

2

moved to dismiss plaintiffs' amended complaint, arguing that it is barred by the Eleventh Amendment, that the individual defendants sued in their individual capacities are protected by qualified and legislative immunity, that the complaint fails to state a plausible claim for relief, that plaintiffs lack standing to challenge § 121-25(B) as amended, and that this Court should abstain from issuing an opinion of first impression regarding North Carolina's public record statute. Fed. R. Civ. P. 12(b)(1)–(2), (6).

On March 23, 2017, this Court entered an order denying in part and granting in part defendants' motion to dismiss. The order allowed the claims for a declaratory judgment that § 121-25(b) is void and unenforceable and for copyright infringement to move forward upon finding that North Carolina's Eleventh Amendment immunity for those counts was validly abrogated by the CRCA. The order dismissed the remaining claims for unconstitutional taking pursuant to § 1983, unfair and deceptive trade practices, and civil conspiracy because of sovereign immunity. In dismissing the § 1983 claim, the Court relied on *Hutto v. South Carolina Retirement System*, 244 F. Supp. 3d 536 (4th Cir. 2010), and found, "under Fourth Circuit precedent, that plaintiffs' takings claims brought under § 1983 are barred by the Eleventh Amendment when North Carolina courts are available for such a claim to be brought." *Allen v. Cooper*, 244 F. Supp. 3d 525, 540 (E.D.N.C. Mar. 23, 2017) (citing *Hutto*, 773 F.3d at 552).

Defendants appealed this Court's March 23, 2017 order on April 21, 2017, and plaintiffs cross-appealed on May 5, 2017. This Court granted plaintiffs' motion to stay the case on May 11, 2017, pending a final appellate decision. On July 10, 2018, the Fourth Circuit reversed this Court's decision. To effect the Fourth Circuit's mandate, on August 24, 2018, this Court entered an order dismissing plaintiffs' claims against North Carolina, the DNCR, and the public officials acting in their official capacity without prejudice and dismissing the claims against the public

3

officials in their individual capacities with prejudice. This Court granted plaintiffs' motion to stay on September 27, 2018, until after the U.S. Supreme Court ruled on plaintiffs' petition for certiorari, and the Supreme Court granted the writ of certiorari on June 3, 2019. On April 24, 2020, the Supreme Court affirmed the Fourth Circuit's finding that there was no abrogation of sovereign immunity based on Article I's Intellectual Property Clause or § 5 of the Fourteenth Amendment in this case.[1]

On September 4, 2020, plaintiffs filed the instant motion for reconsideration asking this Court to reconsider its 2017 order dismissing the claim for unconstitutional taking pursuant to § 1983. Plaintiffs claim that, although this Court relied on then-prevailing law at the time it dismissed plaintiffs' takings claim, precedent has been changed by the Supreme Court's decision in *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), dated June 21, 2019. According to plaintiffs, that change in the law constitutes a valid reason justifying reconsideration of this Court's previous order and reinstitution of the case. Plaintiffs also argue that, now that the Supreme Court has rejected the CRCA as a prophylactic abrogation statute, it is appropriate to consider plaintiffs' claim for case-by-case abrogation based on an actual violation of his constitutional rights under *United States v. Georgia*, 546 U.S. 151 (2006).

## DISCUSSION

At the outset, this Court notes that plaintiffs have filed their motion pursuant to Rule 60 of the Federal Rules of Civil Procedure. Defendant has not objected to plaintiff moving pursuant to Rule 60. Under that rule, a court may relieve a party from a final order for a limited set of circumstances, including mistake, fraud, and newly-discovered evidence. Fed. R. Civ. P. 60(b).

---

[1] Following the Supreme Court's decision, the case proceeded against defendant Friends of *Queen Anne's Revenge*. On August 17, 2020, plaintiffs filed a stipulation of voluntary dismissal dismissing the action, with prejudice, against defendant Friends of *Queen Anne's Revenge*, which stipulated to this dismissal. DE 104.

4

In addition to the specific categories for relief listed, Rule 60(b)(6) allows for a relief for "any other reason that justifies relief." *Id.* "To obtain relief from a judgment under Rule 60(b), a moving party must first show (1) that the motion is timely, (2) that he has a meritorious claim or defense, and (3) that the opposing party will not suffer unfair prejudice if the judgment is set aside." *United States v. Welsh*, 879 F.3d 530, 533 (4th Cir. 2018). The movant bears the burden of showing timeliness. *Moses v. Joyner*, 815 F.3d 163, 166 (4th Cir. 2016). Under Rule 60(b)(6), the party must also show the existence of "extraordinary circumstances." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).

