# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### WESTERN DIVISION
Case No. 5:15-cv-627-BO

FREDERICK L. ALLEN and )
NAUTILUS PRODUCTIONS, LLC, )
)
      Plaintiffs, )
)
v. )
)
ROY COOPER, Governor of the State of )
North Carolina, in his official capacity, )
JOSH STEIN, Attorney General of North )
Carolina, in his official capacity, D. REID )
WILSON, in his individual and official )
capacity, DR. KEVIN B. CHERRY, in his )
individual and official capacity, SARAH )
KOONTS, in her individual and official )
capacity, JOSEPH K. SCHWARZER II, in )
his individual and official capacity, MIKE )
CARRAWAY, in his individual and official )
capacity, and the STATE OF NORTH )
CAROLINA, a body politic, )
      Defendants. )
_____ )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTIONS TO DISMISS ALLEN'S SECOND AMENDED COMPLAINT**

**[Fed. R. Civ. P. 12(b)(1), (2) and (6)]**

## INDEX

STATEMENT OF THE FACTS ................................................................................................ 2

STATEMENT OF THE CASE .................................................................................................. 2

STANDARD OF REVIEW ....................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

I.   MAJORITY OF COUNTS EXCEED SCOPE OF LIMITED ORDER ALLOWING
     RECONSIDERATION. ............................................................................................... 4

II.  IMPROPERLY NAMED OR REFERENCED PERSONS OR ENTITIES SHOULD BE
     DISMISSED. ................................................................................................................ 4

III. ALL CLAIMS AGAINST GOVERNOR COOPER AND ATTORNEY GENERAL
     ("AG") STEIN IN THEIR OFFICIAL CAPACITIES SHOULD BE DISMISSED FOR
     LACK OF FEDERAL JURISDICTION, FAILURE TO STATE A CLAIM, AND ON
     THE BASIS OF SOVEREIGN IMMUNITY. ............................................................... 4

IV.  SAC SHOULD BE DISMISSED FOR LACK OF PERSONAL AND SUBJECT
     MATTER JURISDICTION, SOVEREIGN IMMUNITY, LEGISLATIVE AND
     QUALIFIED IMMUNITIES, RES JUDICATA, LAW OF THE CASE, AND FAILURE
     TO STATE A CLAIM. .................................................................................................. 5

COUNT I & COUNT II ............................................................................................................. 5

     A.   The CRCA is not a Valid Abrogation of State Sovereign Immunity. ................... 5

COUNTS III & IV ..................................................................................................................... 6

     B.   Allen's Takings Claims are Barred by Sovereign Immunity, Res Judicata,
          and Law of the Case. ............................................................................................ 6

     C.   *Knick* Has No Effect on the State's Sovereign Immunity to a Takings
          Claim. ................................................................................................................... 6

          1.   The State Provides an Adequate Remedy for a Takings Claim. ..................... 8

          2.   Allen Has No Takings Claim Under *Penn Central.* ...................................... 10

     D.   Allen has Failed to Allege that the State's Conduct is a Violation of the
          Fourteenth Amendment under *Georgia.* ............................................................. 11

E.     Allen has Failed to Allege or Aver that any Alleged Taking Under the CRCA was Intentional. ........................................................................... 12

     1.     Table 1: DNCR's infringements of Allen's copyrights through 2013........... 13

     2.     2009 QAR Lab Report. ................................................................... 14

     3.     2009 PBS Episode of Secrets of the Dead, Blackbeard's Lost Ship. ............ 16

     4.     22 DVCAMS. ................................................................................ 16

F.     Allen has Adequate State Remedies Available that Satisfy the Due Process Requirements of a *Georgia* Claim. ................................................................ 17

G.     Several Courts have Rejected a CRCA Due Process Claim Under *Georgia*........ 18

COUNTS V, VI, and VII ...................................................................................... 19

COUNT VIII .................................................................................................... 23

COUNT IX ...................................................................................................... 25

COUNT X ........................................................................................................ 27

CONCLUSION ................................................................................................. 29

CERTIFICATE OF WORD COUNT .................................................................. 30

Case 5:15-cv-00627-BO   Document 147   Filed 04/21/23   Page 3 of 37

## TABLE OF CASES AND AUTHORITIES

**Cases**                                                 *Page(s)*

*Allen v. Cooper*,
   140 S. Ct. 994 (2020) ........................................................................... passim

*Allen v. Cooper*,
   895 F.3d 337 (4th Cir. 2018) ............................................................... passim

*Am. Shooting Ctr., Inc. v. Secfor Int'l*,
   2016 U.S. Dist. LEXIS 96111 (S.D. Cal. July 22, 2016) ....................... 19

*Bay Point Props., Inc. v. Miss. Transp. Comm'n*,
   937 F.3d 454 (5th Cir. 2019) .................................................................... 7

*Campinha-Bacote v. Regents of the University of Michigan*,
   2016 U.S. Dist. LEXIS 5958 (S.D. Ohio Jan. 19, 2016) ................... 18, 19

*Can. Hockey. LLC v. Tex A&M Univ Ath. Dep't*,
   2022 U.S. App. LEXIS 3976 (5th Cir. Feb. 14, 2022). ........................ 18

*Clay v. Osteen*,
   2010 U.S. Dist. LEXIS 111395 (M.D.N.C. 2010) ................................. 27

*Clodfelter v. Republic of Sudan*,
   720 F.3d 199 (4th Cir. 2013) .................................................................. 24

*Corum v. Univ. of N.C.*,
   413 S.E.2d 276 (N.C. 1992) ..................................................................... 9

*Cory v. White*,
   457 U.S. 85 (1982) ................................................................................. 26

*Davis v. Monroe Cty. Bd. Of Educ.*,
   562 U.S. 629 (1999) ................................................................................. 3

*Dean v. Motel 6 Operating L.P.*,
   134 F.3d 1269 (6th Cir. 1998) .................................................................. 3

*Duggan v. Ocean City*,
   516 F. Supp. 1081 (D. Md. 1981) .......................................................... 24

*Fla. Prepaid Postsecondary Ed. Expense Bd, v. Coll. Sav. Bank*,
   527 U.S. 627 (1999) ............................................................................ 8, 17

*Goldstein v. Moatz,*
  364 F.3d 205 (4th Cir. 2004) ................................................................ 27

*Halscott Megaro, P.A. v. McCollum,* No. 22-1505,
  2023 U.S. App. LEXIS 9179 (4th Cir. Apr. 18, 2023) ........................... 28

*Hutto v. S.C. Ret. Sys.,*
  773 F.3d 536 (4th Cir. 2014) ......................................................... passim

*J&J Sports Prods. v. W. Side Stories,* No. 5:10-CV-179-F,
  2011 U.S. Dist. LEXIS 77964 (E.D.N.C. July 18, 2011) ....................... 25

*Kirtsaeng v. John Wiley & Sons, Inc.,*
  568 U.S. 519 (2013) ............................................................................ 16

*Knick v. Twp. of Scott,*
  139 S. Ct. 2162 (2019) ................................................................. passim

*Ladd v. Marchbanks,*
  971 F.3d 574 (6th Cir. 2020) ................................................................. 7

*Lake v. State Health Plan for Tchrs. & State Emps.,*
  380 N.C. 502 (2022) ........................................................................... 23

*Lynch v. West Virginia,*
  805 F. Supp. 12 (S.D. W. Va. 1992) .................................................... 26

*Mims v. Kemp,*
  516 F.2d 21 (4th Cir. 1975) ................................................................... 3

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land,*
  915 F.3d 197 (4th Cir. 2019) ................................................................. 9

*Mylan Labs., Inc. v. Akzo, N.V.,*
  2 F.3d 56 (4th Cir. 1993) ....................................................................... 3

*Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents,*
  633 F.3d 1297 (11th Cir. 2011) .................................................. 9, 18, 19

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
  591 F.3d 250 (4th Cir. 2009) ................................................................. 3

*Nettleman v. Fla. Atl. Univ. Bd. of Trustees,*
  228 F. Supp. 3d 1303 (S.D. Fla. 2017) ............................................... 18

*News and Observer Publishing Co. v. Wake County Hospital System, Inc.,*
  55 N.C. App. 1, 284 S.E.2d 542 (1981) .............................................. 19

*Nixon v. Adm'r of Gen. Servs.*,
  433 U.S. 425 (1977)..........................................................................................................20, 21

*Pavlock v. Holcomb*,
  35 F.4th 581 (2022)..................................................................................................................7

*Penn Cent. Transp. Co. v. N.Y. City*,
  438 U.S. 104 (1978)........................................................................................................10, 11

*Pulte Home Corp. v. Montgomery Cty.*,
  909 F.3d 685 (4th Cir. 2018) ...............................................................................................10

*Richmond, Fredericksburg & Potomac R.R. v. U.S.*,
  945 F.2d 765 (4th Cir. 1991) .................................................................................................3

*Ruckleshaus v. Monsanto Co.*,
  467 U.S. 986 (1984)..............................................................................................................10

*S.C. State Bd. of Dentistry v. FTC*,
  455 F.3d 436 (4th Cir. 2006) ...............................................................................................25

*Smith v. State*,
  289 N.C. 303 (1976) ...............................................................................................................9

*State v. Johnson*,
  169 N.C. App. 301 (2005) ..............................................................................................21, 22

*Teachy v. Coble Dairies, Inc.*,
  306 N.C. 324 (1982) .............................................................................................................10

*U.S. v. Aramony*,
  166 F.3d 655 (4th Cir. 1999) ...............................................................................................13

*U.S. v. Georgia*,
  546 U.S. 151 (2006).......................................................................................................passim

*United States v. Morrison*,
  529 U.S. 598 (2000)..............................................................................................................22

*Volvo GM Heavy Truck Corp. v. U.S. DOL*,
  118 F.3d 205 (4th Cir. 1997) ...............................................................................................28

*Weller v. Cromwell Oil Co.*,
  504 F.2d 927 (6th Cir. 1974) .................................................................................................3

*Will v. Michigan Dept. of State Police*,
  491 U.S. 58 (1989).................................................................................................................25

*Williams v. Utah Dep't of Corr.*,
   928 F.3d 1209 (10th Cir. 2019) .................................................................. 7

*Zito v. N.C. Coastal Res. Comm'n*,
   8 F.4th 281 (4th Cir. 2021) ................................................................. 7, 8

**Statutes**

17 U.S.C. §106 ..................................................................................... 5

17 U.S.C. §108(a) ............................................................................... 14

17 U.S.C. §109(a) ............................................................................... 16

17 U.S.C. §501 ..................................................................................... 5

17 U.S.C. §507(b) ............................................................................... 25

17 U.S.C. §511 ..................................................................................... 5

17 U.S.C. §1202 ................................................................................... 5

28 U.S.C.S. §§2201-02 ...................................................................... 27

N.C.G.S. §1-52 ................................................................................... 25

N.C.G.S. §121-25 ....................................................................... passim

N.C.G.S. §121-25(b) .................................................................. passim

N.C.G.S. §125-21 ............................................................................... 12

N.C.G.S. §125-21(b) ................................................................... 11, 12

N.C.G.S. §132 ..................................................................................... 15

N.C.G.S. §132-1(a) ............................................................................ 19

N.C.G.S. §143-291 ............................................................................. 10

**Rules**

Fed. R. Civ. P. 12(b)(1), (2) and (6) ........................................... 1, 3, 4

Case 5:15-cv-00627-BO   Document 147   Filed 04/21/23   Page 7 of 37

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
### Case No. 5:15-cv-627-BO

| | | |
|---|---|---|
| FREDERICK L. ALLEN and<br>NAUTILUS PRODUCTIONS, LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **DEFENDANTS' MEMORANDUM** |
| v. | ) | **IN SUPPORT OF THEIR** |
| | ) | **MOTIONS TO DISMISS** |
| ROY COOPER, Governor of the State of | ) | **ALLEN'S SECOND** |
| North Carolina, in his official capacity, | ) | **AMENDED COMPLAINT** |
| JOSH STEIN, Attorney General of North | ) | |
| Carolina, in his official capacity, D. REID | ) | |
| WILSON, in his individual and official | ) | **[Fed. R. Civ. P. 12(b)(1), (2) and (6)]** |
| capacity, DR. KEVIN B. CHERRY, in his | ) | |
| individual and official capacity, SARAH | ) | |
| KOONTS, in her individual and official | ) | |
| capacity, JOSEPH K. SCHWARZER II, in | ) | |
| his individual and official capacity, MIKE | ) | |
| CARRAWAY, in his individual and official | ) | |
| capacity, and the STATE OF NORTH | ) | |
| CAROLINA, a body politic, | ) | |
| Defendants. | ) | |
| _____ | ) | |

**STATEMENT OF THE FACTS**

For purposes of brevity, Defendants incorporate by reference the Statement of Facts in their concurrently filed Memorandum in Support of Motion to Strike. Defendants also refer to the numerous filings, orders, and rulings in this matter providing factual statements, including but not limited to: *Allen v. Cooper*, 140 S. Ct. 994, 1007 (2020); *Allen v. Cooper*, 895 F.3d 337, 346 (4th Cir. 2018); and this Court's Order granting Allen's Motion for Reconsideration (DE 118 pp1-4).

**STATEMENT OF THE CASE**

Defendants incorporate by reference the Statement of the Case in their concurrently filed Brief in Support of the Motion to Strike, which provides a complete procedural history. Defendants reassert the following important procedural facts. On August 24, 2018, in response to the Fourth Circuit mandate, this Court entered an order dismissing all claims in this matter. DE 92. On September 4, 2020, Plaintiffs Allen and Nautilus Productions, LLC (Allen) moved for reconsideration "of this Court's dismissal of Count III of [Plaintiffs'] Amended Complaint." DE 105, 106. Allen sought reconsideration based on (1) the alleged change in takings claims under *Knick v. Twp. of Scott,* 139 S. Ct. 2162 (2019) and (2) for proceedings under *U.S. v. Georgia.* DE 106 pp1-2. Defendants objected. DE 114.

On August 18, 2021, this Court ordered that "*Knick* impliedly overrules *Hutto,* upon which this Court initially relied on dismissing Plaintiffs' takings claim" (DE 118 p18) and that plaintiffs "still have viable claims under *Georgia.*" DE 118 p22. "Plaintiffs' takings claim and constitutional claims under *Georgia* are no longer dismissed." DE 134 p24. This Court allowed "Plaintiffs to amend their complaint within twenty-one days of the date of the entry of this order"

2

as to those two claims. DE 118 p24. On February 8, 2023, Allen filed a Second Amended Complaint (SAC) alleging **ten (10)** separate counts.

<u>**STANDARD OF REVIEW**</u>

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Davis v. Monroe Cty. Bd. Of Educ.,* 562 U.S. 629, 633 (1999). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint," but does not consider "legal conclusions, elements of a cause of action, ...bare assertions devoid of factual enhancement[,]...unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009)(citations omitted).

Under Rule 12(b)(1), the burden of proving subject matter jurisdiction is on the plaintiff. *See Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. v. U.S.*, 945 F.2d 765, 768 (4th Cir. 1991) (citations omitted).

Rule 12(b)(2) tests a court's jurisdiction over an individual. The burden is on the plaintiff to demonstrate that jurisdiction is proper, *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998), and the plaintiff must set forth specific facts showing that the court has jurisdiction. *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974). Plaintiff is entitled to all reasonable inferences, but the court is not required to look solely to plaintiff's proof. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir. 1993).

