**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
Civil Case No.: 5:15-cv-627-BO

| | |
|---|---|
| FREDERICK L. ALLEN and NAUTILUS PRODUCTIONS, LLC<br><br>Plaintiffs<br><br>v.<br><br>ROY **COOPER**, Governor of the State of North Carolina, in his official capacity; JOSH **STEIN**, Attorney General of North Carolina of North Carolina, in his official capacity; D. REID **WILSON**, individually and in his official capacity; MIKE **CARRAWAY**, individually and in his official capacity; KEVIN B. **CHERRY**, individually and in his official capacity; STEPHEN R. **CLAGGETT**, individually and in his official capacity; KARIN **COCHRAN**, individually and in her official capacity; CARY **COX**, individually and in her official capacity; SUSAN WEAR **KLUTTZ**, individually and in her official capacity; SARAH **KOONTS**, individually and in her official capacity; JOHN W. **MORRIS**, individually and in his official capacity; JOSEPH K. **SCHWARZER** II, individually and in his official capacity; **Jane, John, and Jill Doe**, individually and in their official capacity; **NORTH CAROLINA DEPARTMENT OF NATURAL AND CULTURAL RESOURCES;** and the **STATE OF NORTH CAROLINA**, a body politic, Defendants | **JURY TRIAL REQUESTED** |

**PLAINTIFFS' FREDERICK L. ALLEN AND NAUTILUS PRODUCTION LLC'S BRIEF**
**IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE  (DE 144)**
**AND MOTION TO DISMISS (DE 146)**

# TABLE OF CONTENTS

Summary of the Case................................................................................................................1

Statement of the Facts............................................................................................................1

Procedural History................................................................................................................2

Argument..............................................................................................................................3

I.   The Court should Deny Defendants' Motion To Strike..............................................................3

    A.  Motions to Strike Are Disfavored....................................................................................3

    B.  North Carolina Does Not Meet the Test for Striking Under Rule 12(f)...................................4

        1.  Allen's Allegations Are Relevant to the Claims at Issue. Therefore, Allen's Allegations are Not Impertinent or Immaterial....................................................................................4

        2.  Allen's Allegations Are Not "Scandalous."..................................................................4

        3.  North Carolina is Not Prejudiced by Allen's Allegations. ..............................................5

    C.  The Court Should Not "Strike" Defendants from the Case. .....................................................5

        1.  Rule 10's Requirements Are Liberally Interpreted in the Absence of Prejudice................6

        2.  Rule 12(f) Cannot Be Used to Effectuate Case-Dispositive Sanctions. ...............................6

    D.  Plaintiffs' SAC Was Expressly Allowed by the Court.............................................................7

II.  The Court should Deny Defendants' Motion to Dismiss .........................................................7

    A.  Defendants' Second Motion Is Procedurally Improper. ..........................................................7

    B.  Legal Standards.............................................................................................................8

        1.  Sovereign Immunity....................................................................................................8

        2.  Failure to State a Claim...............................................................................................8

    C.  Sovereign Immunity Does Not Bar Allen's Copyright or Takings Claims (Counts I-IV)........9

        1.  Congress Abrogated Sovereign Immunity ....................................................................10

        2.  The Right Against Unlawful Takings Is Self-Executing and Cannot Be Blocked by Sovereign Immunity...............................................................................................11

i

a.      Federal Courts Have Exclusive Jurisdiction over Allen's Claims (28 USC § 1338) ................................................................................................................ 14

b.      Allen's State Claims Are Expressly Preempted (17 U.S.C. § 301). ............................ 14

D.   Allen Has Stated Claims for Copyright Infringement and DMCA Violations (Claims I & II). 16

E.   Allen Has Stated a Takings Claim With Respect to Blackbeard's Law (Claim IV) and the State's Direct and Indirect Infringement of His Copyrights (Claim III). ................................. 17

    1.   Defendant' Arguments Are Procedurally Improper. ............................................. 17

    2.   Blackbeard's Law Is An Unconstitutional Taking (Claim IV). ............................. 18

    3.   North Carolina's Infringement Constitutes an Unlawful Takings (Claim III) ................ 20

F.   Allen Has Alleged a Violation of Procedural Due Process (Claims III and IV). ................... 21

G.   Allen Has Alleged that Blackbeard's Law Is an Unlawful Bill of Attainder (Claim V). .......... 22

    1.   Blackbeard's Law Targets Allen. ................................................................... 22

    2.   Blackbeard's Law Is Punitive. ....................................................................... 24

H.   Allen Has Alleged that Blackbeard's Law Is An Unlawful *Ex Post Facto Law* (Claim VI). ...... 26

I.   Allen Has Alleged that Blackbeard's Law Impairs the Settlement Agreement (Claim VII)... 26

J.   Allen Has Stated a Claim Under Section 1983 (Claim VIII) ....................................... 27

    1.   Defendants Are Not Entitled to Qualified Immunity. ........................................... 27

    2.   There is Not a Statute of Limitations Problem. ................................................. 28

K.   Allen Is Entitled to Injunctive Relief Under *Ex Parte Young* (Claim IX) ............................ 28

L.   Allen Is Entitled to Declaratory Relief (Claim X) ..................................................... 30

CONCLUSION ............................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*ABC Sand & Rock Co., Inc., v. Cnty. Of Maricopa*,
2022 WL 1619019 (D. Ariz. May 23, 2022) .........................................................19

*Acceptance Ins. Cos., Inc. v. United States*,
583 F.3d 849 (Fed. Cir. 2009) .............................................................................17

*ACORN v. United States*,
618 F.3d 125 (2d Cir. 2010).................................................................................24

*Aldini AG v. Silvaco, Inc.*,
2023 WL 3749792 (N.D. Cal. Mar. 27, 2023).......................................................17

*Allen v. Cooper*,
140 S. Ct. (2020).......................................................................................... *passim*

*Allen v. GlaxoSmithKline PLC*,
2008 WL 2247067 (E.D. Pa. May 30, 2008).........................................................14

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
326 F.3d 505 (4th Cir. 2003) ...............................................................................16

*Ameur v. Gates*,
759 F.3d 317 (4th Cir. 2014) ..........................................................................22, 24

*Avtec Sys., Inc. v. Peiffer*,
21 F.3d 568 (4th Cir. 1994) ............................................................................15, 16

*Bailey v. Fairfax Cnty. Va.*,
LEXIS 135512 (E.D. Va. Dec. 21, 2010) ...............................................................3

*Blackburn v. Dare Cnty.*,
58 F.4th 807 (4th Cir. 2023) .................................................................................20

*Campinha-Bacote v. Regents of the Univ. of Michigan*,
2015 WL 223408 (S.D. Ohio Jan. 19, 2016) ........................................................10

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988)..............................................................................................14

*Christopher v. Cavallo*,
662 F.2d 1082 (4th Cir. 1981) ..............................................................................14

Case 5:15-cv-00627-BO   Document 153   Filed 06/22/23   Page 4 of 39

*Cobell v. Norton*,
 224 F.R.D. 1 (D.D.C. 2004)......................................................................3, 5

*Davis v. Blige*,
 505 F.3d 90 (2d Cir. 2007)..........................................................................18

*In re DNA Ex Post Facto Issues*,
 561 F.3d 294 (4th Cir. 2009) ......................................................................26

*Doe v. The Citadel*,
 2023 WL 3944370 (4th Cir. June 12, 2023) ...............................................21

*Frye v. Brunswick Cnty. Bd. of Educ.*,
 612 F. Supp. 2d 694 (E.D.N.C. 2009).........................................................8

*Godfredson v. JBC Legal Grp.*,
 387 F. Supp. 2d 543 (E.D.N.C. 2005).......................................................3, 5

*Hans v. Louisiana*,
 134 U.S. 1 (1890)........................................................................................9

*Hutto v. S.C. Ret. Sys.*,
 773 F.3d 536 (4th Cir. 2014) ..................................................................11, 13

*Jessop v. City of Fresno*,
 936 F.3d 937 (9th Cir. 2019) ......................................................................28

*Johnson v. Lett*,
 2023 WL 362393 (W.D.N.C. Jan. 20, 2023) .............................................7

*Kaiser Aetna v. United States*,
 444 U.S. 179-80 (1979) ..............................................................................18

*Keller v. Hosp. of Morristown*,
 2016 WL 6956621 (E.D. Tenn. 2016) .......................................................26

*Klinger v. Conan Doyle Est., Ltd.*,
 755 F.3d 496 (7th Cir. 2014) ......................................................................18

*Knick v. Twp. of Scott, Pennsylvania*,
 139 S. Ct. 2162 (2019)............................................................................10, 13

*Krupski v. Costa Crociere S. p. A.*,
 560 U.S. 538 (2018)....................................................................................28

*Lane v. Endurance Am. Specialty Ins. Co.*,
 LEXIS (W.D.N.C. Apr. 8, 2011) ...........................................................3, 4, 5

*Lingle v. Chevron U.S.A. Inc.*,
    544 U.S. 528 (2005)........................................................................................................17

*Llewellyn-Jones v. Metro Prop. Grp., LLC*,
    22 F. Supp. 3d 760 (E.D. Mich. 2014)........................................................................4, 5

*Murr v. Wisconsin*,
    582 U.S. 383 (2017)........................................................................................................19

*Nat'l Ass'n of Boards of Pharmacy v. Bd. Of Regents of the Univ. Sys. of Georgia*,
    633 F.3d 1297 (11th Cir. 2011) .....................................................................................10

*Negron v. Sch. Dist. of Philadelphia*,
    994 F. Supp. 2d 663 (E.D. Pa. 2014) ..............................................................................7

*Nixon v. Adm'r of Gen. Servs.*,
    433 U.S. 425 (1977)...................................................................................................22, 25

*Penn Cent. Transp. Co. v. City of N.Y.*,
    438 U.S. 104 (1978).....................................................................................................9, 19

*Perez v. Humphries*,
    2018 WL 4705560 (W.D.N.C. Oct. 1, 2018)...................................................................7

*Pharmaceutical Research and Manufacturers of America v. Williams*,
    64 F. 4th 932 (8th Cir. 2023) .........................................................................................29

*Quinn v. Bd. of Cnty. Commr's. for Queen Anne's Cnty., Maryland*,
    862 F.3d 433 (4th Cir. 2017) .........................................................................................20

*Racick v. Dominion L. Assocs.*,
    270 F.R.D. 228 (E.D.N.C. 2010) .....................................................................................4

*Reyes v. Dorchester Cnty.*,
    2022 WL 820029 (D.S.C. Mar. 18, 2022) ....................................................................30