However, Rule 60(b) is applicable only to final orders. *Roberson v. Paul Smith, Inc.*, No. 5:07-CV-284-F, 2011 U.S. Dist. LEXIS 42978, at *5 (E.D.N.C. Apr. 20, 2011) (citing *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991); *McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 596 n.2 (E.D.N.C. 2009)). Final judgments adjudicate and resolve all claims as to all parties. *See Benedict v. Hankook Tire Co.*, No. 3:17-cv-109, 2018 U.S. Dist. LEXIS 58616, at *5 (E.D. Va. Apr. 5, 2018); *Moore v. Lightstorm Entm't*, No. RWT-11-3644, 2013 U.S. Dist. LEXIS 112366, at *8 (citing *Millville Quarry Inc. v. Liberty Mut. Fire Ins. Co.*, 217 F.3d 839, [published in full-text format at 2000 U.S. App. LEXIS 17495], at *8 (4th Cir. 2000) (unpublished)).

In this case, the Court's order dismissed only some of the defendants and some of the claims. Since the order did not resolve all claims as to all parties, it was not a final order. *See Quigley v. United States*, 865 F. Supp. 2d 685, 699 (D. Md. 2012) (finding that an order dismissing claims against only one defendant was not a final judgment) (quoting Fed. R. Civ. P. 54). Rule 60(b) is not applicable. Rather than deny the motion because it cites to Rule 60(b), the

5

Court will construe plaintiffs' Rule 60(b) motion as a Rule 54(b) motion to reconsider. *Id.* (citing *Fayetteville Inv'rs*, 936 F.2d at 1469–70).

Rule 54(b) governs "any order or decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties." Pursuant to this rule, "[a]n interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment." *Fayetteville Inv'rs*, 936 F.2d at 1469. "'[A] district court retains the power to reconsider and modify its its [sic] interlocutory orders' at any time prior to final judgment, and the exercise of such 'power is committed to the sound discretion of the district court." *Roberson*, 2011 U.S. Dist. LEXIS 42978, at *5–6 (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003)). A court may revise such an order "under the same circumstances in which it may depart from the law of the case: (1) 'a subsequent trial produc[ing] substantially different evidence'; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (noting the similarity of this standard to that applicable to Rule 59(e) motions, except that the law-of-the-case standard allows for new evidence discovered during litigation as opposed to evidence not available at trial to serve as basis for reconsideration motion) (alteration in original) (citing *Am. Canoe*, 326 F.3d at 515). This is a lower standard than that of Rule 60(b). *See Am. Canoe*, 326 F.3d 505, 514–15 (4th Cir. 2003) ("Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of final judgments.").

I. Plaintiffs' Takings Claim under *Knick*

In determining whether to grant a motion to reconsider pursuant to Rule 54(b), a district court may look to the Rule 60(b) principles, although it is not bound by that rule. *See Fayetteville Inv'rs*, 936 F.2d at 1470 (favorably citing a case that used parts of Rule 60(b) in reaching its

6

conclusion on a motion to reconsider an interlocutory order). Since the parties have argued the motion based on the Rule 60(b) principles and since Rule 60(b) is a more stringent standard than that of Rule 54(b), the Court considers these principles in its analysis. Regardless of whether the Court addresses the issue of reconsideration on the standard of Rule 60(b) or Rule 54(b), plaintiff's request for relief is granted.

*Timeliness*

Plaintiffs filed this motion for reconsideration three-and-a-half years after this Court entered its order dismissing plaintiffs' takings claim. However, plaintiffs argue that their motion to reconsider is nevertheless timely because plaintiffs gave notice of their intent to seek reconsideration just thirteen months after *Knick* allegedly changed the previously-applicable Fourth Circuit precedent and less than ninety days after the lawsuit returned to this Court from the Supreme Court. Courts must determine, based on the circumstances in the case, whether a delay in filing a Rule 60(b) motion is reasonably timely. *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295 (4th Cir. 2017); *see also Cox v. Horn*, 757 F.3d 113, 122 (3rd Cir. 2014) (finding that "a district court must consider the full measure of any properly presented facts and circumstances attendant to the movant's request" when determining whether a Rule 60(b)(6) motion is timely); *Days Inn Worldwide, Inc. v. Patel*, 445 F.3d 899, 906 (6th Cir. 2006) ("What constitutes a reasonable time depends on the facts of each case.").

Upon considering the particular circumstances of this case, the Court finds that plaintiffs' delay in filing this motion is reasonably timely. At no point in this case have plaintiffs been dilatory in pursuing the action. Plaintiffs appealed this Court's 2017 order, and they defended against defendants' appeals to both the Fourth Circuit and the Supreme Court. Although plaintiffs filed the instant motion three-and-a-half years after this Court's order of dismissal,

7

based on the facts of this case, this Court determines the starting point for the timeliness inquiry should be the date the Supreme Court affirmed the Fourth Circuit's judgment in this case, or April 24, 2020, rather than the date this Court entered its order of dismissal. *Moses*, 815 F.3d at 165–66 (using the date of a Supreme Court decision creating a change in habeas procedural law as the starting point for the Rule 60(b) timeliness inquiry, rather than the date of the Court's order of dismissal filed nine years prior to the motion for reconsideration at issue); *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984) (using the date the Supreme Court denied certiorari to the former decision on appeal as the starting point for the Rule 60(b) timeliness inquiry).