3

**ARGUMENT**

## I. MAJORITY OF COUNTS EXCEED SCOPE OF LIMITED ORDER ALLOWING RECONSIDERATION.

For the same reasons discussed in Defendants' Memorandum in Support of Motion to Strike, Defendants move the Court, in the alternative, to dismiss SAC Counts I, II, and V through X pursuant to Rule 12(b)(1), 12(b)(2), and/or 12(b)(6) on the grounds they exceed the scope of this Court's Order. (DE 118).

## II. IMPROPERLY NAMED OR REFERENCED PERSONS OR ENTITIES SHOULD BE DISMISSED.

Alternatively, Defendants move the Court to dismiss the following persons and entities from the SAC pursuant to Rule 12(b)(1), 12(b)(2), and/or 12(b)(6): DNCR; Kluttz; Cox; Claggett; Cooper; Stein; Wilson; Koonts; Schwarzer II; Carraway; and the Doe defendants.

## III. ALL CLAIMS AGAINST GOVERNOR COOPER AND ATTORNEY GENERAL ("AG") STEIN IN THEIR OFFICIAL CAPACITIES SHOULD BE DISMISSED FOR LACK OF FEDERAL JURISDICTION, FAILURE TO STATE A CLAIM, AND ON THE BASIS OF SOVEREIGN IMMUNITY.

First, Allen fails to make any factual allegations against Governor Cooper and AG Stein averring only that the Governor is sued because he is Governor and was the AG before that, DE 134 ¶21, and that AG Stein is the Attorney General "authorized to enforce North Carolina laws," DE 134 ¶22. Those allegations are insufficient to grant this Court jurisdiction to hear claims against these officials, pierce these officials' sovereign immunity, or state any claims against them.

Second, Governor Cooper was already dismissed from this action by the Fourth Circuit, and that dismissal rationale equally applies to AG Stein. "As we explained in *Hutto*, the 'requirement that there be a relationship between the state officials sought to be enjoined and the enforcement of the state statute prevents parties from circumventing a State's Eleventh

4

Amendment immunity.' We thus noted 'that a governor cannot be enjoined by virtue of his general duty to enforce the laws,' nor can an 'attorney general...be enjoined where he has no specific statutory authority to enforce the statute at issue.'" *Allen*, 895 F.3d at 355 (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 550 (4th Cir. 2014). An attempt to revive the lawsuit against Governor Cooper after the Fourth Circuit's dismissal is improper, barred by sovereign immunity and res judicata doctrines, and should be disallowed. The Fourth Circuit's rationale equally applies to the AG. The law of the case/collateral estoppel and sovereign immunity doctrines bar an action against AG Stein under these circumstances, as he has no specific statutory authority to enforce the statute at issue.

## IV.  SAC SHOULD BE DISMISSED FOR LACK OF PERSONAL AND SUBJECT MATTER JURISDICTION, SOVEREIGN IMMUNITY, LEGISLATIVE AND QUALIFIED IMMUNITIES, RES JUDICATA, LAW OF THE CASE, AND FAILURE TO STATE A CLAIM.

### COUNT I & COUNT II

#### A.  The CRCA is not a Valid Abrogation of State Sovereign Immunity.

Allen alleges Defendants violated the CRCA (17 U.S.C. §511) by copying, displaying, distributing, and performing Allen's works in violation of 17 U.S.C. §106 and 17 U.S.C. §501. Additionally, Allen alleges Defendants altered or removed copyright management information from Allen's media in violation of 17 U.S.C. §1202. DE 134 at 28-30. Both claims must be dismissed.

The Supreme Court, in this matter, already held the CRCA was not a valid abrogation of the State's sovereign immunity and dismissed Allen's claim. The Court held that "Article I's Intellectual Property Clause could not provide the basis for an abrogation of sovereign immunity" and "that Section 5 of the Fourteenth Amendment could not support an abrogation" based on the CRCA legislative record. *Allen*, 140 S. Ct. at 1007. Therefore, SAC Counts I and II

5

must be dismissed based on res judicata, law of the case, and failure to show the valid abrogation of sovereign immunity.[1] Additionally, these claims exceed the scope of this Court's limited Order (DE 118) and should be dismissed on that basis as well.

<div align="center">COUNTS III & IV</div>

**B. Allen's Takings Claims are Barred by Sovereign Immunity, Res Judicata, and Law of the Case.**

Count III of the Amended Complaint alleged N.C. violated the Takings Clause of the Fifth Amendment. (DE 12 ¶¶ 76-80). This court granted the request to dismiss that takings claim. (DE 50 at 25-28 and DE 69 at 18, 28). Allen appealed to the Fourth Circuit. The Fourth Circuit affirmed the dismissal. *Allen*, 895 F.3d at 354-55. Allen failed to appeal that judgment to the Unites States Supreme Court, which made no remand or referral for any additional findings on the takings issue. Accordingly, that judgment is final and sovereign immunity, res judicata, and law of the case all preclude revival of the previously dismissed takings claim.

**C. *Knick* Has No Effect on the State's Sovereign Immunity to a Takings Claim.**

On March 23, 2017, this Court correctly determined Allen's takings claim is barred by N.C.'s sovereign immunity based on *Hutto* and the doctrine of sovereign immunity. DE 69 pp18, 28. After a unanimous loss in Supreme Court, Allen moved for reconsideration of this Court's dismissal of the takings claim (DE 69 and 92), relying on the recent decision in *Knick*, 139 S. Ct. 2162. Allen argued that *Knick* constituted a precedential change, and nullified the doctrine of

---

[1] Allen states, without any evidence, that "Defendants' [copyright] infringement has been willful." DE 134 p28. Even if true, which is denied, these allegations have no impact on sovereign immunity here. "*Congress* must identify a pattern of unconstitutional conduct *before* it abrogates Eleventh Amendment immunity" and "States may not be subject to suits unless *Congress has identified* a specific pattern of constitutional violations." *Allen*, 895 F.3d at 353-54 (emphasis added)(citations and quotations omitted).

sovereign immunity for alleged takings claims filed against the State. This Court granted Allen's request for reconsideration based exclusively on its analysis of *Knick*'s impact on the issue of sovereign immunity for takings' claims. DE 118 pp4-21. The Court held that "plaintiffs have shown that their motion to reconsider is based on a change in decisional law following *Knick*" and therefore, "[p]laintiffs' takings claim is no longer dismissed" and allowed Allen's to amend their complaint. DE 118 pp21, 24.

On August 9, 2021, the Fourth Circuit unanimously rejected the argument that *Knick* overturned and nullified sovereign immunity of the states in takings claims**.** *Zito v. N.C. Coastal Res. Comm'n*, 8 F.4th 281 (4th Cir. 2021). The Fourth Circuit clarified that sovereign immunity continues to bar takings claims against N.C. in the aftermath of *Knick* and re-affirmed the binding validity of *Hutto*, 773 F.3d 536. *Knick* was not and is not an alteration of the sovereign immunity framework an Allen's takings claims must be dismissed. *Zito*, 8 F.4th at 287.

Each circuit addressing *Knick's* effect on sovereign immunity has similarly concluded that *Knick* did not abrogate State sovereign immunity in federal court. *Id*. *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019)("But *Knick* did not involve Eleventh Amendment immunity, which is the basis of our holding in this case."); *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456-57 (5th Cir. 2019)("Nor does anything in *Knick* even suggest, let alone require, reconsideration of longstanding sovereign immunity principles protecting states from suit in federal court."), *cert. denied*, 140 S. Ct. 2566 (2020); *Ladd v. Marchbanks*, 971 F.3d 574, 579 (6th Cir. 2020)("[T]he Court's opinion in *Knick* says nothing about sovereign immunity."), *cert. denied*, 141 S. Ct. 1390 (2021); *Pavlock v. Holcomb*, 35 F.4[th] 581, 589 (2022) ("But unlike in *Knick*, which involved a suit against a Town, [this suit] is against a state, and states enjoy sovereign immunity."), *cert. denied*, 143 S. Ct. 374 (2022).