*Rosciszewski v. Arete Assocs., Inc.*,
    1 F.3d 225 (4th Cir. 1993) .............................................................................................15

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984)........................................................................................................18

*S.D. v. St. Johns Cnty. Sch. Dist.*,
    LEXIS 1941482 (M.D. Fla. 2009) ...................................................................................3

*Sageworks, Inc. v. Creatore*,
    2017 WL 633359 (E.D.N.C. Feb. 15, 2017)....................................................................7

*Schultz v. Braga,*
  290 F. Supp. 2d 637 (D. Md. 2003) ................................................................. 5

*SEC v. Lucent,*
  2006 WL 2168789 (D.N.J. June 20, 2006) ....................................................... 7

*Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.,*
  468 U.S. 841 (1984) ........................................................................................ 24

*Smith v. Wash. Metro. Area Transit Auth.,*
  290 F.3d 201 (4th Cir. 2002) ........................................................................... 8

*Smith-Phifer v. City of Charlotte,*
  LEXIS 137321 (W.D.N.C. Aug. 14, 2019) ....................................................... 4

*Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.,*
  430 F. Supp. 2d 642 (W.D. Tex. 2006) ............................................................ 7

*Swanson v. U.S. Forest Serv.,*
  87 F.3d 339 (9th Cir. 1996) ........................................................................... 17

*Tire Eng'g & Distrib. v. Shandong Linglong Rubber Co.,*
  682 F.3d 292 (4th Cir. 2012) ................................................................... 14, 15

*Trandes Corp. v. Guy F. Atkinson Co.,*
  996 F.2d 655 (4th Cir 1993) ........................................................................... 15

*United States v. Georgia,*
  546 U.S. 151 (2006) ............................................................................. 2, 10, 11

*United States v. Wass,*
  954 F.3d 184 (4th Cir. 2020) ......................................................................... 26

*Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.,*
  2004 WL 7339759 (D.N.J. June 22, 2004) ................................................. 7, 11

*Washington v. Hous. Auth. of the City of Columbia,*
  58 F.4th 170 (4th Cir. 2023) ............................................................................ 9

*Waste Mgmt. Holdings, Inc. v. Gilmore,*
  252 F.3d 316 (4th Cir. 2001) ........................................................................... 3

*Welch v. Texas Dept. of Highways & Pub. Transp.,*
  483 U.S. 468 (1987) .......................................................................................... 9

*West v. Winfield,*
  931 F.3d 978 (9th Cir. 2019) ......................................................................... 28

*Williams v. Kincaid,*
   45 F.4th 759 ............................................................................................................28

*Zak v. Chelsea Therapeutics Int'l, Ltd.,*
   780 F.3d 597 (4th Cir 2015) ...........................................................................9, 16

*Ziglar v. Abbasi,*
   582 U.S. 120 (2017).............................................................................................27

*Zito v. N.C. Coastal Res. Comm'n,*
   8 F.4th 281 (4th Cir. 2021) ........................................................................8, 11, 13

**State Cases**

*Corum v. Univ. of N. Carolina,*
   330 N.C. 761 (1992) ...........................................................................................15

*Montessori Children's House of Durham v. Blizzard,*
   244 N.C. App. 633 (2016) ...................................................................................24

*State v. Williams,*
   286 N.C. 422 (1975) ...........................................................................................23

*Tetterton v. Long Mfg. Co., Inc.,*
   314 N.C. 44 (1985) .............................................................................................23

**Federal Statutes**

17 U.S.C.A. § 511 .....................................................................................................10

17 U.S.C. § 106 .........................................................................................................18

17 U.S.C. § 301 .........................................................................................................14

17 U.S.C. § 507(b) .....................................................................................................14

17 U.S.C. § 1202 .......................................................................................................17

28 U.S.C. § 1338 .......................................................................................................14

28 U.S.C. § 2201 .......................................................................................................30

**State Statutes**

N.C.G.S. § 1-52...........................................................................................................13

N.C.G.S. § 121-25(b) (2015) ...............................................................................18, 25

N.C.G.S. § 132-1 .................................................................................................18, 23, 29

N.C.G.S. § 132-1(b) ...............................................................................................................2

N.C.G.S. § 143-291 ..............................................................................................................13

**Rules**

Fed. R. Civ. P. 10 ...............................................................................................................3, 6

Fed. R. Civ. P. 12 ..............................................................................................*passim*

Fed. R. Civ. P. 12(b) ........................................................................................................1, 9

Fed. R. Civ. P. 12(b)(1) ......................................................................................................8

Fed. R. Civ. P. 12(f) .........................................................................................*passim*

Fed. R. Civ. P. 12(g) ...........................................................................................................7

Fed. R. Civ. P. 12(h)(3) ......................................................................................................8

Fed. R. Civ. P. 15 ..............................................................................................................28

Fed. R. Civ. P. 15(c) ..........................................................................................................28

Fed. R. Civ. P. 15(c)(1) ....................................................................................................28

Plaintiffs Rick Allen and Nautilus Productions LLC (collectively, "Allen") claim that Blackbeard's Law violates their constitutional rights. Blackbeard's Law declared that Allen's lifelong work was "the property of the people," and allows anyone—including Defendants—to use it however and as much as they want for free.[1]

Allen has tried to reclaim his property, but North Carolina has been aggressive in its motions practice, giving Allen an exhaustive eight-year-long education in advanced civil procedure. At each point, North Carolina has deployed every conceivable procedural obstacle, irrespective of merit. Now, North Carolina seeks to maintain this trend with a double Rule 12 motion that is procedurally unjustifiable. Under the rules, parties are allowed to file *one* Rule 12 motion. Defendants filed two such, along with supporting briefs that span 54 pages. DE 144, 146. This violates Rule 12's "Consolidation Rule" and exceeds EDNC page and word limits.

North Carolina's Motion to Strike (its first Rule 12 motion) is also procedurally improper. Rule 12(f) is not a sanctioning rule and cannot be used as a surrogate Rule 12(b) motion to dismiss.

In terms of Rule 12(b)(6) analysis, North Carolina sidesteps relevant standards, grounding its argument in disputed facts not included in the Second Amended Complaint, DE 134 ("SAC")—including *20* separate factual exhibits attached to its brief. The balance of North Carolina's arguments overlook pertinent legal benchmarks, use incorrect standards, or draw from Allen's previous complaint without acknowledging the more detailed allegations in the SAC. Both motions should be denied in their entirety.

## STATEMENT OF THE FACTS

Allen, a premier underwater videographer and lifelong resident of North Carolina, landed a monumental opportunity when the wreck of Blackbeard's flagship, the *Queen Anne's Revenge* (QAR), was found just off the coast of Beaufort, North Carolina. His extensive experience in North Carolina waters naturally led to a deal with Intersal, the company that discovered the QAR, to become the videographer for the excavation. SAC ¶¶ 42-46, 57-59.

---

[1] Defendants include Roy Cooper, Josh Stein, D. Reid Wilson, Mike Carroway, Kevin Cherry, Stephen R. Claggett, Karin Cochran, Cary Cox, Susan Kluttz, Sarah Koonts, John W. Morris, Joseph K. Schwarzer II, North Carolina, North Carolina Department of Natural and Cultural Resources (DNCR) and three "Does." This brief refers to the defendants collectively as "Defendants" or "North Carolina."

1

For the following decades, Allen worked tirelessly to record and document the recovery of QAR and its underwater treasures. Allen poured thousands of hours and hundreds of thousands of dollars into his work. This effort resulted in a small but extremely valuable collection of videos and images related to the project – a treasure in its own right. To his shock, he found that Defendants, with whom he had closely collaborated, had used his work for their personal and professional gain without his consent. *Id.* ¶¶ 59-87.

Allen voiced his concerns to North Carolina, but was met with scorn and resentment. Defendants viewed Allen as a treasure hunter, who sought to exploit history for personal gain, and accused Allen of creating "friction" by monetizing his "hobby." When Allen refused to back down, they retaliated. *Id.* ¶¶ 88-101.

In August, 2015, North Carolina enacted Blackbeard's Law, N.C.G.S. § 121-25(b), which categorized most of Allen's life work—including all of his QAR work—as "public records" owned by the people. N.C.G.S. § 132-1(b). Defendants then copied and distributed Allen's work to millions for personal and professional gain. On December 1, 2015, Allen filed this lawsuit. DE 1. Defendants continue to infringe. *Id.* ¶¶ 126-131.

## PROCEDURAL HISTORY

The extended procedural background of this matter, dating back to 2015, is familiar to the Court. The following key events bear relevance to the current motion:

- On September 4, 2020, Allen filed a motion requesting this Court to reconsider a previous order, which dismissed some of Allen's constitutional claims. DE 105. Allen asked for permission to file the SAC so that he could proceed under the framework of *United States v. Georgia*, 546 U.S. 151 (2006) . DE 106. North Carolina opposed. DE 114.

- The Court held a hearing on Allen's motion in Raleigh, North Carolina, on February 16, 2021. Subsequently, the Court granted Allen's motion on August 19, 2021. DE 118.

- North Carolina responded by filing a motion on September 3, 2021 (DE 119), which can aptly be characterized as a 'Motion to Reconsider the Reconsideration.'

- While still awaiting the Court's decision on its motion, North Carolina proceeded to appeal the Court's order granting Allen's Motion to Reconsider on September 20, 2021. DE 122. The Fourth Circuit dismissed North Carolina's appeal on October 14, 2022. DE 128.

- After a hearing on January 17, 2023, the Court denied North Carolina's "Motion to Reconsider the Reconsideration" and granted Allen's request for permission to amend his complaint. DE 133.

- On February 8, 2023, Allen filed the SAC (DE 134) alleging claims for copyright infringement, DMCA infringement, unconstitutional takings, violations of the Due Process Clause and the

constitutional prohibition against bills of attainder, ex post facto laws, and impairment of contract. The SAC also asserted a claim under § 1983. Allen seeks monetary, declaratory, and injunctive relief. In response, North Carolina filed two Rule 12 motions: one to strike parties, claims, and allegations in the SAC (DE144), and one to dismiss (DE 146) under Rules 12(b)(1), 12(b)(2), and 12(b)(6).

Despite almost eight years of litigation, North Carolina has yet to file an Answer.

## ARGUMENT

## I. THE COURT SHOULD DENY DEFENDANTS' MOTION TO STRIKE.

North Carolina misuses Rule 12(f) in its Motion to Strike, aiming to dismiss rather than strike defendants and claims from Allen's SAC. As the SAC is neither scandalous, redundant, nor immaterial, it does not meet Rule 12(f)'s strict striking criteria.