The Court further finds that a delay of eighty-two days between the Supreme Court's order and plaintiff's request to seek reconsideration is reasonably timely. *See id.* at 207 (finding a Rule 60(b) motion timely following a delay of less than eleven weeks); *Wells Fargo Bank*, 859 F.3d at 300 (suggesting a three-and-a-half-month delay in filing a Rule 60(b) motion may be reasonable assuming the moving party was diligent in seeking relief) (citing *Bouret-Echevarria v. Caribbean Aviation Maint. Corp.*, 784 F.3d 37 (1st Cir. 2015)); *Jones v. United States*, No. 5:13-CR-141-FL-1, 2020 U.S. Dist. LEXIS 6206, at *10 (E.D.N.C. Jan. 10, 2020) (finding a Rule 60(b) motion timely when filed approximately four months after the court entered judgment); *Kerr v. United States*, No. 5:08-CR-302-FL-1, 2020 U.S. Dist. LEXIS 1036, at *7 (E.D.N.C. Jan. 3, 2020) (finding a Rule 60(b) motion timely when filed approximately three months after the court entered judgment).

*Meritorious Claim or Defense*

This Court must also determine whether plaintiffs' claim that the Supreme Court's decision in *Knick* changed Fourth Circuit precedent is meritorious. In its 2017 order, this Court relied on *Hutto* and found, "under Fourth Circuit precedent, that plaintiffs' takings claims

brought under § 1983 are barred by the Eleventh Amendment when North Carolina courts are available for such a claim to be brought." *Allen*, 244 F. Supp. 3d at 540.

In *Knick*, plaintiff sued a municipality, the Township of Scott in Pennsylvania, alleging that an ordinance passed by the municipality violated the Takings Clause of the Fifth Amendment. 139 S. Ct. at 2168. The district court dismissed the takings claim because plaintiff had not pursued an inverse condemnation action in state court, but the Supreme Court granted certiorari to reconsider the issue of whether property owners must seek just compensation under state law in state court before bringing a federal takings claim. *Id.* at 2169. Upon consideration of the issue, the Supreme Court found that "a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time." *Id.* at 2177. It also concluded that, "because the violation is complete at the time of the taking, pursuit of a remedy in federal court need not await any subsequent state action." *Id.* Based on this conclusion, the Supreme Court overruled the doctrine of *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), which held that a plaintiff could not bring a federal takings claim in federal court until a state court had denied his claim for just compensation under state law in a state court. *Id.* at 2169, 2179.

1. Applicability of *Knick*

In *Hutto*, the Fourth Circuit held that "the Eleventh Amendment bars Fifth Amendment taking claims against States in federal court when the State's courts remain open to adjudicate such claims." 773 F.3d at 552. *Knick* involved a suit against a municipality, rather than a State. Since local governments have no claim to sovereign immunity, *Jinks v. Richland Cty.*, 538 U.S.

456, 466 (2003) ("[M]unicipalities, unlike States, do not enjoy a constitutionally protected immunity from suit."). *Knick* did not address the issue of sovereign immunity.

Defendants argue that since *Knick* did not directly address the issue of sovereign immunity, *Knick* cannot have overturned *Hutto*. However, the Court finds it necessary to consider the reasoning of the Supreme Court in *Knick*. After considering the main points the Supreme Court relied upon in *Knick*, the Court finds that *Knick* would have reached the same conclusion had it involved a taking by a state government rather than a township.

In reaching its conclusion in *Knick*, the Court relied upon three primary points. First, the Court relied on the long-standing principle that "[t]he Fifth Amendment right to full compensation arises at the time of the taking, regardless of post-taking remedies that may be available to the property owner." *Knick*, 139 S. Ct. at 2170. *See also Jacobs v. United States*, 290 U.S. 13, 17 (1933) (holding that a property owner found to have a valid takings claim is entitled to compensation as if it had been "paid contemporaneously with the taking") (citing *Seaboard Air Line Ry. Co. v. United States*, 261 U.S. 299, 306 (1923)); *First English Lutheran Church of Glendale v. Cty. of Los Angeles*, 482 U.S. 304, 315 (1987) (finding that a property owner has a constitutional claim for just compensation at the time of the taking because of "the self-executing character" of the Takings Clause "with respect to compensation"). Second, the Court found that *Williamson County* created a preclusion trap in which a plaintiff "cannot go to federal court without going to state court first; but if he goes to state court first and loses, his claim will be barred in federal court." *Knick*, 139 S. Ct. at 2167. Finally, the Court relied on the argument that the Fifth Amendment and the federal civil rights statutes "guarantee[] 'a federal forum for claims of unconstitutional treatment at the hands of state officials,' and the settled rule is that

10

'exhaustion of state remedies is *not* a prerequisite to an action under § 1983.'" *Id.* (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)).