7

The Fourth Circuit and each circuit which has addressed the issue confirms that *Knick* was not a decisional change in law and *Hutto* remains controlling authority on the issue of states' sovereign immunity in a takings claim. This Court's original conclusion that *Hutto* precluded a takings claim against the Defendants and subsequent dismissal of Allen's takings claim was correct and vindicated by the Fourth Circuit's decision in *Zito*. Allen's takings claims under Count III and IV of the SAC must be dismissed.

### 1. The State Provides an Adequate Remedy for a Takings Claim.

This Court correctly ruled that "[b]ecause [state] remedy is available in the State's courts, the Court finds that count III [Allen's takings' claim] must be dismissed." DE 69 p18. Allen has several adequate state remedies available: under the N.C. Constitution, for common law breach of contract, and under state tort claim theory. Given these adequate state procedures for full compensation, Allen's federal lawsuit is barred by sovereign immunity. *Hutto*, 773 F.3d at 552; *Zito*, 8 F.4th at 290.

The Fourteenth Amendment bars the State from depriving a person of property without due process of law, but the infringement must be intentional and the State must fail to offer an adequate remedy for the infringement "because such a remedy itself satisfies the demand of due process." *Allen*, 140 S. Ct. at 1004(citations and quotations omitted). In *Fla. Prepaid Postsecondary Ed. Expense Bd, v. Coll. Sav. Bank,* 527 U.S. 627, 643-44, and n.9 (1999), the Court explicitly recognized that Florida provided alternate remedies for patent infringement, including through a takings or conversion claim and these remedies satisfy due process. The Court in *Allen* stated that remedies such as contract claims or unjust enrichment claims "might themselves" satisfy due process. *Allen*, 140 S. Ct. at 1006-07; *Zito,* 8 F.4th at 288-90 ("North

Carolina's courts remain open for takings claims. Under *Hutto*, this means that sovereign immunity bars the [plaintiff's] claims against the State in federal court.").

Allen alleges he cannot pursue this claim in state court because the claim and any damages would be preempted by the CRCA. DE 134 ¶¶173, 188. Allen also alleges the only appropriate compensation for his takings claim is set forth in the damages provision of the CRCA. DE 134 ¶171. Adequate alternative state remedies for a copyright claim are not limited only to copyright damages. *Nat'l Ass'n of Bds. of Pharm. v. Bd. of Regents*, 633 F.3d 1297 (11th Cir. 2011). N.C. courts remain open to adjudicating a takings claim if they provide a "reasonable, certain, and adequate" means for challenging an action as a taking and obtaining compensation if the challenge is successful. *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 213 (4th Cir. 2019)(quotations omitted). Direct constitutional claims in N.C. courts are available if the claimant's rights cannot be fully redressed through statutory or other state claims. *Corum v. Univ. of N.C.*, 413 S.E.2d 276, 289 (N.C. 1992).

As shown by the pending claim against the State in connection with the 2013 Settlement Agreement, breach of contract claims are available. In October 2013, the State, Allen, and Intersal entered into a written settlement agreement ("Agreement")(**Ex. 1**) concerning, *inter alia*, commercial and noncommercial media related to the *Queen Anne's Revenge* (*QAR*). DE 134 ¶¶90-93. Allen is listed as Intersal's designee for *QAR* video and photographic images. Allen, a cosignatory to the Agreement, alleges here that the State failed to perform under the terms of the Agreement. Intersal filed a state court claim for breach of contract and resulting damages, which Allen inexplicably chose not to join. DE 134 ¶¶96-99. When the State of North Carolina enters into a valid contract, the State implicitly consents to be sued for breach of contract. *Smith v. State*, 289 N.C. 303, 320 (1976).

9

Here, the Fourth Circuit already concluded that Allen's rights are limited by the Agreement. *Allen*, 895 F.3d at 356. Thus, to the extent Allen claims compensatory damages from the State's breach of the Agreement, state courts provide an avenue for compensation. Moreover, N.C. has partially waived sovereign immunity for negligence. *Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 329 (1982) The N.C. Tort Claims Act empowers the N.C. Industrial Commission to award compensatory damages up to a million dollars for state negligent actions or omissions, providing Allen yet another state venue for potential relief. N.C.G.S. §§143-291 and 299.2.

Allen's argument that *Knick* has reversed *Hutto* must be rejected. *Hutto* continues to be binding authority that States are entitled to sovereign immunity in federal takings claims where, as here, state tribunals offer adequate remedies for alleged takings violations. The rationale applies equally to compensatory and injunctive claims. Because there are adequate state remedies and compensation available, no injunctive relief is available under the Takings Clause either. *See*, *Ruckleshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984) ("[e]quitable relief is not available to enjoin an alleged taking of private property...when suit for compensation can be brought against the sovereign subsequent to the taking.") *See also*, *Knick*, 139 S. Ct. at 2168.

### 2. Allen Has No Takings Claim Under *Penn Central.*

Defendants did not find any Fourth Circuit case applying a takings claim analysis to the State. Presumably, state remedies are available and sovereign immunity bars such claims. Even if N.C. did not enjoy sovereign immunity, Allen's takings claims still fail under *Penn Central* analysis. *Penn Cent. Transp. Co. v. N.Y. City*, 438 U.S. 104, 122 (1978).

It is exceedingly rare for a takings claim to succeed where, as here, a due process claim fails. "[W]here a due process claim is unsuccessful, 'it would be surprising indeed to discover the challenged statute nonetheless violat[es] the Takings Clause.'" *Pulte Home Corp. v.*

10

*Montgomery Cty.*, 909 F.3d 685, 695 (4th Cir. 2018). Allen fails to allege any possible taking by the State under the substantive test announced in *Penn Central*. Defendants have submitted detailed arguments to contend Allen has failed to adequately allege a *Penn Central* claim. DE 114 pp22-23. For brevity, the argument is not presented here, but is instead incorporated by reference. *Id. See also*, Arg. Count V, Bill of Attainder below regarding Allen allegations that N.C.G.S. §121-25, "nullified the use restrictions in the Agreement and placed Allen's work in the public domain." DE 134 ¶119.

**D.  Allen has Failed to Allege that the State's Conduct is a Violation of the Fourteenth Amendment under *Georgia*.**

Allen alleges a direct takings claim by using his copyrighted material and through the passage of N.C.G.S. §125-21(b) in violation of the CRCA and an abrogation of sovereign immunity under *U.S. v. Georgia*, 546 U.S. 151 (2006). DE 134 ¶¶140-188. Allen's reliance on *Georgia* is misplaced and Counts III and IV of Allen's complaint must be dismissed.

In *Georgia*, the Supreme Court considered whether Congress validly abrogated the sovereign immunity of the States under the Title II of the ADA. 126 S. Ct. at 880-81. The Court held that Title II featured an unequivocal expression of congressional intent to abrogate sovereign immunity, and concluded that when "Title II creates a private cause of action for damages against the States for conduct that actually violates that Fourteenth Amendment, Title II validly abrogates sovereign immunity." *Id*. The Court declined to decide whether the ADA validly abrogates sovereign immunity for claims "premised on conduct that does not independently violate the Fourteenth Amendment." *Id*. The Supreme Court then remanded to the lower court to give the plaintiff an opportunity to amend his complaint, after which the lower court would be best situated to determine, on a claim-by-claim basis, (1) which aspects of the

11

State's alleged conduct violated Title II, (2) to what extent such misconduct also violated the Fourteenth Amendment, and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid. *Id*. To come within the reach of the procedural requirements of the Due Process Clause, a violation must (1) be "intentional, or at least reckless," and (2) lack adequate post-deprivation state remedies. *Allen*, 140 S. Ct. at 1004.