Rule 12(f) aims to uphold court dignity by striking extreme allegations. It cannot sanction supposed noncompliance with EDNC Local Rules or Federal Rules 10 and 15. North Carolina's effort to use Rule 12(f) to eliminate entire claims and defendants from Allen's SAC misconstrues the Rule's purpose.

### A. MOTIONS TO STRIKE ARE DISFAVORED.

Motions to strike should "be granted infrequently." *Lane v. Endurance Am. Specialty Ins. Co.*, 2011 LEXIS 40869, at *6 (W.D.N.C. Apr. 8, 2011). They are "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy." *Godfredson v. JBC Legal Grp.*, 387 F. Supp. 2d 543, 547 (E.D.N.C. 2005) (citing *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001)). Indeed, motions to strike are "strictly considered" and should usually be denied 'unless it is clear that the allegations in question can have **no possible bearing** on the subject matter of the litigation.'" *Cobell v. Norton*, 224 F.R.D. 1, 2 (D.D.C. 2004) (citation omitted) (emphasis added); *Godfredson*, 387 F. Supp. 2d at 547-48; *see also S.D. v. St. Johns Cnty. Sch. Dist.*, 2009 LEXIS 1941482, at *11 (M.D. Fla. 2009) (denying motion to strike where assertions were not "obviously false and unrelated to the subject matter of the action"). Even then, the "drastic" remedy is appropriate only if the the allegations at issue are "prejudicial to the moving party." *Lane*, 2011 LEXIS 40869, at *10.

Allegations "are not improperly scandalous merely because they describe shocking conduct." *Bailey v. Fairfax Cnty. Va.*, 2010 LEXIS 135512, at *13 (E.D. Va. Dec. 21, 2010). Instead, Rule 12(f) regulates the form of the pleading, rather than its substance. *See id.* As the court explained in *S.D. v. St. John*:

> The facts ... may be unpleasant ... but the same is true of [permissible

> allegations] ... . Such, for example, are the facts concerning a divorce for adultery. These may be scandalous and annoying and prejudicial to the accused party but a plaintiff or defendant is certainly entitled to plead them.

2009 LEXIS 62013, at *11. Doubts are categorically resolved in the pleader's favor. *Racick v. Dominion L. Assocs.*, 270 F.R.D. 228, 232 (E.D.N.C. 2010); *Lane*, 2011 LEXIS 40869, at *10.

### B. NORTH CAROLINA DOES NOT MEET THE TEST FOR STRIKING UNDER RULE 12(F).

#### 1. ALLEN'S ALLEGATIONS ARE RELEVANT TO THE CLAIMS AT ISSUE. THEREFORE, ALLEN'S ALLEGATIONS ARE NOT IMPERTINENT OR IMMATERIAL.

Allen's SAC meticulously sets out relevant facts. In doing so, Allen creates a depiction of factual allegations that are verifiable and relevant to his constitutionally based claims. Allegations such as the rivalry between treasure hunters and archivists, the relationship between Allen and Defendants, and the personal impact of Blackbeard's Law are both factual and pertinent to Allen's claims. *See, e.g.*, *infra* at 24-25 (relaying on objected-to allegations). Defendants do not offer any reason to think otherwise.

#### 2. ALLEN'S ALLEGATIONS ARE NOT "SCANDALOUS."

North Carolina also argues that Allen's allegations should be struck as "scandalous." They should not. North Carolina's "scandalous" assertions are based on nothing more than *ipse dixit* – North Carolina does not explain how the allegations "degrade defendants' moral character, contain repulsive language, or detract from the dignity of the court." *Webster*, 2009 LEXIS 89458, at *4 (citations omitted). Instead, they simply assert that "[e]xamination of the paragraphs" and "surrounding paragraphs" proves the allegations are improper. DE 145. This argument cannot serve as grounds to strike under Rule 12(f).

The sole case North Carolina cites offers little clarity of "scandalous" as is it is a 295-word order that fails to explain how the stricken paragraphs violated Rule 12(f) or what caused them to be deemed scandalous. *Smith-Phifer v. City of Charlotte*, 2019 LEXIS 137321, at *2 (W.D.N.C. Aug. 14, 2019). Otherwise, North Carolina omits any discussion of the key consideration in *all* cases involving scandalous content—whether the purportedly improper allegations are baseless, unsubstantiated, or inflammatory.

An examination of the few cases granting a motion to strike confirms that the allegations at issue bear no similarity to allegations deemed unacceptable. As an example, consider *Llewellyn-Jones v. Metro Prop. Grp.*,

*LLC,* 22 F. Supp. 3d 760 (E.D. Mich. 2014). The allegations at issue there were entirely immaterial to the underlying claims, and were not well-pled in the first place. *Id.* at 776-777 ("plaintiffs have offered nothing to substantiate those conclusory allegations.").

Numerous other courts have held likewise. *Cobell*, 224 F.R.D. at *5 (discussing examples of "scandalous" claims as claims that are "so devoid of the necessary evidence to sustain them that they amount to little more than name-calling") (citations omitted); Jan, 17, *Schultz v. Braga,* 290 F. Supp. 2d 637, 654-55 (D. Md. 2003) (striking allegations due to "use [of] inflammatory language").

Allen's allegations are relevant and grounded in fact. There are no baseless or unsupported claims. He has not used inflammatory language to offend the court. The only "scandal" here is Defendants' own actions.

### 3. NORTH CAROLINA IS NOT PREJUDICED BY ALLEN'S ALLEGATIONS.

Improper allegations should only be struck if they are unfairly prejudicial to the moving party. *Lane*, 2011 LEXIS 40869, at *10; *Godfredson,* 387 F. Supp. 2d at 547-48 (citation omitted). It requires a lot for an allegation at the pleading stage to be deemed prejudicial under Rule 12, since Defendants can refute statements with which they disagree "through the usual course of litigation.". *Webster*, 2009 LEXIS 89458, at *5. North Carolina fails to articulate any tangible prejudice that would warrant striking Allen's allegations or claims.

North Carolina also claims that Allen's allegations will "potentiall inflame the jury." DE 145 p. 14. However, North Carolina has not even filed an Answer, and trial proceedings are a considerable way off. These concerns are premature, and are more appropriate, if at all, through a motion in limine just prior to trial. *Blevins v. Piatt,* 2015 LEXIS 162670, at *5-6 (D. Md. Dec. 4, 2015); *Godfredson,* 387 F. Supp. 2d at 556-57.

North Carolina would obviously prefer that Allen's allegations not be of record. But this discomfort arises from the *facts* alleged in the SAC, rather than the form of the pledaing.

### C. THE COURT SHOULD NOT "STRIKE" DEFENDANTS FROM THE CASE.

In addition to striking particular allegations, Defendants seek to use Rule 12(f) to strike defendants, and even whole claims from the case. But Rule 12(f) is not a panacea for all grievances, and cannot be used to transform a scrivener's error into a case dispositive sanction, let alone well-plead claims.

1. <u>**Rule 10's Requirements Are Liberally Interpreted in the Absence of Prejudice.**</u>

Although the full name of each individual adult or entity named as a party should be set forth "in the title of the complaint," this requirement is interpreted liberally. Fed. R. Civ. P. 10. In the absence of prejudice, the court will overlook, or permit a party to amend, errors and omissions in the naming of parties. 2 *Moore's Federal Practice - Civil* § 10.02.

When finalizing the SAC, Plaintiffs' counsel made a clerical error that resulted in the omission of six defendants and three "Does" from the case caption. Each of the six omitted defendants—Kluttz, Cochrin, Cox, Claggett, Morris, and DNCR—has been a party to the case for years, as each was among the initially-named defendants when the case was filed.

Defendants have not demonstrated any prejudice resulting from this mistake, and there is none to be found. Each defendant—including those who were mistakenly omitted—was properly notified, summoned, and served. Further, the SAC contains detailed allegations that identify each defendant by name and that expressly allege each defendant's contributions to the alleged violations. *E.g.*, SAC ¶¶ 21-34. Thus, each defendant has been made aware of the proceedings and the nature of the misconduct alleged, fulfilling the objective of Rule 10.

To avoid any confusion, Plaintiffs have used the correct caption in this filing and have, contemporaneously with this brief, filed a motion to formally amend the caption.

2. <u>**Rule 12(f) Cannot Be Used to Effectuate Case-Dispositive Sanctions.**</u>

North Carolina asks the Court to use Rule 12(f) to "strike" defendants from the case as a penalty for their mistaken omission from the case caption. But Rule 12(f) may not be used to dismiss claims or parties. Defendants' complaint relates to Rule 10, which has no connection to Rule 12(f). Moreover, the purpose of Rule 10 is to assist parties and the Court in understanding the issues at hand. Its purpose is not punitive, and a violation does not necessitate the drastic action North Carolina suggests.

Defendants' cases are not to the contrary, as neither case involved a Rule 12(f) motion, nor the kind of detailed allegations at issue here. DE 145 at 9. Likewise, neither involved a complaint whose omission of a

party was due to a clerical error. Instead, one of the cases involved the court's review of a *pro se* complaint that was dismissed as frivolous in its entirety, *Johnson v. Lett*, 2023 WL 362393, at *3 (W.D.N.C. Jan. 20, 2023), while the other involved a defendant who the plaintiff never intended to include in the first place, *Perez v. Humphries*, 2018 WL 4705560 (W.D.N.C. Oct. 1, 2018).

### D. PLAINTIFFS' SAC WAS EXPRESSLY ALLOWED BY THE COURT.

Finally, North Carolina argues that the Court should strike several claims as contrary to the Court's order allowing amendment. But the Court did not impose any limitations when it granted Plaintiffs' request to amend the complaint. DE 133. Moreover, the allegations in the SAC readily demonstrate that the claims about which Defendants complain are integrally connected to claims Defendants do not challenge as improper, such that there is no basis to grant their motion.

## II. THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS

### A. DEFENDANTS' SECOND MOTION IS PROCEDURALLY IMPROPER.

Rule 12(g) sets a bright-line rule: "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Defendants violated this rule by filing two Rule 12 motions. Under these circumstances, courts do not hesitate to deny the second-filed motion as improper. *See Sageworks, Inc. v. Creatore*, 2017 WL 633359 at *7 (E.D.N.C. Feb. 15, 2017) (citing *Stoffels ex rel., SBC Concession Plan v. SBC Commc'ns, Inc.,* 430 F. Supp. 2d 642, 647 (W.D. Tex. 2006)); *SEC v. Lucent*, 2006 WL 2168789, at *5 (D.N.J. June 20, 2006) ("By its plain language, Rule 12(g) mandates that parties consolidate all of their pre-answer motions and file them together."); 5C Wright & Miller, *Fed. Prac. & Proc.* ¶ 1385).