After applying each of the Supreme Court's primary points to the case at hand, the Court finds that the reasoning in *Knick* still applies, even though this case involves the issue of sovereign immunity, and that *Hutto*'s holding that sovereign immunity applies to cases against States in federal courts when the State's courts remain open to adjudicate such claims is fatally undermined. First, the constitutional violation here, as in *Knick*, arose at the time of the taking without regard to post-taking remedies available to plaintiffs, including any potential state proceedings. *Knick* established that "[t]he fact that the State has provided a property owner with a procedure that may subsequently result in just compensation cannot deprive the owner of his Fifth Amendment right to compensation under the Constitution, leaving only the state law right." *Id.* at 2171. Plaintiffs may bring a federal constitutional claim despite the availability of other compensation remedies, such as an inverse condemnation claim under state law. *Id.* ("The availability of any particular compensation remedy, such as an inverse condemnation claim under state law, cannot infringe or restrict the property owner's constitutional claim."). The Supreme Court, in reaching its decision, relied on *First English*, stating that "in the event of a taking, the compensation remedy is required by the Constitution." *Id.* at 2171 (quoting *First English*, 482 U.S. at 316). In doing so, the court decisively endorsed the decision in *First English*, including its statement that the Constitution, "of its own force, furnish[es] a basis for the court to award money damages against the government," notwithstanding principles of sovereign immunity. *Id.* at 2172 (quoting *First English*, 482 U.S. at 316 n.9).

In reaching its decision, the *Hutto* court relied on a line of tax cases under the Due Process Clause, holding that due process requires a remedy to recover payments pursuant to an

11

unlawful tax, but that States may choose whether to provide a pre-payment or post-payment remedy. *See* 773 F.3d at 551–52 (citing *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18 (1990); *Reich v. Collins*, 513 U.S. 106 (1994)). However, the Supreme Court notes in *Knick* that "the analogy from the due process context to the takings context is strained." 139 S. Ct. at 2174. Unlike in the due process context, "[a] later payment of compensation may remedy the constitutional violation that occurred at the time of the taking, but that does not mean the violation never took place . . . . A bank robber might give the loot back, but he still robbed the bank." *Id.* at 2172.

Therefore, the Takings Clause requires a compensatory remedy without regard to what remedies state law may provide. *Id.* at 2170. Even though *Knick* was not a sovereign immunity case, its conclusion that a compensatory remedy is constitutionally-required was necessary to its decision and is contrary to *Hutto*'s conclusion that state sovereign immunity can bar takings claims brought under the Fourteenth Amendment. *See also Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976) (noting that the Fourteenth Amendment's "sections by their own terms embody limitations on state authority," including state sovereign immunity).

Second, using *Hutto* to require plaintiffs to exhaust their state takings remedies before turning to federal court creates the same preclusion trap *Knick* objected to. *Knick* noted that requiring a plaintiff to seek just compensation under state law generally precludes any subsequent federal suit, leaving a takings plaintiff "in a Catch-22: He cannot go to federal court without going to state court first; but if he goes to state court and loses, his claim will be barred in federal court." 139 S. Ct. at 2167. Thus, just like *Williamson County*'s ripeness rule, *Hutto*'s holding that a federal plaintiff must sue in state court to avoid sovereign immunity "hand[s] authority over federal takings claims to state courts." *Id.* at 2170 (quoting *San Remo Hotel, L.P.*

12

*v. City and Cty. of San Francisco*, 545 U.S. 323, 350 (2005) (Rehnquist, C.J., concurring in judgment) (alteration in original)).

Third, enforcing *Hutto* after *Knick* by allowing States to take responsibility for federal takings litigations flies in the face of both the Fourteenth Amendment and federal rights statutes enforcing the Amendment. The Fourteenth Amendment itself promises access to federal remedies in federal court. *See, e.g., McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187*, 373 U.S. 668, 674 (1963) (holding that where plaintiffs assert the "depriv[ation] . . . of rights protected by the Fourteenth Amendment . . . [s]uch claims are entitled to be adjudicated in the federal courts"); *Home Tel. & Tel. Co. v. City of Los Angeles*, 227 U.S. 278 (1913) (rejecting interpretation of the Fourteenth Amendment's state action requirement that would have given state courts the first say as to federal rights claims). Defendants argue that *Knick* specifies when a plaintiff can bring a takings claim, but that only *Hutto* specifies the appropriate forum for such a claim when the defendant is a State. However, *Knick* specifically notes that the Supreme Court has consistently rejected interpretations of federal rights and remedies that would leave those rights at the mercy of state courts. 139 S. Ct. at 2172 ("The 'general rule' is that plaintiffs may bring constitutional claims under § 1983 'without first bringing any sort of state lawsuit, even when state courts actions addressing the underlying behavior are available.'") (quoting David Dana & Thomas Merrill, *Property: Takings* 262 (2002)). *Knick* does, in fact, address the appropriate forum for takings claims, and to hold otherwise would be to do exactly what *Knick* sought to avoid: "relegate[] the Takings Clause 'to the status of a poor relation' among the provisions of the Bill of Rights." *Id.* at 2170 (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 392 (1994)).