This Court need not decide whether *Georgia* extends to copyright infringement cases, which is in no way clear or conceded, because even assuming it does, Allen has failed to allege that Defendants' conduct constitutes an actual violation of the Fourteenth Amendment.

## E. Allen has Failed to Allege or Aver that any Alleged Taking Under the CRCA was Intentional.

Allen alleges that Defendants' infringements of copyright claims, directly and through the passage of N.C.G.S. §125-21(b), effectuated a taking in violation of the Fifth Amendment to the U.S. Constitution. DE 134 pp30-33.[2] Allen further alleges Defendants failed to provide "due process in connection with their takings" and failed to provide "just compensation." DE 134 ¶¶169, 170, 183, 184. However, Allen fails to allege what, if any, copyright violations are attributable to a direct takings claim and which are attributable to N.C.G.S. §125-21. At best, the copyright takings Allen is alleging are, (1) contained in "Tables 1-3[3] and described in paragraphs 86-88 and 118-123" (DE 134 ¶162), (2) "withholding and refusing to return Allen's physical media" identified as "22 videotapes containing Allen's most valuable footage" (DE 134 ¶¶98, 163), and (3) that the Maritime Museum in Beaufort, N.C. (MMB) has "shown Allen's footage

---

[2] This argument is also applicable and incorporated into Defendants' argument above concerning a direct Takings claim.

[3] Allen's SAC contains only 2 numbered Tables. Those tables correspond with page sections identified in the SAC allegations and Defendants shall address those 2 Tables.

to museum visitors" without a license from Allen and did not compensate Allen for "showing his footage at [the Museum]." DE 134 p25.

Despite using conclusory language (DE 134 ¶162), Allen has failed to allege any facts showing the intentional nature of the alleged infringements. Rather, the facts show that the opposite is true.

### 1. Table 1: DNCR's infringements of Allen's copyrights through 2016.

Table 1 of the SAC (DE 134 p16) repeats the same violations (four videos, one photograph in video, and one photo in print[4]) and alleged dates of infringement (September 2015 to December 2016) as those in Allen's First Amended Complaint. (DE 12 pp13-14; DE 134 p22). However, these images have not been posted since 2016 or, since the Fourth Circuit decision in 2018. The Fourth Circuit already held that Defendants reasonably believed they could use the images under the terms of the Agreement, which explicitly authorized them to display Allen's "noncommercial digital media." *Allen*, 895 F.3d at 356-57. Further, Defendants had reason to believe that their noncommercial use of the images to make educational videos was fair use and, therefore, non-infringing. *Id.* Under this established law of the case, the best Allen can allege is a negligent, unintentional violation of his rights, if any. *U.S. v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) ("once the 'decision of an appellate court establishes 'the law of the case,' it 'must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal[.]'")

---

[4] In addition, a review of the copyrights for the images and videos contained in Table 1 confirms that Allen is not the copyright holder for the image titled "Ballast 1", Registration No. VA0001872054. (**Ex. 2**) While not dispositive to the issue of copyright infringement it does confirm that the parties-even Allen- are unsure on who owns the rights to the materials and in what context they can be used.

Case 5:15-cv-00627-BO   Document 147   Filed 04/21/23   Page 20 of 37

Therefore, as established by the Fourth Circuit and Allen's admission in the SAC ("the State took down the infringing videos specifically identified in Allen's Amended Complaint.")(DE 134 ¶127), the six alleged copyright infringements identified in Table 1 are not intentional, and cannot serve as a basis for a Fourteenth Amendment claim.

### 2. 2009 QAR Lab Report.

Allen alleges that N.C. continues to publish, display, and perform many of his works," DE 134 ¶129, by "posting" materials to the Internet Archive using Archive-It, a tool that collects, stores, and provides access DNCR's archived web sites. (DE 134 ¶129). *See,* Table 2 (DE 134 ¶130). Table 2 re-lists the 6 materials in Table 1 (DE 134 p22), but also includes 16 alleged infringements that are 8 photographs contained in 1 report listed twice, once from August 2016 to July 2018, and again from June 2021 to the present. *Id.* (**Ex. 3**) The photographs are watermarked "Nautilus Productions."

Allen fails to show that the alleged limited use of images for archival purposes constitutes an illicit infringement. See 17 U.S.C. §108(a). DNCR has proactively, out of abundance of caution and in good faith, attempted to remove this and other QAR records from its active and archived websites. In June 2017, DNCR identified the lab report as a record to be removed from active websites or replaced with a redacted version. DNCR believed that had been completed by the end of June 2017. (**Ex. 4**) However, Allen located an older version of the lab report that could not be deleted by DNCR and complained about it in his 24 July 2018 Petition for Rehearing En Banc in the Fourth Circuit Court of Appeals. DNCR removed that record on 25 July 2018, (**Ex. 5-6**), and other publicly accessible records it could identify containing Allen's work by 1 August 2018.(**Ex. 7**) In the SAC, Allen identifies what appears to be a "ghost" version of the lab report that had little or no metadata but could not be fully deleted because of a likely system error and

the unredacted version has since been removed. (**Ex. 7**) DNCR has spent hundreds of hours searching for records containing Allen's works and has no desire to display them. It repeatedly invited Allen to identify any works that he is aware of that could have been inadvertently displayed on archival or other sites and promised to work on removals. Notwithstanding the repeated state requests, Allen inexplicably refuses to inform DNCR of any works he believes are infringing. (**Exs. 8-11**).

Governmental agencies use the internet to disseminate information, provide services, and transact business. Internet resources must be managed the same as other records-keeping systems to comply with N.C. statutes concerning public records and to facilitate continuing public access and use to this information. The Public Records Act (G.S. §132) and the Depository Library System Act (G.S. §125.11) delegate the responsibility for preserving public records and publications, respectively to the Archives and Library. The Archives and Library have jointly subscribed to Internet Archive's "Archive-It" service since 2005 to manage the identification, selection, capture, and preservation of government websites with historical, legal, administrative, or evidentiary value. This service uses the Wayback Machine to crawl and capture websites. Even after a record or publication has been removed an archived crawl of the record or publication may still exist online because it was previously captured by the Wayback Machine. This archival method of Allen's work in state's custody is consistent with Allen's explicit stance on public records in the Agreement. Yet, the State has always been, and continues to be, willing to take down any archived images of Allen's work. The State repeatedly reached out to Allen to offer exactly that and request collaboration, but Allen prefers to use any instances of inadvertent displays in this lawsuit rather than to protect his alleged rights. Allen fails to demonstrate any intentional taking.

15

### 3. 2009 PBS Episode of Secrets of the Dead, Blackbeard's Lost Ship.

Allen alleges that DNCR has, for the last decade, shown Allen's video footage to visitors of the MMB in the theater without compensation or permission. DE 134 p25. What Allen fails to disclose to the Court is that the video in question is not Allen's, but a PBS video that DNCR is permitted to show. Approximately 5 minutes of Allen's underwater footage forming the basis of this allegation appears in a 2009 PBS episode of *Secrets of the Dead; Blackbeard's Lost Ship*, which also features current or former DNCR employees. Allen does not claim that PBS lacked a license to use that footage in its documentary or sell it to others. The MMB purchased a copy of the video from PBS, later purchased an "AV copy" with performance rights in classrooms and admission-free screenings and played it as part of its optional educational programming offered to visiting school groups through January 2023. (**Ex. 12, 13, 14 and 15**)

The MMB is an admission-free public museum that also provides educational programming to school groups. DNCR purchased the rights to show *Blackbeard's Lost Ship* from PBS. Showing PBS's television episode in the educational theater was permitted and was neither a taking nor a copyright violation[5].