Denying subsequent Rule 12 motions serves the interests of judicial economy, as piecemeal litigation wastes the Court's and the parties' resources. *Wartsila NSD N. Am., Inc. v. Hill Int'l, Inc.*, 2004 WL 7339759, at *5 (D.N.J. June 22, 2004); *see also Negron v. Sch. Dist. of Philadelphia*, 994 F. Supp. 2d 663, 666 (E.D. Pa. 2014) (barring a second Rule 12 motion). These concerns are at the fore here, where the two motions at issue were filed in short succession in what seems to be an attempt to circumvent the Court's word limits. Viewed together, Defendants' motions comprise a total of 12,817 words—well over the 8,400 maximum allowed under the

Court's local rules. L.R. 7.2(f)(3)(A).[2]

~~

The Court should deny Defendants' second-filed motion as procedurally improper. This denial would not deprive Defendants of any relief to which they legitimately are entitled. Should there be issues raised in that motion and memorandum that are not subject to the timing and single-motion limits of Rule 12, Defendants are free to set out those issues in a new, properly filed motion.[3] What they are not entitled to do is thumb their noses at the long-established rules and procedures of the federal courts.

**B. LEGAL STANDARDS**

**1. SOVEREIGN IMMUNITY**

North Carolina argues that Allen's claims should be dismissed on sovereign immunity grounds for lack of personal and subject matter jurisdiction. But sovereign immunity does not implicate personal jurisdiction. *See Smith v. Wash. Metro. Area Transit Auth.*, 290 F.3d 201, 205 (4th Cir. 2002) ("[A]n assertion of governmental immunity is properly addressed under the provisions of Rule 12(b)(1)[.]"). Thus, sovereign immunity is fundamentally about subject matter jurisdiction, which is a question of law. *Zito v. N.C. Coastal Res. Comm'n*, 8 F.4th 281, 284 (4th Cir. 2021). "Because sovereign immunity is waivable, [the Fourth Circuit] treats it 'akin to an affirmative defense,' meaning that the defendant bears the burden of demonstrating that sovereign immunity applies." *Id.*

If sovereign immunity hinges on factual questions, the Court is required to treat a plaintiff's allegations as evidence. *Frye v. Brunswick Cnty. Bd. of Educ.*, 612 F. Supp. 2d 694, 701 (E.D.N.C. 2009). While the Court may consider evidence outside the pleadings, it should only grant the motion to dismiss "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.*

**2. FAILURE TO STATE A CLAIM**

---

[2] In fact, the word count is even higher, as the auto-generated word count of DE 147 (the second-filed memorandum) does not account for the portions of the brief that were incorporated through reference. *See* DE 147 at 2 (incorporating the State of Facts from the first-filed brief), 11 (incorporating 2-page argument from Defendants' motion for reconsideration).

[3] For example, objections to subject matter jurisdiction can be raised and determined at any time, and are not waived by failure to include them in a timely filed Rule 12 motion. Fed. R. Civ. P. 12(h)(3).

A Court must take as true all well-plead factual allegations, and must draw all reasonable inferences in favor of the nonmoving party when considering a Rule 12(b)(6) motion. *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023). Review is limited to the four corners of the complaint. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir 2015). "Consideration of extrinsic documents ... improperly converts the motion to dismiss into a motion for summary judgment. This conversion is not appropriate when the parties have not had an opportunity to conduct reasonable discovery." *Id.*

"To survive a motion to dismiss ... a complaint need only allege facts which, if true, state a claim to relief that is *plausible[.]*" *Washington,* 58 F.4th at 177. The allegations "need not be particularly detailed, and the chance of success need not be particularly high." *Id.* Dismissal is appropriate only when a complaint is conclusory or formulaic. *Id.*

## C. SOVEREIGN IMMUNITY DOES NOT BAR ALLEN'S COPYRIGHT OR TAKINGS CLAIMS (COUNTS I-IV).

Allen's copyrights are his property. *Allen v. Cooper*, 140 S. Ct. at 1004 (2020). The SAC alleges that North Carolina took Allen's property (1) by copying, displaying, and performing Allen's copyrighted works repeatedly and on massive scale without permission and (2) by placing Allen's life work into the public domain.

The Takings Clause of the Fifth Amendment states that "private property [shall not] be taken for public use, without just compensation." The Takings Clause has been made applicable to the states through the Fourteenth Amendment. *Penn Cent. Transp. Co. v. City of N.Y.*, 438 U.S. 104, 122 (1978). Thus, when a state effectuates an unlawful taking, it violates both the Fifth and Fourteenth Amendments. *See id.*

The Eleventh Amendment provides that states are immune from suit with respect to claims brought by "Citizens of another State." While the plain language of the Amendment limits immunity to diversity claims, the Supreme Court has held that the Amendment shields states from liability regardless of who brings the claim. *Hans v. Louisiana*, 134 U.S. 1 (1890). Allen agrees with this Court's assessment of *Hans* (DE 69 at 10-17) and believes that the Eleventh Amendment should not bar suits brought by citizens against their own states. Allen seeks to preserve this argument for appeal. *Welch v. Texas Dept. of Highways & Pub. Transp.*, 483 U.S. 468, 520-21 (1987) (Stevens, J., dissenting); Akhil Amar, *Of Sovereignty and Federalism*, 86 Yale L.J. 1425, 1475-84 (1987).

Sovereign immunity is not absolute. Allen's takings claims can proceed due to two exceptions: abrogation as outlined in *Georgia*, 546 U.S. 151 at 158-159, and the self-enforcing character of the Fifth Amendment, as recognized in *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019).

In the pages that follow, Plaintiffs explain why sovereign immunity should not block their claims. In addition, Plaintiffs have prepared a chart that explains how the various theories relate to each other and to the previous decisions in this case. That chart is shown on the next page and attached to this brief as Exhibit A.

1. **CONGRESS ABROGATED SOVEREIGN IMMUNITY**

Congress can abrogate sovereign immunity to enforce the provisions of the Fourteenth Amendment. *See Georgia*, 546 U.S. at 158-59. Congress has abrogated sovereign immunity here. In 1990, Congress passed CRCA, which abrogated state sovereign immunity for claims of copyright infringement. 17 U.S.C.A. § 511. As this Court previously recognized, CRCA validly abrogated immunity for acts of copyright infringement that also violate the Fourteenth Amendment. DE 118 at 22-24 ("[P]laintiffs can still use CRCA as a basis for its *Georgia* claim."). Thus, defendants are not entitled to sovereign immunity with respect to Plaintiffs' copyright claim (Claim I), DMCA claim (Claim II), or takings claims (Claims III-IV).

North Carolina claims that the US Supreme Court held that CRCA was not a valid abrogation. DE 147 ("Motion") at 5-6. But this Court already rejected that argument: "Although the Supreme Court ruled that CRCA was unconstitutional insofar as it attempted to abrogate sovereign immunity prophylactically, the statute remains whenever plaintiff alleges both a constitutional violation as well as a statutory violation." DE 118 at 23-24 (citation omitted). For the same reasons, North Carolina's argument that *Georgia* does not abrogate immunity for due process violations, Motion at 18-19, also fails.[4]

---

[4] Defendants cite three cases to support the proposition that "courts have rejected a CRCA due process claim under *Georgia*." Defendants overread these cases. The Court in *Nat'l Ass'n of Boards of Pharmacy v. Bd. Of Regents of the Univ. Sys. of Georgia* found that the plaintiff's due process claim failed on the merits, 633 F.3d 1297, 1319 n.35 (11th Cir. 2011), and so expressly did *not* reach a decision as to whether *Georgia* could support a due process claim, *id.* at 1316 n.32. Likewise, the complaint in *Campinha-Bacote v. Regents of the Univ. of Michigan* did not even allege a due process violation, but instead asserted just a single claim for ordinary copyright infringement, 2016 WL 223408, at *5 (S.D. Ohio Jan. 19, 2016) (dismissing complaint for failing to plead a due process violation); Ex. B (Complaint in *Campinha-Bacote*, No. 15-cv-330 (S.D. Ohio) (ECF No. 1)). The same

North Carolina also argues that "[a] federal *Georgia* takings claim is inappropriate where adequate state remedies are available." DE 147 at 17. That assertion (offered with no citation) finds no support in *Georgia* or anywhere else. To mount a successful claim under *Georgia*, one need only allege (1) a statutory violation (2) amounting to a constitutional violation (3) where Congress has expressly abrogated sovereign immunity. *Georgia*, 546 U.S. at 158-59. *Georgia* has nothing to do with the availability of state remedies. In any event, as explained below, no state remedies are available here.

## 2. THE RIGHT AGAINST UNLAWFUL TAKINGS IS SELF-EXECUTING AND CANNOT BE BLOCKED BY SOVEREIGN IMMUNITY.

The Fifth and Fourteenth Amendments preclude states from taking property without compensation. That right would be meaningless if states could use sovereign immunity to avoid takings liability. *See Hutto v. S.C. Ret. Sys.,* 773 F.3d 536, 551 (4th Cir. 2014) (acknowledging "tension" between Fifth and Eleventh amendments). Accordingly, the Fourth Circuit has held that sovereign immunity only bars takings claims "when the *State's courts* remain open to adjudicate such claims." *Id.* at 552. In other words, a takings claim can proceed in federal court if state courts are not "open." To satisfy the "open" requirement, states must provide a "'reasonable, certain, and adequate' means for challenging an action as a taking." *Zito*, 8 F.4th 281 at 288.

In this case, sovereign immunity's limits are even greater. The Fourth Circuit has not yet considered whether *Hutto's* "open" requirement applies to takings claims that involve a federally-created property right. The principles underlying *Hutto*, as well as basic principles of federalism suggest that the requirement should *not* apply, as state courts should not be allowed to resolve property rights that are exclusively federal.

---

is true regarding *Am. Shooting Center, Inc. v. Int'l*, which simply adopted the reasoning of the other two cases, 2016 WL 3952130, at *4 (S.D. Cal. July 22, 2016).

To the extent Defendants read these cases to mean that copyright infringement can *never* amount to a due process violation, that reading was expressly rejected by the Supreme Court. *Allen,* 140 S. Ct. at 1004 ("When does the Fourteenth Amendment care about copyright infringement? Sometimes, no doubt. Copyrights are a form of property.").



# Are Defendants Entitled to Sovereign Immunity for Allen's Takings and Copyright Claims (Counts I-IV)?

Start Here.

Theory I: Prophylactic abrogation through CRCA

Theory rejected by the Supreme Court

Can Allen obtain a claim relief through a claim made directly under the N.C. Constitution?