13

2. Other Court Decisions Following *Knick*

Defendants argue that every appellate court to consider the issue at hand had concluded that *Knick* does not undermine the rule that sovereign immunity bars takings claims against States in federal court. While it is true that several circuits have considered whether *Knick* changed the states' immunity in takings claims, the analysis has almost exclusively been limited to whether *Knick* directly involved sovereign immunity. The Fifth Circuit and Tenth Circuit merely stated that *Knick* did not address sovereign immunity, and then ended their analysis there. *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019) ("*Knick* did not involve Eleventh Amendment immunity, which is the basis of our holding in this case."); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456 (5th Cir. 2019) ("[T]he Court did not even have occasion to re-consider sovereign immunity law in *Knick*."). As previously discussed, this reliance on the fact that *Knick* involved a taking by a municipality and thus did not consider sovereign immunity is misplaced because *Knick*'s reasoning, which these courts neglect to mention, fatally undermined *Hutto*'s rule.

The Sixth Circuit went slightly further, but not by much. The court noted that "*Knick* says nothing about sovereign immunity," and then notes that *Knick* cited *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984), which involved an administrative exhaustion procedure for federal takings of property. *Ladd v. Marchbanks*, 971 F.3d 574, 579 (6th Cir. 2020). The Sixth Circuit concluded that, if Congress could require administrative exhaustion as a condition of its waiver of sovereign immunity, the Fifth Amendment's Takings Clause did not abrogate sovereign immunity. *Id.* However, *Ruckelshaus* involved a claim for injunctive relief, which is a distinction crucial to *Knick*'s reasoning. *See Knick*, 139 S. Ct. at 2175 (distinguishing respondents' reliance on cases concerning requests for injunctive relief from the case at hand).

14

Defendants also note that another judge in this district concluded that sovereign immunity continued to apply after *Knick. See Zito v. N.C. Coastal Res. Comm'n*, 449 F. Supp. 3d 567 (E.D.N.C. 2020). However, this case is distinct because it involved a taking of real property, a situation in which there is no federal preemption. *Id.* at 571–73. In fact, *Zito* acknowledged "*Hutto*'s tension with *Knick*," stating that plaintiffs raised "significant constitutional issues" under *Knick* and that "the guarantee of a federal forum rings hollow for takings plaintiffs, who are forced to litigate their claims in state court." *Id.* at 582 (quoting *Knick*, 139 S. Ct. at 2167).

After reviewing the other cases considering the interplay between *Hutto* and *Knick*, this Court finds that no other court has attempted to thoroughly consider the relevance of *Knick*'s reasoning to state sovereign immunity in this context. Although the Court recognizes these non-binding cases, there is nothing in these cases that leads the Court to doubt its conclusion that *Knick* would have reached the same result had it involved a State.

3. Longstanding Principles of Sovereign Immunity

Defendants further argue that this Court should continue to follow *Hutto* because its holding is consistent with the foundational principles of sovereign immunity. However, this Court has previously detailed in this case what it believes to be the proper understanding of the Eleventh Amendment: "The Eleventh Amendment was meant to be only what it purports to be by its plain language: a bar of suits against states by citizens of other states or nations brought under the federal courts' diversity jurisdiction." *Allen*, 244 F. Supp. 3d at 535. In support of its reasoning that the line of cases beginning at least as far back as *Hans v. Louisiana*, 134 U.S. 1 (1890), is incorrect and harmful to the country's rule of law, this Court stated that the position that the Eleventh Amendment was intended to constitutionalize a broad principle of sovereign immunity contradicts both the historical evidence and the plain meaning of the Amendment and

15

that the founders wrote a Constitution founded upon the sovereignty of the people, rather than that of the States. *Id.* at 535–540. While the Court does not deem it necessary to repeat its statements regarding the proper interpretation of the Eleventh Amendment in detail, the Court will respond to defendant's assertions that this kind of lawsuit strikes at the heart of North Carolina's sovereign immunity and that there is no historical evidence to show that the Framers intended the Takings Clause to limit sovereign immunity or that the Fourteenth Amendment was intended to abrogate States' sovereign immunity from takings claims.

It is well-established that sovereign immunity is not absolute, and that the Fourteenth Amendment was "enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance." *College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) (citing *Fitzpatrick*, 427 U.S. 445). After considering the text of the Fourteenth Amendment and noting that it "quite clearly contemplate[d] limitations on [States'] authority," the Supreme Court concluded that whatever amount of sovereign immunity the States retained upon ratification of the Constitution was unmistakably reined in by the passage of the Fourteen Amendment. *See Fitzpatrick*, 427 U.S. at 448, 453, 456 ("[T]he Eleventh Amendment, and the principle of state sovereign immunity which it embodies are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." (citation omitted)). The Fourteenth Amendment's substance is not limited to Congress's action, as "the substantive provisions of the Fourteen Amendment . . . themselves embody significant limitations of state authority." *Id.* at 456. The States "surrender[ed] a portion of the sovereignty that had been preserved to them by the original Constitution" when they enacted the Fourteenth Amendment. *Alden v. Maine*, 527 U.S. 706, 756 (1999) (citing *Fitzpatrick*, 427 U.S. 445).