### 4. 22 DVCAMS.

Since 2013, in compliance with the Agreement, DNCR has gathered and returned media produced by Allen without a time code stamp or "bug". In December 2013, DNCR returned over

---

[5] Allen also alleges DNCR sold copies of a "documentary" at the MMB gift shop from 2009 to 2015. DE 134 ¶86. DNCR is informed and believes that the gift shop was being operated by the Friends of the QAR at this time and was simply re-selling purchased copies of the PBS television series "Secrets of the Dead: Blackbeard's Lost Ship". Under 17 U.S.C. §109(a), the "first sale doctrine" allows a lawful purchaser of a copyrighted work to sale or dispose of the work without the authority of the copyright owner. *See also, Kirtsaeng v. John Wiley & Sons*, *Inc.*, 568 U.S. 519 (2013).

175 items to Allen (**Ex. 16**). DNCR was not able to locate 22 DVCAMS that Allen believed had not been returned. DNCR agreed it would continue the search for 10 years. *Id*. Allen thanked DNCR for its efforts to continue searching for the missing tapes. (**Ex. 17**) DNCR has continued to search for responsive materials. (**Ex. 18**)

Allen alleges DNCR withheld 22 videotapes containing Allen's most valuable footage which constituted a physical taking of his property. (DE 134 ¶¶94, 98, 163). The 22 DVCAMS were recently discovered in an unmarked box in the Office of the State Archeology Research Laboratory. DNCR has repeatedly attempted to return them to Allen since discovery. Despite claiming their immense value, Allen has failed to respond to the repeated attempts to return the tapes. (**Ex. 19**)

The 22 DVCAMS were not intentionally taken from Allen. DNCR does not believe the video and images from the DVCAMS were ever displayed or used, nor does Allen allege otherwise.

### F.     Allen has Adequate State Remedies Available that Satisfy the Due Process Requirements of a *Georgia* Claim.

A federal *Georgia* takings claim is inappropriate where adequate state remedies are available. As argued *supra* on pp8-12, North Carolina provides a range of alternative remedies that are adequate under the circumstances of this case: State takings claim, tort claim, and breach of contract.  The Supreme Court in *Georgia* explicitly recognized that these remedies satisfy due process. "[Plaintiff] differs from the claimants in our other cases addressing Congress's ability to abrogate sovereign immunity pursuant to its §5 powers. *See Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. at 644 n.9 (Florida satisfied due process by providing remedies for patent infringement by state actors)." *Georgia*, 546 U.S. at 158.

In analyzing a *Georgia* abrogation claim under the CRCA, courts have held that the

17

remedies available in N.C. satisfy the due process requirements. A viable takings claim against the [State] under the [State] Constitution would satisfy the due process requirements of *Georgia*. *Can. Hockey. LLC v. Tex A&M Univ Ath. Dep't,* 2022 U.S. App. LEXIS 3976 *21 (5th Cir. Feb. 14, 2022). In *Nettleman v. Fla. Atl. Univ. Bd. of Trustees,* 228 F. Supp. 3d 1303, 1312 (S.D. Fla. 2017), a state tort claim was held to be adequate. *Id*. at 1312-13.

As this Court has already determined, Allen has adequate State remedies available and his *Georgia* claim must be dismissed.

## G.    Several Courts have Rejected a CRCA Due Process Claim Under *Georgia*.

Allen alleges he was not provided "due process" because he did not have an opportunity "to be heard and had no means to challenge the infringements, other than through this litigation" (DE 134 ¶169) and that N.C.G.S. §121-25(b) did not provide him "due process" or "with an opportunity to oppose" or "seek reclassification" of his work. DE 134 ¶183. Several courts have rejected these arguments and questioned whether a procedural due process claim under the CRCA is appropriate under *Georgia*. In *National Ass'n of Boards of Pharm. v. Board of Regents*, 633 F.3d 1297 (11th Cir. 2011) the Ninth Circuit doubted whether the appellant's procedural due process claim falls under *Georgia's* framework, stating that "one infringes a copyright by copying or distributing a work; no amount of process absent the owner's consent avoids liability under the statute...NABP's due process claim argues that it should have received a pre-deprivation hearing before its copyright was infringed. This alleged conduct—failing to provide a hearing—is not identical to copyright infringement. Therefore, NABP's argument that it was owed a pre-deprivation hearing is not implicated by a strict understanding of what it is to infringe a copyright and thus arguably not covered by *Georgia*." *National Ass'n*, 633 F.3d at 1316 n. 32.

In *Campinha-Bacote v. Regents of the University of Michigan*, 2016 U.S. Dist. LEXIS

5958 (S.D. Ohio Jan. 19, 2016), the district court rejected the plaintiff's argument that, under *Georgia*, the states' sovereign immunity was validly abrogated because the CRCA statutorily prescribed conduct also violated the guarantee of Due Process under the Fourteenth Amendment. The Court explained that the act of copyright infringement itself "does not simultaneously and independently violate a constitutional guarantee protected by the Fourteenth Amendment as it did in *Georgia*. Instead, the existence of a constitutional due process violation...is an inquiry distinct from whether a copyright was infringed. As such, [plaintiffs] attempt to rely on *Georgia* is unavailing." 2016 U.S. Dist. LEXIS 5958, [WL] at * 5. *See also*, *Am. Shooting Ctr., Inc. v. Secfor Int'l*, 2016 U.S. Dist. LEXIS 96111 at *11 (S.D. Cal. July 22, 2016)(Court agreed with reasoning in *National Ass'n* and *Campinha-Bacote* and held *Georgia* inapplicable when plaintiff alleged the State failed to provide due process).

Assuming, *arguendo*, *Georgia* is applicable to a CRCA claim, Allen has not alleged an intentional taking and has adequate state remedies available which satisfy the due process requirements of the Fourteenth Amendment. This claim must be dismissed.

## COUNTS V, VI, and VII

The N.C. Public Records Act provides a broad definition of "public record." N.C.G.S. §132-1(a) (including "photographs, films...that are "made or received pursuant to law or ordinance in connection with the transaction of public business."). The term "made or received pursuant to law or ordinance" includes any material kept in carrying out an agency's lawful duties. *News and Observer Publishing Co. v. Wake County Hospital System, Inc.*, 55 N.C. App. 1, 13, 284 S.E.2d 542, 549 (1981). Covered agencies include "every public office, public officer or official...or other unit of government of the State." N.C.G.S. §132-1(a).

19

Allen's allegations that §121-25(b) is a bill of attainder are meritless because the materials at issue were already public records pursuant to Chapter 132 and the Agreement. Well before the enactment of §121-25(b), Allen provided the materials directly to DNCR in connection with the *QAR*. Pursuant to Chapter 132, those materials were public records upon receipt by DNCR. The Agreement further confirms Allen's understanding that the materials at issue were and are public records.[6] The subsequent enactment of §121-25(b) stating "[a]ll photographs, video recordings, or other documentary materials of a derelict vessel of shipwreck...in the custody of any agency of North Carolina...shall be a public record pursuant to Chapter 132" merely reiterates what was already true under the public records law and confirmed in the Agreement. The Fourth Circuit agreed with that interpretation, finding that "[b]ased on the provisions of the…Agreement *and the then applicable public records law*, it is far from clear whether [DNCR] was prohibited from displaying Allen's copyrighted materials [especially] in view of [DNCR]'s role in the salvage project *to preserve for the public the site and artifacts and to document their salvage in furtherance of research and the education of the public.*" *Allen*, 895 F.3d at 357 (emphasis added). Allen fails to cite to any exemption to public records law that applies here, especially since the Agreement confirmed the public records law applies. Allen's allegations, fail to state a cognizable claim and must be dismissed.