Would the state claim "arise under" the Copyright Act? (28 U.S.C. § 1338)

Would the state claim fall within the subject matter of the Copyright Act? (17 U.S.C. § 301)

Are the state rights "equivalent" to those protected by the Copyright Act? (17 U.S.C. § 301)

No.

No.

No.

Yes or uncertain.

Yes or uncertain.

Yes or uncertain.

Sovereign immunity applies.

No immunity. Allen's claims may proceed.

Theory II: Abrogation through CRCA for actual constitutional violations, per *United States v. Georgia*

Theory accepted by this Court in Dkt. 118.

But if Theory II is not valid...

Theory III: A direct takings claim under the Fifth and Fourteenth Amendments

Did *Knick* overturn *Hutto*?

*Zito* says *Hutto* is still valid. Allen seeks a change in the law.

Are plaintiffs entitled to pursue takings claims in federal court where the taken property was created by federal law? (Is there a *Hutto* exception?)

Do N.C. courts provide Allen with a "reasonable, certain, and adequate" means to challenge the taking?

Can Allen obtain relief through a breach of contract claim?

Can Allen obtain relief through the NCTCA?

Yes.

No.

Yes.

Yes.

No or uncertain.

No or uncertain.

Yes.

Yes.

12

The *Hutto* rule assumes states have a sovereign interest in resolving disputes over state-based property rights. *Hutto*, 773 F.3d at 551-52. States do not, however, have an interest in interpreting or applying property rights originating in federal law. In some cases, such as this one, states may even prefer not to enforce federal rights when they conflict with state policies. SAC ¶¶ 103-104 (describing Blackbeard's Law). Federal courts, on the other hand, have a strong interest in ensuring federal rights are protected and that state governments do not have the ability to trump federal policy. A rule that precludes federal courts from defending federal property rights turns the Supremacy Clause on its head (US Const, Art VI, cl. 2).

Separately, there is good reason to think that the rule pronounced in *Hutto* has been abrogated by the Supreme Court's decision in *Knick*. As this Court previously explained, *Knick* held that "the Takings Clause requires a compensatory remedy without regard to what remedies state law may provide" and "rejected interpretations of federal rights and remedies that would leave those rights at the mercy of state courts." DE 118 at 12-13. While this reasoning was rejected by the Fourth Circuit's subsequent decision in *Zito*, 8.F.4th at 287-77, Plaintiffs believe *Zito* was wrongly decided, and seek to preserve this argument for appeal.

Even if we assume *Hutto* applies, dismissal is not justified because North Carolina courts cannot provide Plaintiffs with a "reasonable, certain, and adequate" cause of action. North Carolina argues that Allen could assert a claim under the North Carolina Tort Claims Act (NCTCA), for breach of Allen's 2013 contract with North Carolina (the "2013 Agreement," see SAC ¶ 7), or for a takings under the North Carolina constitution. DE 147 ("Motion") at 8. None of these options is viable.

The NCTCA is not a viable option because it only waives sovereign immunity for negligence and is not itself an independent cause of action. (N.C.G.S. § 143-291). Allen's claims are not based on negligence, and North Carolina does not identify any cause of action that could serve as a predicate. Furthermore, a breach of contract claim isn't feasible because the claims at hand (Claims I-IV) aren't contract-based, and because the statute of limitations for the 2013 Agreement has expired (N.C.G.S. § 1-52). Furthermore, North Carolina has already stated that the Settlement Agreement is void as against public policy. (SAC ¶ 124).

One theoretical claim remains—a takings claim made directly under the North Carolina Constitution. Motion at 9. But that claim is also not viable, since Allen's claims involve rights that, by statute, can only be

adjudicated by federal courts.[5] There are two statutory provisions at issue, each of which precludes North Carolina courts from resolving Allen's claims: 28 U.S.C. § 1338, which provides federal courts with exclusive jurisdiction over claims "arising under" the Copyright Act, and 17 U.S.C. § 301, which preempts state copyright claims.[6]

### a. FEDERAL COURTS HAVE EXCLUSIVE JURISDICTION OVER ALLEN'S CLAIMS (28 USC § 1338)

Federal courts have exclusive jurisdiction over all claims "arising under" the Copyright Act. 28 U.S.C. § 1338 ("No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to ... copyrights."). A claim "arises under" the Copyright Act if it (1) "seeks a remedy expressly granted by the Copyright Act" **_or_** (2) "requir[es] construction of the Copyright Act." 13 Fed. Prac. & Proc. Juris. § 3582 (3d ed.) & n.31 (noting "widespread agreement" on the "arising under" test); *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988); *Christopher v. Cavallo*, 662 F.2d 1082, 1083 (4th Cir. 1981).

Here, both conditions are satisfied, since the claims at issue are either copyright claims (Claims I-II) or are integrally connected to copyright claims (Claims III-IV). Moreover, the "just compensation" Allen seeks are the remedies specified in the Copyright Act and DMCA (SAC ¶¶ 150, 158, 171, 185). Hence, any attempt to resolve Allen's claims—even if framed as a North Carolina takings claims—would require the state court to interpret the Copyright Act and resolve key copyright issues such as fair use, infringement, authorship, and ownership. Motion at 13-14 & 16 n.5. Thus, North Carolina has no authority to resolve Allen's claims.

### b. ALLEN'S STATE CLAIMS ARE EXPRESSLY PREEMPTED (17 U.S.C. § 301).

Separately, any state claims Allen would otherwise be allowed to assert would be expressly preempted by the Copyright Act. 17 U.S.C. § 301. Section 301 has a "broad preemptive scope." *Tire Eng'g & Distrib. v.*

---

[5] Allen's claims may also be blocked by the Copyright Act's three-year statute of limitations. 17 U.S.C. § 507(b); *see also* Motion at 25 ("[A]ll allegations based on conduct before the year 2020 is barred by the SOL."). While there is no statute of limitations for takings claims in North Carolina, the fact that Allen's claims derive from the Copyright Act means Defendants have at least a colorable argument that the statute of limitations would apply to any claims brought now in state court.

[6] "[P]reemption and federal jurisdiction are distinct concepts," and so should be considered separately. *Allen v. GlaxoSmithKline PLC*, 2008 WL 2247067, at *10 (E.D. Pa. May 30, 2008) (citing cases). If either concept would prevent North Carolina Courts from resolving Allen's claims, then state courts would not be "open."

*Shandong Linglong Rubber Co.*, 682 F.3d 292, 309 (4th Cir. 2012), the purpose of which is to "insure that the enforcement of these rights remains *solely* within the federal domain." *Id.* (emphasis added)

A state claim is preempted by the Copyright Act if the claim "falls within the subject matter of copyright law" and if the rights protected by state law are "equivalent" to any of the exclusive rights guaranteed by the Copyright Act. *Id.* Rights implicated by a state claim are "equivalent" to those protected by the Copyright Act if the state-law right "may be abridged by an act which, in and of itself, would infringe one of the exclusive [copyright] rights." *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 230 (4th Cir. 1993).

Both requirements are satisfied here. Allen's state-law takings claim falls within the subject matter of copyright law since the claim is predicated on North Carolina's infringement, theft, and destruction of his copyrights. Further, Allen's state-based takings claim is "equivalent" to his copyright claim, since both claims are satisfied by showing that Defendants unlawfully infringed Allen's copyrights. Put differently, the state claim would not "regulate conduct qualitatively different from the conduct governed by federal copyright law," but would instead regulate the *exact same* conduct. *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 659 (4th Cir 1993).[7]

~~

In view of the above, it cannot be said that state courts are "open" for Allen and his claims. It bears emphasis that to prevail on this issue, Allen need not definitively *prove* that North Carolina courts would dismiss his claims—the question is whether North Carolina provides a "reasonable, certain, and adequate" cause of action. The above analysis demonstrates that there are likely *no* viable causes of action, and that whatever cause of action *may* exist would, at best, be *un*certain and *in*adequate. To the extent the Court has doubts on this issue, it should resolve those doubts in Allen's favor to ensure that his constitutional rights are preserved.

North Carolina suggests that this Court previously concluded that North Carolina courts *are* "open" to hear Allen's claims. *See* Motion at 8 (citing DE 69 at 18). Nonsense. The Court's consideration of the "open"

---

[7] The elements of Allen's copyright claims are identical to the elements of his hypothetical state takings claim. Both require Allen to prove that he had a valid copyright and that defendants infringed that right. *See Avtec Sys., Inc. v. Peiffer*, 21 F.3d 568, 571 (4th Cir. 1994) (elements for copyright claim); *Corum v. Univ. of N. Carolina*, 330 N.C. 761, 781-82 (1992) (describing North Carolina takings claim).

question was limited to Plaintiffs' previously-pled § 1983 claim. The Court did not consider whether state courts would be open for Plaintiffs' broader takings claims, as the Court had already concluded that Congress abrogated sovereign immunity through CRCA. *See* DE 69 at 7-9. Moreover, the SAC's takings theories are more detailed and expansive than those set forth in the previous complaint. Thus, the Court has good reason to consider the "open" question from scratch and with the benefit of more detailed briefing. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) ("law of the case" doctrine not absolute).

North Carolina also suggests that revisiting the sovereign immunity question is barred by *res judicata* and the law of the case doctrine. *See* Motion at 5-6. This, too, is incorrect, as *res judicata* only applies to final judgments, and none has been issued in this case. *See* DE 118 at 20 ("[F]inal judgment was never entered[.]"). Ironically, it is *North Carolina's* argument that is barred by the law of the case doctrine, as this Court already considered and rejected its "res judicata" argument when it held that the takings claims were "no longer dismissed." *See* DE 118 at 21, 24.

### D. ALLEN HAS STATED CLAIMS FOR COPYRIGHT INFRINGEMENT AND DMCA VIOLATIONS (CLAIMS I & II).

While Defendants do not expressly argue that Plaintiffs have failed to state a claim for copyright infringement or for a violation of the DMCA, the Motion includes an extended five-page narrative that attempts to refute the SAC's allegations relating to those claims. *See* Motion at 13-17. Defendants also attached *20* exhibits to support their factual claims. The Court should not consider those arguments or exhibits, as they are based on facts that are not included in the SAC. *E.g.*, *Zak*, 780 F.3d at 606-07.

To state a claim for copyright infringement, Allen must allege that he has a valid copyright and that North Carolina infringed that right. *Avtec,* 21 F.3d 568, 571. The SAC alleges both. *See* SAC ¶¶ 63-67, 70-71, 85, 141-42, 177 (Allen's ownership and registration of copyrights); *id.* ¶¶ 82, 85-86, 89-91, 102-04, 118-122, 126, 135, 137, 143-45 (allegations supporting infringement).