16

Furthermore, the text of the Fifth Amendment supports a finding of automatic abrogation. The Fifth Amendment Takings Clause is one of only two constitutional clauses that dictate a particular remedy. Richard H. Fallon et al., *Hart & Wechsler's Federal Courts and the Federal System* 849 (4th ed. 1996) (noting that the Constitution refers explicitly to remedies only in the Fifth Amendment's Just Compensation Clause and in safeguarding the remedy of habeas corpus against suspension by Congress), stipulating that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Although the Fifth Amendment only applies to the federal government, the just compensation requirement was extended to the States through the Fourteenth Amendment. *See Chi., Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 239 (1897) (finding that Fourteenth Amendment due process requires just compensation when a state government takes private land for public use). Since the Constitution explicitly requires "just compensation," the text of the Fifth Amendment seems to require the government to provide money damages despite any applicable sovereign immunity bars, and there is no Eleventh Amendment language requiring a different outcome. Eric Berger, *The Collision of the Takings and State Sovereign Immunity Doctrines*, 63 Wash. & Lee L. Rev. 493, 519 (2006) (citing *SDDS, Inc. v. South Dakota*, 650 N.W.2d 1, 8–9 (S.D. 2002)).

Structurally, the Takings Clause would be stripped of much of its meaning if the government could simply bar suits for just compensation. State governments could take property whenever they wanted without providing any compensation unless they chose to waive their immunity. *Id.* at 525. Additionally, applying state sovereign immunity to the federal Constitution voids the Constitution's purpose of protecting the enumerated rights regardless of the State's political whims. *Id.* at 528–30 ("There is something deeply contradictory about including a right in the Constitution and then constructing a sovereign immunity barrier to prevent injured parties

17

from enforcing it."). This takes on even more meaning when considered with the fact that the Takings Clause is one of only two constitutional provisions that is remedially-oriented.

In conclusion, this Court finds that the reasoning of *Knick* and the longstanding principles of sovereign immunity support a finding that plaintiffs have met the Rule 60(b) requirement of a meritorious claim or defense, despite the decisions of other courts. *Knick* recognizes that the Fifth Amendment requires just compensation for state takings and allows a plaintiff to immediately bring a § 1983 claim in federal court upon the takings. *Knick* impliedly overrules *Hutto*, upon which this Court initially relied in dismissing plaintiffs' takings claim, to the extent *Hutto* requires state exhaustion or the election of a state remedy before proceeding in federal court. Thus, since plaintiffs are no longer required to bring their takings claim in state court before turning to federal court, this Court finds it unnecessary to consider defendant's argument that plaintiffs have viable state court remedies.

*Unfair Prejudice*

Defendants argue that plaintiffs fail to make a showing of any of the requisite procedural criteria for Rule 60(b)(6) relief, but they do not make any specific arguments as to what prejudice defendants would suffer if the instant motion to reconsider is granted. There is no evidence that defendants have relied on the Court's decision in a way that would cause unfair prejudice. *See Wells Fargo Bank*, 859 F.3d at 300–01 (finding unfair prejudice when defendant purchased property in reliance on the court's order). Instead, it appears only that defendants would suffer the prejudice "present when any judgment is vacated: the protraction of proceedings, the time and expense of a new trial, the loss of post-judgment interest." *Werner*, 731 F.2d at 206–07. Such prejudice does not rise to the level of unfair prejudice. *See id.*; *Liu v. Ma*, 1:15cv1026(JCC/TCB), 2016 U.S. Dist. LEXIS 173062, at *4 (E.D. Va. Dec. 14, 2016).

18

Therefore, plaintiffs have satisfied the requirement of showing that defendants, the non-moving party, will not suffer unfair prejudice if this Court's previous order is set aside.