Assuming, *arguendo*, that the materials were not already public records pursuant to Chapter 132, Allen fails to sufficiently allege the necessary elements for bill of attainder. Allen cites to *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425 (1977). In *Nixon*, the U.S. Supreme Court

---

[6] "Nothing in this Agreement shall prevent [DNCR] from making records available to the public pursuant to N.C.G.S. Chapters 121 and 132, or any other applicable State or federal law or rule related to the inspection of public records." **Ex. 1 ¶**27.

held that a bill of attainder is a legislative act that targets a specific individual or group and inflicts punishment without a judicial trial. Other factors considered include whether the alleged penalty is in line with the historical meaning of legislative punishment, whether the law furthers a non-punitive legislative purpose, and whether the record shows a congressional intent to punish. *See State v. Johnson*, 169 N.C. App. 301, 310 (2005). A bill of attainder is unconstitutional because it violates the separation of powers and due process protections. Not every legislative act that imposes burdens on an individual constitutes a bill of attainder; the legislative act must be targeted, punitive, and lacking in any non-punitive legislative purpose. §121-25 is none of these, it simply provides for the protection and preservation of historic artifacts and shipwrecks located in state waters, including the *QAR*. Despite Allen's conclusory allegations, §121-25(b) applies to State possessed records of many other ongoing salvage projects. These projects all involve many people inside and outside of Allen's chosen profession. In other words, §121-25(b) applies to *all* persons coming into contact with shipwrecks in N.C. waters.

The plain language of §121-25(b) shows there is no violation or penalty set out nor any mechanism for enforcement of any punishment. *Allen*, 895 F.3d at 355 ("Allen and Nautilus have not even shown that §121–25(b) can be enforced against a private party. In any event, in view of the officials' roles, it is apparent that none of them would or could have any role in enforcing the statute, as required.")(citations omitted). Nor is there a sufficient allegation of a congressional intent to punish because preservation of North Carolina's history and cultural heritage for the benefit of all people is a legitimate legislative purpose. *Nixon*, 433 U.S. at 452, 97 S. Ct. at 2795.

Allen alleges that the statute is a "mode of punishment commonly employed against those legislatively branded as disloyal" and that the statute's (nonexistent) "penalties" are "historically associated with punishment" and somehow bar Allen from his vocation. DE 134 at ¶¶195-97. Again, §121-25(b) merely reiterates that documentation of ship salvages in the possession of a state agency is a public record. There is no historical punishment commonly employed for perceived disloyalty to the archeological or historical preservation interests of the sovereign; Defendants are not aware of any case law that even remotely suggests this as a common historical punishment associated with bills of attainder. Allen's conclusory statements that the State is engaging in some kind of battle between archeologists and treasure hunters are legally insufficient to state a cognizable claim for relief.

A statute is presumed constitutional and the party challenging the statute bears the burden of proving its unconstitutionality. *See United States v. Morrison*, 529 U.S. 598, 607 (2000). The materials at issue are public records pursuant to Chapter 132 and later confirmed as such in the Agreement. Allen's allegations are facially insufficient to establish that §121-25(b) is sufficiently targeted, punitive, and does not further a legitimate legislative purpose.

Similarly, Allen's *ex post facto* law claim fails. An *ex post facto* law is a retrospective law that punishes someone for an act that was committed before the existence of such laws made any such act illegal. *See State v. Johnson*, 169 N.C. App. at 304. The materials at issue were already public records pursuant to Chapter 132. Therefore, §121-25(b) cannot be read to *retroactively* make the materials at issue public records. Section 121-25(b) is devoid of any punitive language or enforcement mechanisms, and is rationally connected to a legitimate, non-punitive legislative interest in the preservation of state history for the benefit of the state's people.

Allen's claim for impairment of contract also fails on similar grounds. N.C. employs a three-part test in determining unconstitutional contractual impairment: (1) whether a contractual obligation is present; (2) whether the state's actions impaired that contract, and (3) whether the impairment was reasonable and necessary to serve an important public purpose. *Lake v. State Health Plan for Tchrs. & State Emps., 38*0 N.C. 502, 513 (2022). The contractual obligations are found in the Agreement, which recognizes the materials as public records under Chapter 132. *Allen*, 895 F.3d at 357.

The alleged actions were made in furtherance of the important public purpose of historical preservation. *Id.* Allen's allegations are insufficient, and Counts V, VI and VII must be dismissed.

<u>**COUNT VIII**</u>

Section 1983 claims against Defendants Schwarzer, Wilson, Carraway, Koonts, Kluttz, Cherry, and Cochran, in their individual capacities, are barred by sovereign immunity, estoppel, law of the case, res judicata, qualified and legislative immunity, and failure to state a claim. Additionally, Allen's claims exceed the scope of this Court's order granting reconsideration.

First, Kluttz, Wilson, Cochran, and Cherry were the named Defendants and sued in their individual capacities in the prior iteration of this lawsuit. *See Allen*, 895 F. 3rd 337. The Fourth Circuit already concluded that these Defendants were protected from section 1983 claims under qualified immunity for the alleged publication of Allen's copyrighted materials (*Id*. at 355-57) and legislative immunity as to the individuals' "involvement in the enactment of §121-25(b)." *Id*. at 357.

The Fourth Circuit's instructions, which this Court should follow, were to dismiss with prejudice claims against these Defendants sued in their individual capacities. *Id*. These claims

are precluded by qualified and legislative immunities, res judicata, issue preclusion, and law of the case. *See Clodfelter v. Republic of Sudan*, 720 F.3d 199, 207 n.10 (4th Cir. 2013)("The term 'res judicata' is often used to refer to both "claim preclusion," where a previous judgment forecloses litigation on the basis that it was decided in the previous case, and "issue preclusion," which "refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.")(citations omitted).

Section 1983 claims against Schwarzer, Carraway, and Koonts are likewise subject to dismissal. These individuals were not named as Defendants in the prior litigation, yet the Fourth Circuit's rationale on the qualified and legislative immunities extends to protect these new Defendants. *Allen*, 895 F.3d at 357 ("Based on these provisions of the 2013 Settlement Agreement and the then applicable public records law, it is far from clear whether the Department was prohibited from displaying Allen's copyrighted materials in the manner alleged in the complaint."). Qualified immunity and law of the case doctrine protect these new Defendants from liability for the limited public display and archival activities, even if the facts alleged are accurate. Similarly, legislative immunity protects these individuals from liability for their alleged involvement with enactment of section 121-25(b). *Id.*

The statute of limitations ("SOL") that governs much of this count has run.[7] Section 1983 contains no SOL, thus either "the most analogous state statute of limitations would apply[,]" *Duggan v. Ocean City*, 516 F. Supp. 1081, 1083 (D. Md. 1981), or, assuming the absence of the analogous state statute, "the court should turn to the lender of second resort-an analogous federal

_____

[7] Kluttz left her state employment as of January 1, 2017, Cherry left as of December 31, 2020, Cochran left as of January 23, 2017. **See Ex. 20.**

statute." *J&J Sports Prods. v. W. Side Stories*, No. 5:10-CV-179-F, 2011 U.S. Dist. LEXIS 77964, at \*15-16 (E.D.N.C. July 18, 2011). In N.C., that SOL is three years. N.C.G.S. §1-52. Even under the analogous federal statute prong, the Copyright Act is governed by a three-year SOL. 17 U.S.C. §507(b); *see J&J Sports Prods*, 2011 U.S. Dist. LEXIS 77964, at \*16. No actionable factual allegation traceable to these Defendants has been made within the timeframe of three years prior to the filing of the SAC. *See* DE 134 ¶¶30, 139 (Schwarzer); ¶¶31, 139 (Carraway); ¶¶113, 130, 139, 216, 219 (Koonts). In any case, all allegations based on conduct before the year 2020 is barred by the SOL.

### COUNT IX

Sovereign immunity continues to bar Allen's injunctive claims because *Ex parte Young* is inapplicable here. The Eleventh Amendment bars actions against a state or its agencies, whether seeking compensatory, equitable, or declaratory relief. *S.C. State Bd. of Dentistry v. FTC* 455 F.3d 436, 446 n.8 (4th Cir. 2006). Neither the State nor the Department are "persons" under the *Ex parte Young* exception to sovereign immunity. *See, Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

The Fourth Circuit has already addressed Allen's claims under *Ex parte Young* in connection with §121-25(b). The Court held that "Ex Parte Young does not provide Allen and Nautilus with an exception to the Eleventh Amendment immunity claimed by North Carolina." *Allen*, 895 F.3d at 355. The Court explained that Allen "sued the State, the Governor, the Department, and several Department officials," but provided "no further explanation regarding any connection between the officials and the challenged enactment[,]" and "have not even shown that §121-25(b) can be enforced against a private party." *Id*. No injunctive relief is available against the State or the Department under *Ex parte Young* under the facts alleged.

Allen does not seek to assert any *Ex parte Young* claims against any state officials. *Ex parte Young* only extends to claims against state officials acting in their official capacities, not to claims against state entities. *Lynch v. West Virginia*, 805 F. Supp. 12, 13 (S.D. W. Va. 1992). This bar applies to suits for injunctive relief. *Cory v. White*, 457 U.S. 85, 91 (1982). Sovereign immunity bars Allen's current claims against these Defendants.

Second, the doctrines of res judicata, collateral estoppel, and law of the case preclude application of *Ex parte Young* in connection with Allen's claims. The Fourth Circuit has already held in this matter that "*Ex parte Young* does not provide Allen and Nautilus with an exception to the Eleventh Amendment immunity claimed by North Carolina." *Allen*, 895 F.3d at 355.

Third, Allen cannot establish jurisdiction to enjoin the State because Defendants here have not violated Allen's rights under color of state law, intentionally, or in bad faith. A crucial element of section 1983 claims against state officials is that, at the time of the challenged conduct, the violation is ongoing and undertaken under color of state law. Here, Defendants reached out to Allen well before the filing of the SAC with requests to identify any works Allen considers infringing so they could be promptly taken down. Defendants cited their disinterest in publicly displaying Allen's work but acknowledged that an inadvertent or third-party display was possible. Continuously, Defendants invited Allen to share any information of any such inadvertent display. Defendants, in good faith, promised to remove any inadvertently displayed work from public view. Allen refused to disclose information of public display outside of the lawsuit, and instead chose to include allegations of numerous public displays in court filings. **Exs**. **8-11**. Allen's refusal to work with Defendants to remedy the alleged public display of his work should serve as equitable estoppel.

Finally, to the extent Allen seeks any compensatory relief for the alleged damages

connected to the alleged past wrongdoings, *Ex parte Young* permits only prospective relief and does not permit the award of retroactive remedies against these Defendants.

<u>**COUNT X**</u>

The Declaratory Judgment Act (DJA), 28 U.S.C.S. §§2201-02, does not authorize suits against states, its agencies and officials and, therefore, cannot be used to circumvent sovereign immunity. "If a declaratory judgment proceeding actually constitutes a suit against the sovereign, it is barred absent a waiver of sovereign immunity." *Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004). "[I]n such a situation, 'the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer.'" Id. (quotation omitted). Here, any order declaring §121-25(b) is unconstitutional or announcing the State has infringed Allen's property or effectuated an uncompensated taking would be a declaration against N.C. Therefore, the declaratory judgment request fails.

Second, there is no equitable basis to grant declaratory relief here, where Allen requests declarations that Defendants engaged in copyright infringements, violated the CRCA, and effectuated a taking of property without compensation. DE 134 ¶¶ 227 (a)–(c). Allen does not seek any prospective relief at all, but rather only a declaration regarding alleged past wrongdoings. *See Clay v. Osteen*, 2010 U.S. Dist. LEXIS 111395 (M.D.N.C. 2010). Declaratory relief under *Ex parte Young* applies only to prospective requests not to proclaim liability for a past act. *Id.*

Third, there is no actual controversy between the parties to justify the requested relief. Defendants never maintained that they are entitled to infringe any purported copyright, take property without compensation, or enforce §121-25(b) to strip Allen of any constitutional or statutory rights. To the contrary, Defendants proactively reached out to Allen seeking

collaboration to ensure that any inadvertent display of Allen's works would be terminated without litigation. **Exs. 8-11**. While Defendants are not members of the legislative branch, they stand ready to assist in repeal of §121-25(b) because it is duplicative of public records law.

Defendants agree with the Fourth Circuit's conclusion that "[b]ased on [the] Agreement and…public records law, it is far from clear whether the Department was prohibited from displaying Allen's copyrighted materials in the manner alleged in the complaint." *Allen*, 895 F.3d at 357. Yet, the Department still sought to placate Allen by seeking to identify and remove any inadvertently displayed works. Instead, Allen shunned collaboration and chose litigation, secreting information about alleged infringing works for years only to reveal them in this legal pleading to this Court. DE 134 ¶¶85, 122. The clean hands doctrine should estop Allen from seeking equities and declarations under these circumstances. *Halscott Megaro, P.A. v. McCollum*, No. 22-1505, 2023 U.S. App. LEXIS 9179, at *22 (4th Cir. Apr. 18, 2023).

Defendants never contended that §121-25(b) entitles them to an uncompensated taking of private property or permits infringements of copyright law, nor has Allen pled any facts showing that Defendants enforced, tried to enforce, or even could have enforced the statute against Allen in the manner alleged. *Allen*, 895 F.3d at 355 ("Indeed, Allen and Nautilus have not even shown that §121-25(b) can be enforced against a private party."). Other than Allen's unsubstantiated beliefs, no controversy exists on any of these legal issues.

Finally, if the Court dismisses the substantive causes of action as requested *supra*, Allen's claim for declaratory relief is subject to dismissal. The DJA does not create its own substantive cause of action; it "is 'remedial only, and is not itself a basis for federal subject matter jurisdiction.'" *Volvo GM Heavy Truck Corp. v. U.S. DOL*, 118 F.3d 205, 210 (4th Cir. 1997) (quotations omitted).

## CONCLUSION

WHEREFORE, the Defendants respectfully requests this Court dismiss the SAC in its

entirety.

Respectfully submitted, this the 21st day of April, 2023.

<div style="margin-left: 50%;">

JOSHUA H. STEIN
Attorney General

/s/ Charles G. Whitehead
Charles Whitehead
Special Deputy Attorney General
State Bar No. 39222
Email: cwhitehead@ncdoj.gov
Phone: (919) 716-6816

Olga E. Vysotskaya de Brito
Special Deputy Attorney General
N.C. State Bar No. 31846
Email: ovysotskaya@ncdoj.gov
Phone: (919) 716-0185

N.C. Dept. of Justice
Post Office Box 629
Raleigh, NC 27602
*Counsel for Defendants*

</div>

## CERTIFICATE OF WORD COUNT

The undersigned hereby certify that pursuant to LR 7.2(f)(3) of the Local Civil Rules, the foregoing Memorandum contains 8,398 words (including the body of the brief, headings, and footnotes, but excluding the caption, signature blocks, this certificate of compliance, and exhibits) as reported by the word-processing software.

This the 21st day of April, 2023.

/s/ Charles G. Whitehead
Charles Whitehead
Special Deputy Attorney General