To state a claim for a DMCA violation, Allen must allege that North Carolina intentionally removed or altered copyright management information without permission, or that North Carolina performed or distributed a copyrighted work while knowing that copyright management information has been removed or

altered without the authority of the copyright owner. 17 U.S.C. § 1202. Once again, the SAC alleges both. SAC ¶¶ 151-57. Thus, the Court should deny North Carolina's Motion with respect to Claims I and II.

### E. ALLEN HAS STATED A TAKINGS CLAIM WITH RESPECT TO BLACKBEARD'S LAW (CLAIM IV) AND THE STATE'S DIRECT AND INDIRECT INFRINGEMENT OF HIS COPYRIGHTS (CLAIM III).

To state a claim for an unconstitutional taking, Allen must allege (1) that he has a protectable property interest, and (2) that the property was "taken" without "just compensation." *See* U.S. Const., amend. V, cl. 4; *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537-38 (2005); *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009). Allen has alleged both. As to the first, the SAC alleges that Allen owns a valid copyright and that he has a property interest in his copyrights. *Allen*, 140 S. Ct. 994 at 1004 ("Copyrights are a form of property."); SAC ¶¶ 63-67, 70-71, 85, 141-42, 177 (allegations showing ownership of copyrights), ¶ 161 (identifying copyrights as a property interest).

The SAC also alleges that Allen's property was taken. The Supreme Court has recognized three kinds of takings: (1) "direct appropriation," which takes place if the government creates a "practical ouster of the owner's possession," (2) a "per se" taking, which takes place when the government "completely deprive[s] an owner of all economically beneficial use of her property," and (3) a *Penn Central* taking, which has no fixed criteria, but takes place when the economic impact of the government's action falls within the scope of conduct the Fifth Amendment was intended to prohibit. *See Lingle*, 544 U.S. at 538-39.

The SAC asserts two distinct takings claim. Claim IV alleges that Defendants took Allen's property by passing Blackbeard's Law, which destroyed Allen's copyrights by placing his life's work into the public domain, SAC ¶¶ 174-88, and Claim III alleges that Defendants took Allen's property through direct and indirect infringement of copyrighted works relating to the Queen Anne's Revenge project. *Id.* ¶¶ 159-73.

#### 1. DEFENDANT' ARGUMENTS ARE PROCEDURALLY IMPROPER.

North Carolina ostensibly questions the adequacy of Allen's takings claims but fails to address the substance of the allegations. Despite citing *Penn Central*, North Carolina offers zero argument. Motion at 11. Instead, North Carolina tries to reference an argument from a previous motion, which it cannot do. *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 345 (9th Cir. 1996); *Aldini AG v. Silvaco, Inc.*, 2023 WL 3749792, at *3 n.3 (N.D.

Cal. Mar. 27, 2023). ("The Court will only consider arguments actually raised in the parties' briefing in deciding each of the motions to dismiss before it."). Even assuming Defendants' incorporation were allowed, the arguments they seek to incorporate address Plaintiffs' *previous* complaint, and rely on facts not alleged in either the old or new complaint. *See* DE 114 at 22-23. Defendants have not offered any reason to depart from the normal rule.

### 2. BLACKBEARD'S LAW IS AN UNCONSTITUTIONAL TAKING (CLAIM IV).

Blackbeard's Law constitutes a taking under each of the three theories identified above.

*First*, Blackbeard's Law directly appropriated Allen's works. "The right to exclude others is generally 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011 (1984). For copyrights, the right to exclude is even more fundamental, as the right to exclude *is* the protectable property interest. *See* 17 U.S.C. § 106.

Blackbeard's Law destroyed Allen's copyrights by placing his works in the public domain, declaring that his works "are the property of the people," and expressly invalidating any "limitation on the use" of those works. *See* SAC ¶¶ 9, 13, 103-04, 108, 176-77; N.C.G.S. § 121-25(b) (2015); N.C.G.S. § 132-1 (defining "public records"). Additionally, under Blackbeard's Law, any member of the public "may obtain copies [of Allen's work] for free," and may use and distribute his works however they wish. *See id.*

By taking Allen's right to exclude and transferring his property to "the people," North Carolina directly appropriated Allen's property. *Kaiser Aetna v. United States*, 444 U.S. 179-80 (1979) ("[W]e hold that the 'right to exclude,' so universally held to be a fundamental element of the property right, falls within this category of interests that the Government cannot take without compensation.").

For similar reasons, Blackbeard's Law qualifies as a "per se" taking. The "economically beneficial" use of a copyright is the ability to license or sell that copyright to others. *See Davis v. Blige*, 505 F.3d 90, 98 (2d Cir. 2007). For obvious reasons, there is no reason to take (or pay for) a license to material that is freely available and whose use cannot be restricted. *See Klinger v. Conan Doyle Est., Ltd.*, 755 F.3d 496, 497 (7th Cir. 2014) (works in the public domain "can be copied and sold without need to obtain a license from the [copyright] holder"). While the economic impact of Blackbeard's Law is apparent from the face of the statute, the effect of the

statute is also supported by allegations in the SAC that explain, in detail, how Blackbeard's Law has impacted Plaintiffs' licensing efforts, and by the fact that the Law—if maintained—precludes Allen from obtaining relief under the Copyright Act, since it renders null and void any law or policy that would restrict one's ability to use Allen's work. SAC ¶¶ 167-68, 178-182.

Finally, Blackbeard's Law qualifies as a taking under *Penn Central*. To determine whether a *Penn Central* taking has occurred, courts consider "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017); *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).

The *Penn Central* inquiry is "fact-intensive," and so does not lend itself to resolution through a motion to dismiss. *Penn Central*, 438 U.S. at 124 (1978) (whether an act constitutes a takings "depends largely upon the particular circumstances in [the] case"); *ABC Sand & Rock Co., Inc., v. Cnty. Of Maricopa*, 2022 WL 1619019, at *7 (D. Ariz. May 23, 2022) (declining to consider *Penn Central* at pleading stage). Nevertheless, the SAC makes clear that Blackbeard's Law *does* qualify as a takings under *Penn Central*.

With respect to the first factor, Blackbeard's Law has a significant adverse economic impact on Plaintiffs, as placing the works into the public domain destroys 100% of their value.

Blackbeard's Law also interferes with Plaintiffs' "reasonable investment-backed expectations" (the second factor). The SAC includes detailed allegations regarding Allen's investments into his copyrighted works, including allegations that Allen spent thousands of hours and hundreds of thousands of dollars to create his works relating to the QAR. SAC ¶¶ 63-64, 165-66. But those investments are just the tip of the iceberg, as Blackbeard's Law is not limited to the QAR, but instead applies to *all* historical underwater footage obtained in North Carolina waters. SAC ¶¶ 104, 107. Thus, Plaintiffs' investment-backed expectations include the time and money Allen has invested during his entire career, including substantial investments in equipment, training, and time. *See id.* ¶¶ 106-08.

These investments were not speculative or fanciful, but were based on Allen's reasonable expectations that he would be able to make a profit from licensing his work— expectations grounded in decades of

experience doing just that. *See id.* ¶¶ 19, 58, 69, 167; *cf. Quinn v. Bd. of Cnty. Commr's. for Queen Anne's Cnty., Maryland*, 862 F.3d 433, 443 (4th Cir. 2017) (second factor favors plaintiffs if investments were "reasonable" rather than "speculative").

*Penn Central*'s third factor also favors Allen. This factor is "an open-ended inquiry into whatever considerations [the Court] think[s] [is] most relevant in each specific case." *Blackburn v. Dare Cnty.*, 58 F.4th 807, 813-14 (4th Cir. 2023). Here, the Court should consider the targeted nature of Blackbeard's Law, the fact that it impacts the vast majority of Allen's life work, and the fact that the law was passed in retaliation for Allen refusing to give up his work for free. *See* SAC ¶¶ 3-4, 10-13, 82, 100-02, 105, 126-38, 174-84. Indeed, Blackbeard's Law is exactly the kind of governmental abuse the Fifth Amendment was designed to prevent.

~~

As each of the *Penn Central* factors strongly favors Plaintiff, no further balancing or analysis is needed—Blackbeard's Law is unquestionably a taking.

### 3. NORTH CAROLINA'S INFRINGEMENT CONSTITUTES AN UNLAWFUL TAKINGS (CLAIM III)

North Carolina also effectuated a *Penn Central* taking by infringing Allen's copyrights. As above, each of the three *Penn Central* factors strongly favors Plaintiff.

Defendants' infringements and Blackbeard's Law devalues Allen's copyrights, depriving him of licensing revenue (SAC ¶ 69). The infringement went beyond simple use; Defendants distributed the works publicly online (including platforms like YouTube and state-run social media), allowing anyone to access, download, and use the works without license or permission (SAC ¶¶ 76, 79, 119 & Tbls. 1-2; SAC ¶ 80). This distribution and the consequent ubiquity of the works substantially undermined their value. *Id.*

Moreover, the state's removal of copyright management information, crucial for author attribution and reputation-building, further diminished the works' value and Allen's potential business opportunities (SAC ¶¶ 5, 79-80, 152-55). Thus, North Carolina's actions satisfy the first Penn Central factor, substantiating Allen's takings claims.

The second Penn Central factor supports Allen; he made substantial investments into his QAR

footage anticipating he could license it and prohibit its undervaluing use.

The third Penn Central factor also favors Allen due to the defendants' ongoing, willful conduct, their previous commitment to halt all infringing activity, and their use of Allen's property, which contradicts the essence of copyright ownership.

## F. ALLEN HAS ALLEGED A VIOLATION OF PROCEDURAL DUE PROCESS (CLAIMS III AND IV).

To make a claim for procedural due process violation linked to a copyright interest, a plaintiff must show that the state intentionally or recklessly infringed a copyright, and failed to provide an appropriate remedy. *Allen*, 140 S. Ct. at 1004; *see also Doe v. The Citadel*, 2023 WL 3944370, at *2 (4th Cir. June 12, 2023).

The SAC satisfies those requirements. As detailed above and in the SAC, Allen has a property interest in his works, which North Carolina took through Blackbeard's Law and other acts of infringement. Blackbeard's Law's passage was necessarily intentional, as one cannot negligently pass a statute. *See* SAC ¶ 117. Moreover, the SAC alleges that North Carolina expressly intended Blackbeard's Law to punish Allen and exploit Allen's works free of charge. SAC ¶¶ 102, 105, 114, 123.