*Extraordinary Circumstances*

Plaintiffs argue that the change in law brought about by *Knick* constitutes "extraordinary circumstances." A court may grant relief under Rule 60(b)(6) if "such action is appropriate to accomplish justice." *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993) (citing *Klapprott v. United States*, 335 U.S. 601, 615 (1949)). The Fourth Circuit has established that "a change in decisional law subsequent to final judgment provides no basis for relief under Rule 60(b)(6)." *Id.* However, there is a distinction between cases in which a final judgment has been entered and cases where a final judgment has not been entered. *See Holland v. Virginia Lee Co.*, 188 F.R.D. 251, 252–53 (W.D. Va. 1999) ("[I]f the judgment in question has been executed, and thus its effects are no longer prospective, modification of the judgment under Rule 60(b)(6) ordinarily will be unavailable . . . . In contrast, where a change in law effects a consent decree or permanent injunction, a court may indeed find extraordinary circumstances present.") (citing *Hall v. Warden, Md. Penitentiary*, 364 F.2d 495, 496 (4th Cir. 1966); *Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir. 1987)). In those cases in which a judgment has not been executed, a "significant change in the law or facts since the submission of the issue to the Court" is a basis for a motion to reconsider. *Henderson v. Clinton & Clinton*, No. 5:13-CV-635-FL, 2014 U.S. Dist. LEXIS 119225, at *18 (E.D.N.C. Aug. 15, 2014) (considering a motion to reconsider under Rule 59 of the Federal Rules of Civil Procedure) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)). This is because extraordinary circumstances are often implicated when prospective effect would be given to a judgment now known to be improper. *Holland*, 188 F.R.D. at 253; *contrast Agostini v. Felton*,

19

521 U.S. 203, 239 ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6), the only remaining avenue for relief on this basis from judgments lacking any prospective component.").

In this case, final judgment was never entered, and this Court was never asked to enter final judgment. Therefore, the Fourth Circuit rule that a change in decisional law is not a basis for relief under Rule 60(b)(6) does not apply. Instead of entering final judgment, this Court awaited the outcome of the appellate proceedings before moving forward and stayed the matter twice pending appeal, showing its retention of jurisdiction. In this posture, the concern that this Court will give effect to a decision now known to be improper, *see Holland* 188 F.R.D. at 253, outweighs the concern for finality, *see Dowell*, 993 F.2d at 48 (stating that "[t]here must be an end to litigation someday") (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950)). Here, because final judgment has not been entered and because it would be against the interests of justice to effect a decision now known to be improper, the Court finds that the change in decisional law created by the Supreme Court's decision in *Knick* constitutes an "extraordinary circumstance" for the purposes of Rule 60(b)(6).

Defendants further argue that relief pursuant to Rule 60(b)(6) is inappropriate in this case, as this is merely a substitute appeal. *See Aikens v. Ingram*, 652 F.3d 496, 501 ("[I]f the reason asserted for the Rule 60(b)(6) motion could have been addressed on appeal from the judgment, we have denied the motion as merely an inappropriate substitute for an appeal."). When plaintiffs have made a "'voluntary, deliberate, free, [and] untrammeled choice' not to appeal the decision of the district court," plaintiffs "cannot be relieved of such a choice because hindsight seems to indicate to [them] that [their] decision not to appeal was probably wrong." *Dowell*, 993 F.2d at.

(first quoting *Ackermann*, 340 U.S. at 200 (internal citation omitted); and then quoting *id.* at 198).

However, the reason asserted for this motion to reconsider, which is the change in Fourth Circuit precedent resulting from the decision in *Knick*, could not have been addressed on appeal. The Fourth Circuit decision affirming this Court's dismissal of plaintiffs' takings claim based on sovereign immunity was entered on July 10, 2018, and mandate issued on August 17, 2018. The Supreme Court did not decide *Knick* until June 21, 2019, well after the period during which plaintiffs could have appealed the Fourth Circuit opinion on this basis. *Knick*, 139 S. Ct. 2162; Sup. Ct. R. 13(1) ("[A] petition for a writ of certiorari to review a judgment in any case . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment."). Even if the issue could have been addressed on appeal, this case is distinct from those of *Aikens* and *Dowell*. In both of those cases, plaintiff sought to reopen the action through a Rule 60(b)(6) long after final judgment has been entered. As previously discussed, final judgment was never entered in this case, and this Court retained jurisdiction by staying the case pending appeal twice. Therefore, this motion is not an improper or substitute appeal.

In conclusion, plaintiffs have shown that their motion to reconsider based on a change in decisional law following *Knick* is timely, presents a meritorious claim, would not cause defendant unfair prejudice, and presents extraordinary or compelling results. The Court therefore finds that plaintiffs meet the standard for reconsideration under either Rule 54(b) or Rule 60(b). Plaintiffs' takings claim is no longer dismissed.

II. Plaintiffs' Takings Claims Under *Georgia*

Plaintiffs also allege in their complaint that defendants intentionally infringed by repeating copying even after express notice, and plaintiffs argue that these allegations would

support a finding that defendants' conduct violated the CRCA, the Fifth Amendment, and the Fourteenth Amendment. Plaintiffs ask this Court to allow these claims to proceed under *Georgia*. Plaintiffs seek reinstatement of their lawsuit and an opportunity to amend their complaint to plead the consequences of defendants' intentional infringements more fully.