With respect to Defendants' infringement more generally (Claim III), the SAC alleges that Defendants' infringement was willful, and that "[a]t all relevant times, Defendants knew they were using Allen's works without permission ... [as] evidenced by the fact that Defendants continued to infringe Allen's copyrights even after Allen expressly notified Defendants of their infringement and demanded Defendants cease their infringement ... [and by] the timing and patterns associated with Defendants' infringement." *Id.* ¶¶ 147-48.

Finally, the SAC alleges that North Carolina did not provide Allen with *any* notice, nor with any opportunity to challenge their unlawful acts (pre- or post- deprivation). *See* SAC ¶¶ 10, 110-12 (no procedural protections in Blackbeard's Law), 115 (no meaningful opportunity to be heard prior to the passage of Blackbeard's Law), 169, 183. And, as explained above, there is no adequate state remedy.

North Carolina's arguments for dismissal are flawed. It neglects to address due process violations stemming from Blackbeard's Law (Claim IV). Regarding other infringements (Claim III), North Carolina's arguments are either irrelevant or based on information not in the SAC. North Carolina also claims that the Fourth Circuit "held that Defendants reasonably believed they could use the images." Motion at 13. But the

Fourth Circuit only considered whether Defendants were entitled to qualified immunity, an inquiry unrelated to the intentionality of the alleged infringement. The argument is also based on the previous complaint, rather than the SAC's more detailed allegations regarding motivations and intent.

## G. ALLEN HAS ALLEGED THAT BLACKBEARD'S LAW IS AN UNLAWFUL BILL OF ATTAINDER (CLAIM V).

Article I, § 10 of the United States Constitution states: "No State shall ... pass any Bill of Attainder[.]" A bill of attainder is a legislative act that inflicts punishment on specific individuals. *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 473-74 (1977); *see also Ameur v. Gates*, 759 F.3d 317, 329 (4th Cir. 2014) (defining bill of attainder). Claim V of the SAC alleges that Blackbeard's Law is an unlawful bill of attainder that punishes Allen for defending his intellectual property rights, for his efforts to obtain compensation for his work, and for perceived disloyalty towards state archaeological interests. SAC ¶ 193.

Defendants argue that Blackbeard's Law is not a bill of attainder because it does not single out Allen and because it is not punitive. Motion at 19-22. Neither argument passes muster.

### 1. BLACKBEARD'S LAW TARGETS ALLEN.

While Blackbeard's Law is sweeping in *what* it does, it is hyper-targeted as to *whom* it affects. The SAC includes detailed allegations explaining how Allen and Intersal are—by design—the only persons who are meaningfully impacted by the law. For instance, the SAC alleges that "Rick Allen and Intersal are the *only* persons on the planet with an extensive corpus of photography and video work" covered by the statute, SAC ¶ 105, that the provisions of the Law "mirror the provisions of the 2013 Settlement Agreement," to which Allen and Intersal were the only parties (other than DNCR itself), *id.* ¶ 194, and that the Law "was brought forth because of the [Intersal] lawsuit," *id.* ¶ 116.

North Carolina, meanwhile, does not acknowledge these allegations. Instead, it simply asserts that the Law "applies to State possessed records of many other ongoing salvage projects" that "involve many people." Motion at 21. But those facts are not alleged in (and are contrary to) those in the SAC.

Regardless, those facts would not help North Carolina. Whether North Carolina has other salvage operations says nothing about whether there are other individuals who are meaningfully impacted by the

statute, and North Carolina has not identified any such individuals. And contrary to North Carolina's assertion, Blackbeard's Law does not "appl[y] to *all* persons coming into contact with shipwrecks in N.C. waters"—it only applies to persons who created pictures or videos of shipwrecks or artifacts in state custody, which, as explained in the SAC, is functionally limited to Allen and his privities. *See id*; SAC ¶¶ 104-05.

North Carolina also claims that Blackbeard's Law does not actually affect Allen's works because "the materials at issue were already public records" under N.C.G.S. § 132-1, since "Allen provided the materials directly to DNCR." Motion at 20. This argument makes no sense. Allen has a wealth of material that was never provided to North Carolina, but that nevertheless falls within the ambit of Blackbeard's Law, since they depict vessels and shipwrecks in state waters. SAC ¶ 177 ( Blackbeard's Law "expansive" reach includes materials "not limited to the QAR Project.").

More broadly, North Carolina's interpretation of Blackbeard's Law would mean that the Law is complete surplusage. After all, there is no need to declare as public records "video recordings ... in the custody of any agency of North Carolina" if such recordings were *already* public records. The North Carolina Supreme Court has held that "a statute must be construed, if possible, so as to give effect to every part of it, it being presumed that the Legislature did not intend any of its provisions to be surplusage." *State v. Williams*, 286 N.C. 422, 431 (1975). Here, North Carolina's interpretation of Blackbeard's Law would render meaningless not just a phrase, but *the entire section*. *See* Motion at 27-28 (arguing that Blackbeard's Law "is duplicative of public records law"). North Carolina evidently believed that Blackbeard's Law had meaning, as otherwise they would not have gone to the effort of passing it, and would not have resumed their infringement immediately after its passage. *See generally* SAC ¶¶ 96-120.

Finally, North Carolina's interpretation of its public records law would lead to the absurd outcome that *any* document in an officer's possession would qualify as a public record. Thus, if Roy Cooper purchased a copy of Robert Caro's *Master of the Senate* to improve his leadership skills, that book would instantly become a public record, subject to copying and widespread publication. The phrase "made or received pursuant to law or ordinance," N.C.G.S. § 132-1, cannot be construed so broadly. *E.g.*, *Tetterton v. Long Mfg. Co., Inc.*, 314 N.C. 44, 55 (1985) ("[T]he statute will be interpreted so as to avoid absurd consequences.").

The 2013 Agreement does not warrant a different result. While the Agreement authorized *limited* use of *some* of Allen's work, it did not give North Carolina carte blanche to use *all* of Allen's work however it wanted. To the contrary, the Agreement included detailed restrictions governing North Carolina's use of Allen's works. SAC ¶¶ 92-94 (describing use restrictions in 2013 Agreement that would be incompatible with their treatment as public records). Finally, the limited rights granted in the 2013 Agreement were voided when North Carolina intentionally breached the agreement just days after signing, SAC ¶¶ 97-99, and, barring that, when North Carolina passed Blackbeard's Law which purported to void the 2013 Agreement as a violation of public policy. *See Montessori Children's House of Durham v. Blizzard*, 244 N.C. App. 633, 636 (2016) (under North Carolina law, "[i]t is well settled that where one party breaches a contract, the other party is relieved from the obligation to perform.").

~~

At bottom, the question is whether the legislative act at issue inflicts punishment upon "an *identifiable* individual." *Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*, 468 U.S. 841, 846-47 (1984). Here, the narrow scope of the statute, the history surrounding its enactment, and the fact that it uniquely impacts Allen and Intersal each confirm that Blackbeard's Law satisfies the "targeting" requirement. SAC ¶ 106 (Blackbeard's law only impacts those who specialize in "underwater videography projects of derelict vessels and shipwrecks in North Carolina waters"—i.e., Rick Allen and his privities).

## 2. BLACKBEARD'S LAW IS PUNITIVE.

In deciding whether a legislative act is punitive, courts consider three factors: (1) whether the challenged statute falls within the historical meaning of legislative punishment, (2) whether the statute "reasonably can be said to further nonpunitive legislative purposes," and (3) whether the legislative record shows a legislative intent to punish. *ACORN v. United States*, 618 F.3d 125, 136 (2d Cir. 2010); *see also Ameur*, 759 F.3d at 329 (same). All three factors support the conclusion that Blackbeard's Law was punitive.

*First*, Blackbeard's Law falls within the historical meaning of legislative punishment since it amounts to a confiscation of Allen's property and because it functionally bars Allen from participating in his chosen

profession, *see* SAC ¶¶ 108, 195-97.[8] Both of these penalties are quintessential examples of punishments traditionally imposed by bills of attainder. *See Nixon*, 433 U.S. at 474 (listing "punitive confiscation of property" and "barring designated individuals ... from participation in a specified employments or vocations" as punishments historically associated with bills of attainder).

 *Second*, Blackbeard's Law does not advance any legitimate nonpunitive purpose. As explained in the SAC "[t]here is no legitimate reason to place large swaths of privately-owned copyrights into the public domain, and no reason to prevent copyright holders from entering into contracts that govern the use of their copyrights." SAC ¶ 199. Defendants' proffered non-punitive justification for the Law is that it "provides for the protection and preservation of historic artifacts and shipwrecks located in state waters." Motion at 21. That justification does not hold water, as Blackbeard's Law does not apply to artifacts and shipwrecks, but is instead limited to *pictures and videos* of those artifacts. N.C.G.S. § 121-25(b). To be clear, North Carolina law *does* have provisions that provide for the protection of historical artifacts—just not in Blackbeard's Law. *See id.* § 121-22. North Carolina has not identified any other legitimate non-punitive justifications.

 The political and legislative backstory of Blackbeard's Law strongly points to its purpose being to penalize Allen. The SAC describes the overt hostility Allen faced, including ridicule for monetizing his "hobby" and blame for the "friction" arising from his refusal to work without pay. SAC ¶ 100. The SAC also reveals a prolonged feud between archaeologists and treasure hunters, with Defendants resenting Allen for his perceived support of the latter. The SAC cites this feud and Defendants' frustrations with Allen as the impetus for Blackbeard's Law. *Id.* ¶¶ 47-52, 82-85, 96-102, 114, 193-94. The SAC also clarifies why legislative records about Blackbeard's Law are sparse, as it was a last-minute addition to a larger bill, presumably to

 [8] The SAC provides a detailed explanation as to why Blackbeard's Law precludes Allen from working in his chosen profession: "Blackbeard's Law targets Allen's chosen vocation with pinpoint precision, and functionally bars Allen from participation in that vocation by legislating away Allen's ability to obtain compensation for his work. ... The impact of Blackbeard's Law on Allen's vocational opportunities is especially significant in light of the injuries Allen sustained in 2011. After losing his arm, Allen no longer had the ability to shoot footage above water. Thus, the only job within Allen's chosen profession that he can perform is underwater photography. And because Allen lives in North Carolina and specializes in North Carolina maritime environments, Allen is primarily limited to shooting subjects in North Carolina waters, almost all of which fall under the ambit of Blackbeard's Law." SAC ¶¶ 196-97. Defendants do not acknowledge these allegations— let alone challenge their adequacy.

hinder Allen's ability to object. *Id.* ¶ 115. This is supported by at least one published interview, where Senator Sanderson acknowledged the law's genesis in the feud with Allen and Intersal. Id. ¶ 116.

Again, North Carolina does not address these allegations, other than to simply assert that the SAC's allegations are conclusory. Motion at 22. But conclusory assertions of conclusiveness are not grounds for dismissal—especially where, as here, the SAC contains *pages* of detailed facts and extensive narrative. *Keller v. Hosp. of Morristown*, 2016 WL 6956621, at *6 (E.D. Tenn. 2016) ("A general conclusory allegation that the complaint does not sufficiently plead a claim for relief is insufficient to support dismissal of that claim.").[9]

### H. ALLEN HAS ALLEGED THAT BLACKBEARD'S LAW IS AN UNLAWFUL *EX POST FACTO LAW* (CLAIM VI).

Article I, § 10 of the United States Constitution states, in relevant part: "No State shall ... pass any ... ex post facto Law[.]" An ex post facto law "is one that imposes a punishment for an act which was not punishable at the time it was committed[.]" *United States v. Wass*, 954 F.3d 184 (4th Cir. 2020). For the reasons explained above, Blackbeard's Law imposes a punishment. *See In re DNA Ex Post Facto Issues*, 561 F.3d 294, 298 (4th Cir. 2009). And there is no question that Blackbeard's Law has retroactive effect, as it was enacted after—and in response to—conduct Defendants found objectionable. *See* SAC ¶¶ 101-02, 206. North Carolina does not meaningfully challenge any of these elements, but instead simply repeats their arguments relating to bill of attainder. *See* Motion at 22.

### I. ALLEN HAS ALLEGED THAT BLACKBEARD'S LAW IMPAIRS THE SETTLEMENT AGREEMENT (CLAIM VII).

North Carolina does not meaningfully engage with this claim. The entirety of their analysis is contained in a single sentence, which conclusively asserts that "the alleged actions were made in furtherance of the important public purpose of historical preservation," but does not acknowledge the many allegations in

---

[9] Ironically, Defendants have moved to strike many of the allegations that support this claim as "scandalous." *See supra* at 3-6. Plaintiffs agree that the alleged conduct is scandalous—but that just *supports* the claims for relief. For obvious reasons, Defendants cannot strike Allen's allegations as improper, and then point to those missing allegations as a basis to dismiss.

the SAC that show the opposite. Motion at 23. Defendants have not shown why dismissal is warranted.[10]

## J. ALLEN HAS STATED A CLAIM UNDER SECTION 1983 (CLAIM VIII)

Allen is asserting his § 1983 claim against all defendants sued in their personal capacities. A plaintiff must allege that a defendant acted under color of law to deprive her of a Constitutional right to prevail under § 1983. Defendants do not challenge the merits of Allen's § 1983 claim, but instead argue that they are entitled to qualified immunity and that Allen's claims against the newly-added defendants should be dismissed under a statute of limitations. Motion at 23-25.

### 1. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Defendants' arguments as to qualified immunity are based entirely on the Fourth Circuit's earlier decision in this case, which considered the sufficiency of an earlier complaint and did not account for the SAC's new claims and allegations. 895 F.3d at 356-58. The Fourth Circuit held that Defendants were entitled to qualified immunity based on the 2013 Agreement. The SAC, however, introduces fresh allegations showing that Defendants' infringements—including newly alleged infringements—could not have been sanctioned by the 2013 Agreement, given they occurred (and are occurring) after Blackbeard's Law deemed the Agreement "void and unenforceable as a matter of public policy." See SAC ¶¶ 118-139 & Tbl.2. Without the Settlement Agreement, the Fourth Circuit's analysis loses relevance, as no justification exists for Defendants to assume their use of Allen's works is permissible. Indeed, the only arguable justification for their conduct would be Blackbeard's Law itself, but it is well established that state law cannot override or supersede federal law. Thus, Defendants are not entitled to qualified immunity.[11]

Separately, the operative standard for qualified immunity is deeply flawed and in dire need of revision. *Ziglar v. Abbasi*, 582 U.S. 120, 157-60 (Thomas, J., concurring) ("Our qualified immunity precedents ... represent precisely the sort of freewheeling policy choices that we have previously disclaimed the power to make.") The

---

[10] Strangely, in analyzing Claims V-VII Defendants do not cite any federal law, and choose instead to rely on North Carolina law. But Allen's claims are rooted in federal law. North Carolina's definition of bill of attainder, ex post facto, and impairment of contract are irrelevant.

[11] Defendants also claim they are entitled to legislative immunity. Motion at 23-24. But none of the claims against the individual defendants is based on legislative conduct—they are rooted solely in Defendants' infringing behavior.

Supreme Court has expanded the scope of qualified immunity to such an extent that it covers conduct that shocks the conscience, despite the fact that there is no historical or textual basis for the rule. *See Jessop v. City of Fresno*, 936 F.3d 937 (9th Cir. 2019) (finding qualified immunity for police officers who stole hundreds of thousands of dollars while executing a search warrant); *West v. Winfield*, 931 F.3d 978 (9th Cir. 2019) (finding qualified immunity for police officers who destroyed a house after obtaining consent to search it). Allen asserts and preserves for appeal the argument that qualified immunity should not be applicable in § 1983 cases. If it is deemed applicable, its application should be variable and dependent on factors such as the sophistication of the state actors, their access to legal advice, their subjective belief about the legality of their actions, and the adequacy of the time they had to contemplate the legal status and implications of their decisions.

### 2.  THERE IS NOT A STATUTE OF LIMITATIONS PROBLEM.

Whether claims against the recently included defendants are associated with the initial complaint is determined by FRCP 15(c). This rule stipulates that claims against newly included defendants relate back to the date of the original pleading if the amendment asserts a claim or defense stemming from the conduct or occurrence outlined in the original pleading, if the new defendants received notice of the action and won't be prejudiced when defending on merits, and if the new defendants were aware or should have been aware that the action would have been brought against them. Fed. R. Civ. P. 15(c)(1). North Carolina does not address this standard and has not proven why dismissal should be granted based on a statute of limitations.

In any event, the SAC satisfies the rule. Each of the newly added Defendants played a key role in the alleged unlawful conduct, and so most certainly had knowledge of this suit and knew or should have known that they engaged in the same conduct as the originally-named Defendants, and so should have been named in the original complaint. That is all that is required. *Williams v. Kincaid*, 45 F.4th 759, 775-776 ("notice" and "mistake" requirements of Rule 15 should be construed broadly); *see also Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 547-54 (2010) (interpreting "notice" and "mistake" requirements).

### K.  ALLEN IS ENTITLED TO INJUNCTIVE RELIEF UNDER *EX PARTE YOUNG* (CLAIM IX)

Under the Supreme Court's decision in *Ex Parte Young*, plaintiffs can seek and receive injunctive relief in federal court concerning ongoing constitutional violations. 209 U.S. 123 (1908). Allen seeks such relief

against Defendants Wilson, Koonts, and several unnamed defendants (Does) in their official capacities.

Allen's requested injunction takes two forms. First, he seeks to halt the ongoing acts of infringement alleged in the SAC. SAC at 23 Tbl.2. Second, he seeks to enjoin Defendants from treating (or designating) Allen's works as "public records" that can be used without permission or compensation. SAC ¶ 221. Because Allen's works are classified as "public records," they are considered "the property of the people" under N.C.G.S. § 132-1, permitting anyone to use Allen's works without a license or providing him compensation.

Defendants previously mooted Allen's claims by stopping its infringing activities just before judicial consideration. SAC ¶ 127; *Allen*, 895 F.3d at 354-56. However, such voluntary cessations don't defeat *this* claim, as Defendants continue to assert that Allen's works are public records, and continue to claim—even in their recent filings—that they have the right to use Allen's works without charge. Motion at 20.

Defendants contend that Allen does not adequately allege the involvement of the individually named defendants (Motion at 25), yet it again bases its argument on the Fourth Circuit's analysis of Allen's previous complaint without addressing the specific allegations against each defendant in the SAC.

The SAC specifically alleges that Defendant Wilson, who runs the DNCR, sets and implements policies related to Allen and his property (SAC ¶¶ 23, 26, 217, 219). Given that DNCR is the statutory designee of North Carolina's public records, it's plausible that Wilson, as head of DNCR, can control whether Allen's works are treated as public records and can end DNCR's ongoing infringements (SAC ¶ 23). Similarly, the SAC alleges that, as North Carolina's chief archivist, Defendant Koonts plays a direct role in classifying and treating Allen's works as public records and in continuing the infringements (SAC ¶¶ 27, 113, 139, 216).

Finally, the SAC alleges that the Doe Defendants directly implement DNCR's unlawful policy by being responsible for the initial taking, copying, and performing of Allen's works (SAC ¶¶ 33-34, 79-80, 119).

Given these allegations, Allen is entitled to injunctive relief. *Pharmaceutical Research and Manufacturers of America v. Williams*, 64 F. 4th 932, 950 (8th Cir. 2023) (injunctive relief under *Ex Parte Young* is appropriate to

prevent ongoing takings violations).[12]

**L.** <u>ALLEN IS ENTITLED TO DECLARATORY RELIEF (CLAIM X)</u>

Under 28 U.S.C. § 2201, the Court may issue declaratory relief in any action over which the Court has jurisdiction. Defendants do not challenge Allen's request for declaratory relief itself, but instead simply repeat their arguments regarding sovereign immunity, qualified immunity, and the underlying claims. Motion at 27-28. The arguments fare no better the second time around.

## CONCLUSION

For the foregoing reasons, this Court should deny North Carolina's motion to strike and motion to dismiss in their entirety.

Respectfully submitted this 22nd day of June 2023.

/s/ David McKenzie
**David McKenzie**
NC State Bar No. 36376
/s/ Susan Freya Olive
**Susan Freya Olive**
NC State Bar No. 7222
P.O. Box 2049
Durham, North Carolina 27702
Telephone: (919) 683-5514
Email: emailboxEDNC@oliveandolive.com

**Adam Adler**
DC Bar ID 888324890
**Reichman Jorgensen Lehman & Feldberg LLP**
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Email: aadler@reichmanjorgensen.com

---

[12] Defendants take issue with the fact that the sub-heading for Claim IX identifies only North Carolina and DNCR as defendants. As is clear from the substance of the underlying allegations and the prayer for relief, Allen seeks an injunction against the defendants who implement the state's unlawful policy. The SAC lists the institutional defendants to reflect the fact that it is, after all, North Carolina and DNCR's policy that is unlawful. *See* SAC ¶¶ 220-224, and at 39-40. *See Reyes v. Dorchester Cnty.*, 2022 WL 820029, at *10 (D.S.C. Mar. 18, 2022) (courts liberally construe claim descriptors, especially in immunity cases, where distinction between individual and professional capacity is a fiction).