This Court finds that reconsideration of its previous order of dismissal is appropriate in this case under the Rule 54(b) standard. While the Court acknowledges that "[a] Rule 54(b) motion should not be used as an opportunity to rehash issues already ruled upon because a litigant is displeased with the result," this is not the case here. *Ashmore v. Williams*, No. 8:15-cv-03633-JMC, 2017 U.S. Dist. LEXIS 234, at *9 (D.S.C. Jan. 3, 2017) (citing *U.S. Home Corp. v. Settlers Crossing, LLC*, No. DKC 08-1863, 2012 U.S. Dist. LEXIS 150160, at *10 (D. Md. Oct. 18, 2012)). This Court recognized in its 2017 opinion that Congress can abrogate state immunity prophylactically, by imposing liability on States for all violations of a particular statute, or on a case-by-case basis, by imposing liability on States where conduct violates both a federal statute and plaintiffs' constitutional rights. *See Allen*, 244 F. Supp. 3d at 534 (citing *Georgia*, 546 U.S. at 158). Because this Court found that the CRCA was a valid prophylactic abrogation of state sovereign immunity, it never considered whether plaintiffs have a valid claim for abrogation under *Georgia*. Notably, this Court never expressly closed the door to a valid claim of case-by-case abrogation under *Georgia*. Because this Court, the Fourth Circuit, and the Supreme Court all passed on the *Georgia* issue, it is appropriate to consider this claim for case-by-case abrogation following the Supreme Court's decision rejecting the CRCA as a valid prophylactic statute.

The Court further finds that plaintiffs still have viable claims under *Georgia*. In *Georgia*, the Supreme Court noted that "§ 5 [of the Fourteen Amendment] grants Congress the power to

'enforce . . . the provisions' of the Amendment by creating private remedies against the States

for *actual* violations of those provisions." 546 U.S. at 158 (alteration in original). The court

specifically stated that "[t]his enforcement power includes the power to abrogate sovereign

immunity by authorizing private suits for damages against the States." *Id.* at 158–59 (citing

*Fitzpatrick*, 427 U.S. at 456). Based on these findings, the *Georgia* court unanimously concluded

that abrogation of sovereign immunity necessarily occurs when a plaintiff can establish both a

statutory violation of a federal law and a constitutional violation. *Id.* When a plaintiff has

established both these elements, "the court need not examine whether that statute could validly

prohibit facially constitutional conduct." *Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents of the*

*Univ. Sys. of Georgia*, No. 3:07-CV-084 (CDL), 2008 U.S. Dist. LEXIS 32116, at *25 (M.D. Ga.

Apr. 18, 2008), *aff'd in part, vacated in part on other grounds*, 633 F.3d 1297 (11th Cir. 2011).

At oral argument before the Supreme Court in the present case, the State conceded the legal

validity of the case-by-case abrogation under *Georgia*, stating that "whenever a plaintiff can

reasonably allege that there has been intentional copyright infringement and there are not

adequate remedies, then, under this Court's *Georgia* decision, they can bring a direct

constitutional claim." Tr. of Oral Arg., *Allen v. Cooper*, at 39–40 (Nov. 5, 2019).[2]

 In this case, plaintiffs have alleged that defendants' conduct amounted to a taking without

compensation and simultaneously violated both the CRCA and the Fifth Amendment. Although

the Supreme Court ruled that the CRCA was unconstitutional insofar as it attempted to abrogate

sovereign immunity prophylactically, *see Allen v. Cooper*, 140 S. Ct. 994, 1007 (2020), the

---

[2] Defendants argue that they made no concessions justifying reconsideration of the prior dismissal of plaintiffs' takings claim. The Court agrees with defendants, and notes that counsel for the State defendants did not concede that the claims were viable in this case, even though counsel acknowledged that constitutional claims may more generally be viable in federal courts under *Georgia*.

statute remains whenever plaintiff alleges both a constitutional violation as well as a statutory violation. Therefore, plaintiffs can still use the CRCA as a basis for its *Georgia* claim.

Defendant argues that plaintiffs' *Georgia* argument fails on the merits. However, plaintiffs seek an opportunity to amend to allege more facts to buttress the allegations of taking without due process, intentional infringements, and those responsible. Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend his pleadings with leave of the court. Fed. R. Civ. P. 15(a)(2). Further, Rule 15 directs that leave to amend be freely given when justice requires. *Id.* "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Conley v. Gibson*, 335 U.S. 41, 48 (1957)). The Court has determined that *Georgia* serves as a valid basis for plaintiffs to bring their constitutional claims, and plaintiffs will have the opportunity to show that defendants have intentionally deprived their intellectual property without adequate state remedies to provide due process of law in an amended complaint.

In conclusion, this Court finds that reconsideration of its prior order dismissing plaintiff's takings and constitutional claims is appropriate in light of the Supreme Court's decision in *Knick* and its rejection of the CRCA as a valid prophylactic abrogation of state sovereign immunity. Plaintiffs may amend their complaint to buttress their allegations of "a modern form of piracy." *Allen*, 140 S. Ct. at 999.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for reconsideration [DE 105] is GRANTED. Plaintiffs' takings claim and constitutional claims under *Georgia* are no longer dismissed. Plaintiffs may amend their complaint within twenty-one days of the date of entry of this order.

SO ORDERED, this 18 day of August, 2021.

_Terrence W. Boyle_
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE